UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

LAFRANCIS GRAY-DAVIS, on her own and on behalf of her son, MYRELL DAVIS,

Plaintiff,

v. 5:14-CV-01490 (GTS/TWD)

THE STATE OF NEW YORK, et al.,

Defendants.

---

APPEARANCES:

LAFRANCIS GRAY-DAVIS
Plaintiff *pro se,* suing on her own
and on behalf of her son, Myrell Davis
439 Gifford Street
Syracuse, New York 13204

JEFFREY DEROBERTS, ESQ.
Attorney for Myrell Davis
The Monroe Building, 3rd Floor
333 East Onondaga Street
Syracuse, NY 13202

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

**ORDER AND REPORT-RECOMMENDATION**

The Complaint of *pro se* Plaintiff LaFrancis Gray-Davis, on her own and on behalf of her son, Myrell Davis, was received for filing in the Northern District of New York on December 11, 2014, along with an application to proceed *in forma pauperis*. (Dkt. Nos. 1 and 2.) By Order of December 18, 2014, the Court granted Plaintiff's application to proceed *in forma pauperis*. (Dkt. No. 4 at 2-3.) Because Plaintiff, who is not an attorney and not represented by counsel, may not appear on behalf of her minor child, Myrell, *see Cheung v. Youth Orchestra Found. of Buffalo,*

*Inc*., 906 F.2d 59, 61 (2d Cir. 1990), the Court deferred the requisite initial review of the Complaint pursuant to 28 U.S.C. § 1915(e) and stayed the case for ninety days in order to give Plaintiff time to retain counsel, at least for her minor son. *Id.* at 3. Attorney Jeffrey DeRoberts, Esq. filed a Notice of Appearance on behalf of Myrell Davis on January 8, 2015, thereby removing the impediment to initial review of the Complaint. (Dkt. No. 5.)

## I. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

Even when a plaintiff meets the financial criteria for *in forma pauperis*, 28 U.S.C. § 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted). Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua*

*sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Id*. In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836 (1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better

pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## II. PLAINTIFF'S COMPLAINT

Plaintiff met James D. Davis ("Davis") in July of 2009, when he was on parole supervision, and the couple had a child, Myrell Davis, in 2010. (Dkt. No. 1 at ¶¶ 5 and 6.) Davis was violated by parole supervision on September 22, 2011, and Defendant Senior Parole Officer Paul Rigby ("Rigby"), who allegedly had a vendetta against Plaintiff because of her association with Davis, acted to prevent Plaintiff and Davis from being married at the Onondaga County Justice Center in November of 2011. *Id.* at ¶¶ 7-8.

Plaintiff and Davis were married on November 12, 2012, while Davis was incarcerated, and on July 30, 2013, when Davis was about to be released, Plaintiff was informed by his parole officer, Defendant Ms. Montford ("Montford"), that she and her son and all family members were not permitted to have contact with Davis. *Id*. at ¶¶ 9-10. Included in the special conditions in the Certificate of Release to Parole Supervision signed by Davis on August 6, 2013, was the condition "17. I will not associate in any way or communicate by any means with . . . Latesha Dexter and Lafrancis Gray without the permission of the P.O." *Id*. at p. 56. Included in a list of Special Conditions of Release to Parole Supervision in connection with Plaintiff's July 30, 2013, release, signed by Davis on February 24, 2014, were:

> 13(i): I will have no in person contact, or attempt to contact **<u>Eric Roam, Latesha Dexter and/or LaFrancis Gray-Davis</u>**. Either in person or members of their immediate family by means of letter, telephone, cell phone, third party, electronic means or any other methods without the knowledge and written permission of my parole officer. Failure to follow this rule is a violation of my parole in an important respect.
>
> 13(q): I will have contact with any children in common with

**LaFrancis Gray-Davis** if court ordered only.

*Id*. at pp. 58, 60. Depending on Davis' parole officer, Plaintiff and Davis have at times been able to have contact with one another and even share a home. Other times they have not. *Id.* at ¶ 12.

On Christmas Eve or Christmas day of 2013, Defendant parole officers John Doe Nos. 1 through 4 searched Plaintiff's home looking for Davis, whom they had reason to believe was there. *Id*. at ¶ 13. Davis was not in the house, and according to Plaintiff, because he was not paroled to her address and was not supposed to be there, the four Doe Defendants had no probable cause to invade her home and privacy and search her house. *Id*.

On March 11, 2014, at approximately 7:45 p.m., while Plaintiff, with Myrell in the car, was giving Davis a ride home, she was pulled over by Defendant Parole Officers Tammy Gronau ("Gronau"), Mr. Green ("Green"), Mr. Maher ("Maher"), Ms. Delaney ("Delaney"), and Mr. Fregoe ("Fregoe"), along with Defendant Syracuse Police Officers John Doe Nos. 5 though 15. *Id*. at ¶ 14. Defendants Gronau and Green searched Plaintiff's car and found several empty beer cans and a folding knife that Plaintiff claims belonged to her. Defendants also stated that Myrell was not in a child safety seat, which Plaintiff contends is untrue. *Id*. Davis was taken into custody. *Id.* According to Plaintiff, the only reason the vehicle was stopped was that she and her son were with Davis. *Id*.

On April 1, 2014, Plaintiff received a letter from Defendant Randy W. Blume (Blume"), Assistant Commissioner of the Onondaga County Correctional Facility, stating that due to the special conditions prohibiting Davis from having contact with her and her son, he was restricting Plaintiff from visiting or communicating with Davis by telephone while he was at the facility unless or until the conditions of parole were removed. *Id*. at ¶ 17.

## III. ANALYSIS

Plaintiff's Complaint contains ten causes of action for violation of Plaintiff and her son's right to privacy and freedom of association under the First Amendment; illegal search and seizure in violation of the Fourth Amendment; violation of Plaintiff and her son's right to life, liberty, family, and privacy protected under the Fifth Amendment; violation of Plaintiff and her son's right to privacy and other rights protected under the Ninth Amendment; violation of Plaintiff and her son's right to life, liberty, family, and privacy protected under the Fourteenth Amendment; intentional infliction of emotional distress; negligent infliction of emotional distress; negligence; supervisory liability, including failure to train, supervise, and control employees, employers, agents and successors; and violation of 42 U.S.C. § 1983.[1] (Dkt. No. 1 at ¶¶ 19-101.) The allegations of wrongdoing by Defendants set forth in each of the causes of action appear to be virtually identical. *Id*.

### A. State of New York

Plaintiff has named the State of New York as a Defendant. The only allegations directed to the State in the Complaint are conclusory assertions of supervisory liability. (*See, e.g.,* Dkt. No. 1 at ¶ 23.) Plaintiff's claims against the State are barred by sovereign immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). The bar precludes claims against the State for both monetary and equitable relief. *See Edelman v. Jordan*, 415 U.S. 651, 667-69 (1974). Therefore, the Court recommends that the action be dismissed with prejudice as against the State of New York on sovereign immunity grounds.

---

[1] 42 U.S.C. § 1983 does not create any independent substantive rights, but rather serves as a vehicle to "redress . . . the deprivation of [federal] rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).

### B. Municipal Defendants

Plaintiff has named as Defendants the County of Onondaga, City of Jamesville,[2] and the City of Syracuse. The Onondaga County Department of Corrections and Syracuse City Police Department have also been named as Defendants. However, as explained in *Baptista v. Onondaga County Dept. of Corrections*, No. 9:04-CV-0600 (LEK/GHL), 2007 WL 911854, at * 5, 2007 U.S. Dist. LEXIS 20536, at * 13 (N.D.N.Y. Mar. 22, 2007), the County of Onondaga Department of Corrections and the County of Onondaga "are one in the same the County of Onondaga, a municipal corporation of the State of New York." Furthermore, "[a] police department is an administrative arm of [a] municipal corporation," and "cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity." *Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) (citing *Loria v. Town of Irondequoit*, 775 F. Supp. 599, 606 (W.D.N.Y. 1990); *see also Dexter v. City of Syracuse*, No. 5:14-CV-0363 (TJM/DEP), 2014 WL 2611384, at * 4, 2014 U.S. Dist. LEXIS 80008, at * 11 (N.D.N.Y. June 11, 2014). Therefore, any claims Plaintiff might have against the County of Onondaga Department of Corrections and City of Syracuse Police Department are properly asserted against the County of Onondaga and City of Syracuse, respectively.

Pursuant to the standard for establishing municipality liability laid out in *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978), in order to set forth a cognizable claim for municipal liability under § 1983, a plaintiff must plead and prove that a deprivation of

[2] The Court takes judicial notice that Jamesville, New York is a hamlet located within the Town of DeWitt, not a city. (*See* http://www.townofdewitt.com/LivingDeWitt.aspx last visited on March 24, 2015.)

his constitutional rights "was caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell,* 436 U.S. 658), *cert denied*, ___ U.S. ___, 134 S.Ct. 125 (2013); *see also Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) ("The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer. Second, the plaintiff must establish a causal connection an 'affirmative link' between the policy and the deprivation of his constitutional rights.") (citing *Oklahoma v. Tuttle*, 471 U.S. 808, 824 n.8 (1985)) (plurality opinion).

Plaintiff has failed to identify or allege any facts showing the existence of a municipal policy or custom of Onondaga County, the hamlet of Jamesville, or the City of Syracuse which resulted in the deprivation of her and her son's constitutional rights. A municipality may be liable for deprivation of constitutional rights under § 1983 with regard to policies or customs resulting in inadequate training, supervision, or hiring when the failure to train, supervise, or hire amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989). However, Plaintiff's conclusory allegations that Onondaga County, Jamesville, and the City of Syracuse failed to properly hire, supervise, and train subordinates, without supporting factual allegations of, among other things, a policy or custom pursuant to which the alleged action was undertaken, fails to state a claim against those municipalities that is plausible on its face. *See Trombley*, 550 U.S. at 570; *Hall v. Smith*, 170 F. App'x 105, 108 (11th Cir. 2006) (affirming dismissal of § 1983 claim against a municipality where plaintiff alleged no factual support for his conclusory

statement that the municipality had a policy or custom of grossly inadequate supervision and training of its employees.)

Given the foregoing, the Court recommends that Plaintiff's § 1983 claims be dismissed as against Defendants County of Onondaga, Jamesville, and the City of Syracuse without prejudice; and be dismissed with prejudice as against the Onondaga County Department of Corrections and the Syracuse City Police Department, given that any claims Plaintiff may be able to plead with regard to the two departments would be properly asserted against the County of Onondaga and City of Syracuse.

### C. Plaintiffs' Official Capacity Claims For Money Damages Against the State Official Defendants

Plaintiffs have asserted official capacity claims for money damages under 42 U.S.C. § 1983 against all of the Defendants. (Dkt. No. 1 at p. 9.) The immunity granted the states under the Eleventh Amendment extends beyond the states themselves to state agents and instrumentalities that are effectively arms of the state. (*Woods v. Rondout Valley Cent. School Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006). The Eleventh Amendment bars all money damages claims against state officials acting in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 167-68 (1985). The Eleventh Amendment has been found to bar official capacity claims for money damages against New York Department of Correctional and Community Supervision ("DOCCS") officials and parole officers. *See Tolliver v. New York State Corrections Officers*, No. 99CIV.9555(JGK), 2000 WL 1154311, at * 2, 2000 U.S. Dist. LEXIS 11531, at * 7 (S.D.N.Y. Aug. 14, 2000) ("All of the defendants in this case are state officials because they are employees of the New York State Department of Correctional Services.");

*James v. Suffolk County Correctional Facility*, No. 13-CV-2344 (JFB) (SIL), 2014 WL 4659300, at *4, 2014 U.S. Dist. LEXIS 131056, at * 10-11 (E.D.N.Y. Sept. 17, 2014) (official capacity claims for money damages against parole officers are barred by the Eleventh Amendment).

Therefore, the Court recommends that Plaintiff's § 1983 claims for money damages against Defendants Anthony J. Annucci ("Annucci"), Acting Director of DOCCS, Tina M. Stanford ("Stanford"), Chair of the Board of Parole, and all of the Defendant Parole Officers, including Defendants John Doe 1 through 4, in their official capacities be dismissed with prejudice on Eleventh Amendment grounds.

**D. Supervisory Liability**

Defendants Annucci, Stanford, Tim Cowan ("Cowan"), Commissioner of the Onondaga County Department of Correction, and John Doe No. 16, Chief of the Syracuse City Police, have all been sued in their supervisory capacities by Plaintiff.[3] (*See, e.g.*, Dkt. No. 1 at ¶ 23.)[4] In the case of Defendants Annucci and Stanford, the subordinates include the Defendant Parole Officers, including Defendants John Doe 1 through 4. (Dkt. No. 1 at ¶ 23.) Blume is identified as Cowan's subordinate. *Id*. In the case of Defendant John Doe No. 16, the subordinates include Syracuse Police Officers Defendants John Doe Nos. 5 through 15. *Id*.

The law is clear that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson,*

---

[3] Plaintiff has recommended dismissal of Plaintiff's supervisory claims against the municipal Defendants under *Monell.*

[4] Plaintiff has repeated the identical conclusory allegations of supervisory liability against the Defendants in each of her ten causes of action. (*See* Dkt. No. 1 at ¶¶ 23, 30, 38, 46, 54, 62, 69, 76, 83, 90.)

568 F.2d 930, 934 (2d Cir. 1977). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). "Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement." *Groves v. Davis*, No. 9:11-CV-1317 (GTS/RFT), 2012 WL 651919, at *6, 2012 U.S. Dist. LEXIS 25367, at *22-23 (N.D.N.Y. Feb. 28, 2012) (citing *McKinnon*, 568 F.2d at 934); *see also Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (a "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections . . . in a § 1983 claim" ) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)). Therefore, "a plaintiff must . . . allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

The Second Circuit has held that personal involvement by a supervisor necessary to state a claim under § 1983 may be found where: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995).

Plaintiff has alleged that Defendants Annucci, Stanford, Cowan, and John Doe 16 failed to properly hire, oversee, supervise, train, and control their subordinates. (Dkt. No. 1 at ¶ 23.) Vague and conclusory claims that a supervisory official has failed to provide proper training and supervision or created a specific policy, without facts showing personal involvement, are legally insufficient to state a claim under any of the categories identified in *Colon*. *See Bridgewater v. Taylor*, 832 F. Supp. 2d 337, 348 (S.D.N.Y. 2011); *White v. Fischer*, No. 9:09-CV-240 (DNH/DEP), 2010 WL 624081, at *6, 2010 U.S. Dist. LEXIS 15492, at *19 (N.D.N.Y. Feb. 18, 2010) ("Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability."); *see also Pettus v. Morgenthau*, 554 F.3d 293, 300 (2d Cir. 2009) (same).

Plaintiff has also parroted each of the *Colon* factors as grounds for supervisory liability. *Id.* "Conclusory statements and formulaic recitations of the Colon factors [that are] wholly unsupported by facts," present no factual support for a supervisory liability claim. *Eldridge v. Kenney*, No. 11-CV-6459-FPG, 2014 WL 2717982, at * 3, 2014 U.S. Dist. LEXIS 84437, at * 2-3 (W.D.N.Y. June 16, 2014).

In light of Plaintiff's failure to allege facts of a nonconlusory nature showing personal involvement by Annucci, Stanford, Cowan, and John Doe No. 16 in the alleged violations of Plaintiff and her son's constitutional rights, the Court recommends that Plaintiff's § 1983 claims be dismissed without prejudice as against those Defendants.

**E. Defendant Butera**

Defendant Robert Butera (Butera") is identified as a Parole Officer in Plaintiff's

Complaint. (Dkt. No. 1 at p. 4.) With the exception of Plaintiff's inclusion of Butera's name in the conclusory claims of wrongdoing in each of her causes of action, *id.* at ¶ 23, the Complaint is devoid of factual allegations regarding Butera. As noted above, personal involvement in a constitutional deprivation is a prerequisite to an award of damages under § 1983." *McKinnon,* 568 F.2d at 934; *see also Crichlow v. Fischer*, No. 12-cv-7774 (NSR), 2015 WL 678725, * 9, 2015 U.S. Dist. LEXIS 18812, at * 17 (S.D.N.Y. Feb. 17, 2015) (dismissing defendants from the case upon initial review under 28 U.S.C. § 1915(e) where the plaintiff made no factual allegations regarding personal involvement on their part in the violation of plaintiff's rights). The complete absence of factual allegations of wrongdoing by Bufera warrants dismissal of Plaintiff's state law claims as well. Therefore, the Court recommends that the case be dismissed without prejudice as against Defendant Butera.

**F. Defendant Blume**

The sole factual allegation in the Complaint against Defendant Blume, the Assistant Director of the Onondaga County Department of Corrections is that he informed Plaintiff that he was restricting Plaintiff from visiting or communicating with Davis by telephone while he was at the facility due to the special conditions prohibiting Davis from having contact with her and her son unless and until the condition of parole was removed. *Id*. at ¶ 17. Inasmuch as there are no factual allegations indicating that Blume was doing anything more than complying with special conditions of release to parol supervision that had been imposed by DOCCS, the Court recommends that the case be dismissed without prejudice as against him.

**G. Plaintiff's Ninth Amendment Claim**

Plaintiff claims that the Defendants violated her and her son's right to privacy and other

rights guaranteed under the Ninth Amendment. (Dkt. No. 1 at ¶¶ 42-49.) The Ninth Amendment provides that "[t]he enumeration in the Constitution of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. The Ninth Amendment is a "rule of construction" and does not give rise to "individual rights." *Jenkins v. C.I.R.*, 483 F.3d 90, 92-93 (2d Cir. 2007) (Ninth Amendment is not an independent source of individual rights but a rule of construction). Therefore, to the extent Plaintiff is asserting a § 1983 claim for an independent violation of the Ninth Amendment, the Court recommends that the claim be dismissed with prejudice as against all of the Defendants.

## H. Plaintiff's State Law Claims for Negligence and Intentional and Negligent Infliction of Emotional Distress

Plaintiff has included state law causes of action for intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence against the Defendants for denying her and her son the benefits that arise from familial association, for subjecting them to the unreasonable search of her home and car, and, in the case of the municipal defendants and Annucci, Stanford, Cowin, and John Doe No. 16, for failing to properly supervise their subordinates.

### 1. Intentional Infliction of Emotional Distress

Under New York law, to state a claim for intentional infliction of emotional distress, a plaintiff must plead "(1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal connection between the conduct and injury; and (4) severe emotional distress." *Bender v. City of N.Y.*, 78 F.3d 787, 790 (2d Cir. 1996). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Conboy v. AT & T Corp*., 241 F.3d 242, 258 (2d Cir. 2001). The Court finds that the allegations in Plaintiff's Complaint do not show conduct making a plausible showing of intentional infliction of emotional distress by any of the Defendants and recommends that the claim be dismissed without prejudice as to all Defendants.

2. Negligence and Negligent Infliction of Emotional Distress

Although Plaintiff has alleged that the Parole Officer and Syracuse Police Department Defendants intentionally and/or negligently denied her and her son's right to association and subjected them to unreasonable searches and seizures, the factual allegations in the Complaint reveal that Plaintiff's claims are premised on intentional not negligent conduct. A claim for negligent infliction of emotional distress may be established under either (1) the "bystander theory" or (2) the "direct duty theory." *Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000). Both theories require an act of negligence and physical injury or the threat of danger, either to the plaintiff or to a close family member. *Id*. To recover under the "bystander theory," the plaintiff must be "threatened with physical harm as a result of the defendant's negligence" and "consequently suffer[ ] emotional injury from witnessing the death or serious bodily injury of a member of [his or her] immediate family." *Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1966). To recover under the "direct duty" theory, a plaintiff must suffer an emotional injury from defendant's breach of a duty which unreasonably endangered [his or her] own physical safety." *Id*.

The Court finds that Plaintiff's Complaint fails to allege facts stating a plausible claim for either negligence or negligent infliction of emotional distress against Defendants and

recommends that the claim be dismissed without prejudice as against all of the Defendants.

**I. Plaintiff's Surviving Claims**

Plaintiff's Complaint asserts claims for violation of her and her son's First Amendment right of liberty in their family life and Fourteenth Amendment due process right to intimate association[5] as a result of the imposition and enforcement of the special conditions of release to parole supervision that prevent Plaintiff and her son from being with Davis, as well as her Fourth Amendment right to be free from unreasonable searches and seizures in connection with the search of her home in December of 2013 and the traffic stop and search of her car on March 11, 2014. (Dkt. No. 1 at pp. 13, 18, and 41.)

Mindful of the Second Circuit's instruction to liberally construe a *pro se* plaintiff's pleadings, *see Sealed Plaintiff ,* 537 F.3d at 191, the Court recommends that Plaintiff be permitted to pursue her and her son's First, Fourth, and Fourteenth Amendment claims (first, second and fifth causes of action) against Defendants Rigby, Gronau, Green, Maher, Delaney, Fregoe, Montford, and John Doe Nos. 1-15.

The Court expresses no opinion as to whether Plaintiff's claims can withstand a properly filed motion to dismiss or for summary judgment.

**ACCORDINGLY**, it is hereby

---

[5] Plaintiff has also asserted a due process claim under the Fifth Amendment. (Dkt. No. 1 at p. 21.) However, the due process clause of the Fifth Amendment applies only to actions taken by the federal government, not state or local governments. *See Schweiker v. Wilson*, 450 U.S. 221, 227 (1981); *see also Canfield v. Douglas County*, No. 14-cv-00461-KMT, 2014 WL 7186749, at * 5, 2014 U.S. Dist. LEXIS 173224, at * 12-13 (D. Col. Dec. 16, 2014) (Fifth Amendment deprivations such as those challenging due process rights to familial association with no allegation of federal involvement are not actionable under the Fifth Amendment).

**RECOMMENDED** that the case be dismissed with prejudice as against: (1) Defendant State of New York on sovereign immunity grounds; (2) Defendant Onondaga County Department of Corrections on the grounds it is one and the same with Defendant County of Onondaga; and (3) Defendant Syracuse City Police Department on the grounds that it is not an entity capable of being sued; and it is further

**RECOMMENDED** that the following claims be dismissed with prejudice: (1) Plaintiff's § 1983 claims for money damages against Defendants Annucci, Stanford, Rigby, Gronau, Green, Maher, Delaney, Fregoe, Montford, Butera, and John Doe Nos. 1-4 on Eleventh Amendment grounds; and (2) Plaintiff's claim for violation of her and her son's Fifth and Ninth Amendment rights for failure to state a claim; and it is further

**RECOMMENDED** that the case be dismissed for failure to state a claim, with leave to file an amended complaint as authorized by the District Court as against Defendants: (1) County of Onondaga; (2) Jamesville; (3) City of Syracuse; (4) Bufera; (5) Blume; (6) Cowin; (7) John Doe No. 16; and (8) Annucci and Stanford (except without leave to amend § 1983 official capacity claims for money damages); and it is further

**RECOMMENDED** that the District Court direct service on Defendants Rigby, Gronau, Green, Maher, Delaney, Fregoe, and Montford of the surviving claims for violation of Plaintiff and her son's First, Fourth, and Fourteenth Amendment rights; and it is further

**RECOMMENDED** that Defendants Rigby, Gronau, Green, Maher, Delaney, Fregoe, and Montford be required to file a formal response to the surviving claims as provided for in the Federal Rules of Civil Procedure subsequent to service of process; and it is further

**RECOMMENDED** that Plaintiff be directed to take reasonable steps to identify

Defendants John Doe Nos. 1-15, and, if necessary, make an appropriate motion seeking leave to amend her pleadings to add the proper party; and it is hereby

**ORDERED** that any paper sent by a party to the Court or the Clerk shall be accompanied by a certificate setting forth the date a true and correct copy of it was mailed to all opposing parties or their counsel. **Any letter or other document received by the Clerk or the Court which does not include a certificate of service which clearly states that an identical copy was served upon all opposing parties or their attorneys is to be returned, without processing, by the Clerk.** Plaintiff shall also comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All motions shall comply with the Local Rules of Practice of the Northern District; and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: March 27, 2015
Syracuse, New York

Therèse Wiley Dancks
United States Magistrate Judge

C
Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Miguel BAPTISTA, Plaintiff
v.
ONONDAGA COUNTY DEPARTMENT OF CORRECTIONS and Onondaga County, Defendants.

No. 9:04-cv-0600 (LEK/GHL).
March 22, 2007.

Law Offices of George S. Mehallow, George S. Mehallow, Esq., of counsel, Syracuse NY, for Plaintiff.

Office of the County Attorney, Anthony P. Rivizzigno, Esq., Kathleen M. Dougherty, Esq., of counsel, Syracuse NY, for Defendants.

***MEMORANDUM-DECISION and ORDER***

LAWRENCE E. KAHN, United States District Judge.

***1** Plaintiff Miguel Baptista commenced the instant action against Defendants pursuant to 42 U.S.C. § 1983 alleging that their failure to provide adequate medical treatment to him while he was incarcerated at the Onondaga County Correctional Facility violated his rights as guaranteed by the Fifth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution. Presently before the Court is Defendants' Motion to preclude Plaintiff's expert from testifying and for summary judgment pursuant to Rule 56 of the *Federal Rules of Civil Procedure* seeking dismissal of the Complaint in its entirety.

**I. FACTS**

From May 23, 2001 through November 4, 2002, Plaintiff was an inmate at the Onondaga County Correctional Facility ("OCCF"). On Saturday, December 15, 2001, Plaintiff jammed the middle finger of his right hand while playing basketball. Within forty-five minutes of the injury, Plaintiff was brought to the medical unit at the OCCF and examined by Ann Samonte, R.N. Samonte noted that Plaintiff's finger had swelling around the metacarpal joint. Samonte further noted that Plaintiff was able to flex his finger with assistance, and that she could hear a pop when he bent his finger. Plaintiff's finger was "buddy-taped" to his ring finger, and he was provided ice for swelling and 800 milligrams of Motrin for one week for pain. Samonte also added Plaintiff to the medical doctor's sick call list for Monday, December 17, 2001.

Plaintiff was next seen by medical personnel on Sunday, December 16, 2001. Plaintiff's finger was noted to be swollen. Plaintiff was unable to bend his finger. The finger was again "buddy-taped" and an ice pack was applied. Dr. Mark J. Shaw was contacted and restricted Plaintiff from work and recreation. Although Plaintiff was scheduled to see the OCCF physician on December 17, 2001, he did not appear because of a court appearance.

Plaintiff was examined by Dr. Shaw on December 18, 2001. Plaintiff's finger was found to be swollen around the PIP joint. Plaintiff was able to fully extend his finger, but unable to flex his finger due to pain. Shaw ordered a splint and x-rays. Shaw ordered a follow-up visit after the x-rays were taken.

Plaintiff's finger was x-rayed on December 20, 2001. The x-ray revealed a "volar plate fracture of the middle phalanx." Based on the results of the x-ray, Shaw ordered that Plaintiff's middle finger be "buddy taped" and splinted with tongue depressors from the tips of the fingers to the middle of his hand. Plaintiff's case also was submitted for medical staff review on Monday, December 24, 2001 to evaluate the need for

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

follow-up with the Orthopedic Hand Clinic (the "Hand Clinic").

On December 24, 2001, Chief Facility Emergency Physician Mark Johnston reviewed the x-ray report. Consent was obtained to permit Plaintiff to be seen at the Orthopedic Hand Clinic at SUNY Upstate Medical University Hospital. An appointment was scheduled for January 23, 2002.

***2** During this time, Plaintiff was administered 800 milligrams of Motrin for pain. The medication was administered on December 15, 16, 17, 18, 20, 22, 23, and 25, 2001. On December 25, 2001, Plaintiff submitted a request for more Motrin. On December 31, 2001, Plaintiff was seen by Dr. Johnston for treatment to his finger. Johnston ordered a one month prescription of 600 milligrams of Motrin.

On January 9, 2002, Plaintiff was against treated in the medical unit. At that time, Plaintiff was noted to have swelling to the joint of the middle finger. Medical staff changed the splint.

Plaintiff was seen at the Hand Clinic on January 23, 2002. Plaintiff was diagnosed with "right middle finger PIP joint dislocation." Plaintiff was sent for pre-surgery testing on January 28, 2002. On January 29, 2002, Plaintiff underwent a volar plate arthroplasty. The surgeon prescribed Vicodin for Plaintiff's post-surgery pain. Following surgery, Plaintiff returned to the OCCF for recuperation.

Upon his return from surgery, Plaintiff was provided Motrin instead of the Vicodin. This was done purportedly due to OCCF restrictions on the distribution of narcotics. While at OCCF, Plaintiff was provided with follow-up treatment, including physical therapy and further x-rays.

On May 17, 2002, Plaintiff underwent a second surgery to his finger to release joint contracture. Following surgery, Plaintiff was prescribed 800 milligrams of Motrin and his finger was splinted. Plaintiff was then returned to the OCCF. Plaintiff was next seen at the Hand Clinic on May 22, 2002. Records note that Plaintiff was doing "some active motion post-op but has not been doing aggressive passive motion as was instructed by us." On May 24, 2002, Plaintiff was seen at the University Hospital Emergency Department with complaints of middle finger pain. Plaintiff was advised to continue taking the 800 milligrams of Motrin, to ice and elevate his hand, and to continue with the flexion and extension exercise ordered by Dr. Mosher (the physician who performed the second surgery). Plaintiff received follow-up treatment, including physical therapy and pain management on May 29, June 26, August 7, and September 11, 2002.[FN1]

FN1. This statement of fact is set forth in Defendants' Rule 7.1(a)(3) Statement of Material Facts at paragraph 31. In opposition, Plaintiff responded as follows: "Neither admit nor deny ." Because Defendants' statement is supported by a citation to the record where the fact is established, it was incumbent upon Plaintiff to respond by either "admitting and/or denying" Defendants' assertion. Any denial was required to be supported by a citation to the record where the factual issue arises. *See* N.D.N.Y.L.R. 7.1(a)(3). Plaintiff's response does not conform to the requirements of this Rule. Because Plaintiff did not specifically controvert this factual assertion, it is deemed admitted. *Id.* ("*Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.*").

"The medical records ... show that while Plaintiff was in the custody of the Defendants, and more specifically the period of time between Plaintiff's injury on December 15, 2001 through his surgery at the

Orthopedic Hand Clinic on January 25, 2002, and all through the follow-up care administered thereafter up to September 11, 2002, Plaintiff was provided reasonable and necessary medical care by the medical personnel at both [OCCF] ... and the Orthopedic Hand Clinic." Def.'s Stmnt. of Material Facts at ¶ 32.[FN2]

> FN2. In his responsive statement of material facts, Plaintiff admitted to this factual assertion by Defendants.

Plaintiff was released from the OCCF on November 4, 2002. Thereafter, Plaintiff failed to keep his December 11, 2002 appointment at the Hand Clinic. Plaintiff's last appointment at the Hand Clinic was on January 8, 2003. The medical records show that Plaintiff had "stiff PIP join R LF [right middle finger] now but with minimal pain. Further contraction release unlikely to help. Not having enough pain to consider fusion." *Id.* at ¶ 35. Plaintiff also was noted to have left the clinic "prior to nursing discharge." *Id.* This was the last treatment Plaintiff had for his finger.

***3** On June 16, 2004, Plaintiff re-injured his right hand when he punched a wall. Plaintiff denies injuring his middle finger at this time. The medical records reflect that Plaintiff fractured and minimally dislocated the distal 4th and 5th metacarpals of his right hand, for which a volar splint was applied. Upon examination, Plaintiff's attending physician found "swelling over the PIP joint which is nontender in the middle finger, he has limited range of motion of the middle finger which he says is chronic." *Id.* at ¶ 39.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In applying this standard, courts must " 'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.' " *Brown v. Henderson,* 257 F.3d 246, 251 (2d Cir.2001) (quoting *Cifra v. Gen. Elec. Co.,* 252 F.3d 205, 216 (2d Cir.2001)). Once the moving party meets its initial burden by demonstrating that no material fact exists for trial, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (citations omitted). Rather, the nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in her favor." *Brown,* 257 F.3d at 251 (citation omitted). Bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment. *Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991); *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990).

## III. DISCUSSION

### a. *Motion to Preclude Expert Testimony*

Defendants move to preclude Plaintiff's expert witness. Plaintiff concedes this issue. *See* Pl.'s Mem. of Law at 2. Accordingly, Defendants' motion is GRANTED.

### b. *Plaintiff's Eighth Amendment Claims*

The sole basis for Plaintiff's Eighth Amendment claim is that "the denial of hospital treatment for approximately one month after the injury was a violation of his constitutional right to adequate medical treatment.... Plaintiff does not claim any cause of action for negligence or medical malpractice nor does he claim that the injury was exacerbated by the delay. The claim is based upon the fact that in spite of having a known fracture and being in pain the plaintiff was neither taken to a hospital nor to the specialists at the Hand Clinic until thirty-eight (38) days had elapsed

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

from the original injury." Pl.'s Mem. of Law at 3.

To succeed on his Eighth Amendment claim, Plaintiff must demonstrate that: (1) he suffered from a sufficiently serious injury; and (2) that Defendants acted with a deliberate disregard for that injury. *Johnson v. Wright,* 412 F.3d 398, 403 (2d Cir.2005). The first inquiry is objective, whereas the second is subjective. *Id.* To establish deliberate indifference, Plaintiff must prove that the charged official " 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' " *Id.,* (quoting *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). As the Second Circuit has explained:

> ***4** "Deliberate indifference" describes a mental state more blameworthy than negligence; but a plaintiff is not required to show that the defendant acted for the "very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citing *Estelle [v. Gamble],* 429 U.S. [97], 104, 97 S.Ct. 285). Deliberate indifference is "a state of mind that is the equivalent of criminal recklessness." *Hathaway v. Coughlin ("Hathaway II"),* 99 F.3d 550, 553 (2d Cir.1996). A showing of medical malpractice is therefore insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.' " *Chance [v. Armstrong],* 143 F.3d [698], 703 [ (2d Cir.2998) ] (quoting *Hathaway II,* 99 F.3d at 553).

*Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003).

For purposes of analysis, the Court will assume, without deciding, that Plaintiff suffered from a sufficiently serious injury. The question then turns to whether Defendants were aware of that injury, but nonetheless disregarded the risk of serious harm. As previously noted, Plaintiff admitted that he received "reasonable and necessary medical care by the medical personnel at [OCCF] ..." during "the period of time between Plaintiff's injury on December 15, 2001 through his surgery at the Orthopedic Hand Clinic on January 25, 2002, and all through the follow-up care administered therafter up to September 11, 2002...." Def.'s Stmnt. of Material Facts at ¶ 32. Through this admission, Plaintiff concedes that Defendants provided him with adequate care, thereby defeating his claim that they acted with deliberate indifference. Regardless of this admission, the record evidence unequivocally demonstrates that Defendants were aware of, but did not ignore, his injury. Rather, the record reveals that he was seen in the medical unit shortly after his injury, he was seen again the next day where he was examined by a physician, and that he was continually monitored thereafter and up through the date of surgery. During this period of time, Plaintiff's finger was immobilized and he was given medication for pain. Plaintiff also was restricted from work and recreation. Although there is a period of fourteen days before his January 28, 2002 pre-surgery testing during which Plaintiff apparently was not seen by any medical staff, during this period of time, his finger was splinted, he was prescribed 800 milligrams of Motrin for his pain, Defendants evaluated the need to send Plaintiff to the Hand Clinic, Defendants obtained consent to send Plaintiff to the Hand Clinic, Defendants scheduled Plaintiff for an appointment with the Hand Clinic for January 23, 2002, and Plaintiff was scheduled for surgery on January 29, 2002. From these facts, a fair-minded trier of fact could only reasonably conclude that Defendants did not act with deliberate indifference towards a serious medical need.

***5** Even if Plaintiff could establish an Eighth Amendment claim, he has failed to demonstrate any

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

basis for imposing liability upon the municipal Defendants. Plaintiff has not sued any individuals, but, rather, has sued the Onondaga County Department of Corrections and the County of Onondaga. These two entities are one in the same-the County of Onondaga, a municipal corporation of the State of New York. *See Solis v. County of Westchester,* No. 94 Civ. 5102(VLB), 1995 WL 14072, at *1 (S.D.N.Y. Jan. 10, 1995) (noting that the Westchester County Department of Corrections is not a legal entity and that the County of Westchester is the real party in interest). A municipality is not vicariously liable under 42 U.S.C. § 1983 for the acts of its employees. *Green v. City of New York,* 465 F.3d 65, 80 (2d Cir.2006). To impose liability on a municipality under 42 U.S.C. § 1983, the Plaintiff must demonstrate that the municipality itself caused the claimed constitutional violation through a policy or custom of the municipality or by a municipal official responsible for establishing final policy. *Jenkins v. City of New York,* 478 F.3d 76, ----, 2007 WL 415171, at *11 (2d Cir. Feb. 6, 2007); *Skehan v. Village of Mamaroneck,* 465 F.3d 96, 108-09 (2d Cir.2006). Assuming *arguendo* that the failure to send Plaintiff to the hospital was a constitutional violation, Plaintiff has presented no facts upon which a fair-minded trier of fact could reasonably conclude that the failure to send Plaintiff to a hospital was the result of a municipal policy or custom or was the result of a decision made by a final policymaker.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has failed to proffer sufficient facts from which a fair-minded trier of fact could reasonably conclude that Defendants acted with deliberate indifference toward a serious medical need.

**ORDERED,** that Defendants' Motion to preclude Plaintiff's expert testimony and for summary judgment (Dkt. No. 17) is **GRANTED;** and it is further

**ORDERED,** that Plaintiff's Complaint (Dkt. No. 1) and the case are **DISMISSED** in their **ENTIRETY;** and it is further

**ORDERED,** that the Clerk serve a copy of this Order on all parties by regular mail.

**IT IS SO ORDERED.**

N.D.N.Y.,2007.
Baptista v. Onondaga County Dept. of Corrections
Not Reported in F.Supp.2d, 2007 WL 911854 (N.D.N.Y.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.







H
Only the Westlaw citation is currently available.

United States District Court,
D. Colorado.
Dawn Canfield, Plaintiff,
v.
Douglas County, a public entity, Douglas County Department of Human Services, Valerie Elson, individual and official capacity, Lesa Adame, individual and official capacity, Cheryl Caplecha, individual and official capacity, Tracy Mudget, individual and official capacity, Kristine Johnson, individual and official capacity, Nicole Becht, individual and official capacity, Patrick Sweeney, individual and official capacity, Sherry Hansen, individual and official capacity, and Does 1 through 10, inclusive, Defendants.

Civil Action No. 14–cv–00461–KMT
1:14–cv–00461Signed December 16, 2014

Deborah L. Taussig, Taussig & Taussig, P.C., Boulder, CO, for Plaintiff.

Kelly Dunnaway, Castle Rock, CO, Kara Jean Rosenthal, Wheeler Trigg O'Donnell, LLP, Denver, CO, for Defendants.

**ORDER**

Kathleen M. Tafoya, United States Magistrate Judge

***1** This case involves claims that Defendants violated Plaintiff's constitutional rights and Colorado law. This matter is before the court on Defendants Douglas County Department of Human Services, Lesa Adame, Tracey Mudget, Kristine Johnson, Nicole Becht, Patrick Sweeney, and Sherry Hansen's ("Douglas Defendants") "Motion to Dismiss" (Doc. No. 31 [Mot.], filed May 16, 2014). Plaintiff filed her response on June 20, 2014 (Doc. No. 40 [Resp.] ), and Defendants filed their reply on June 27, 2014 (Doc. No. 43 [Reply] ). Defendants Valerie Elson and Cheryl Caplecha filed their Joinder in the Motion to Dismiss on August 6, 2014. (Doc. No. 70 [Joinder].) The motion is ripe for ruling.

**STATEMENT OF THE CASE**

Plaintiff's claims center around child custody proceedings and Plaintiff's loss of parental rights. (*See* Doc. No. 62 [Second Am. Compl.].) Plaintiff sues Douglas County and the Douglas County Department of Human Services ("DHS"), as well as various employees and agents of DHS. (*Id.*)

Plaintiff alleges in September 2010 she went to a domestic violence shelter with her two children because she was concerned her now ex-husband was a threat to her children. (*Id.*, ¶ 2021.) Plaintiff alleges in September 2010 the Arapahoe County DHS received a referral from the domestic violence shelter's therapist, and the investigation into the referral was transferred to the Douglas County DHS because of jurisdictional issues. (*Id.*, ¶¶ 21–22.) Plaintiff believes during the investigation, her ex-husband told the DHS defendants that Plaintiff had been arrested in 2008. (*Id.*, ¶ 23.) Plaintiff alleges her ex-husband gave the DHS defendants false and distorted information, but the DHS Defendants believed her husband. (*Id.*)

In early September 2010, Plaintiff filed for a temporary restraining order against her ex-husband, and the hearing was held on September 10, 2010. (*Id.*, ¶¶ 20, 24.) At the hearing, Plaintiff alleges she was confronted by a DHS defendant who expressed concern about Plaintiff's mental health and the safety of her children. (*Id.*, ¶ 24.) Plaintiff was ordered to return to court with her children on September 10, 2010 [FN1] for further proceedings. (*Id.*) After her return to court with her children, a counselor who had provided

marriage counseling to Plaintiff and her ex-husband and DHS case workers testified at the hearing, and the children were removed from Plaintiff's custody. (*Id.,* ¶¶ 26, 27, 32 on page 9.[FN2]) Plaintiff alleges she has been denied normal contact with her children since September 2010 "and has had no contact with her children since the ordered [sic] entered in juvenile court on February 24, 2012." (*Id.,* ¶ 29.)

FN1. In her Complaint, Plaintiff actually states she was ordered to bring the children to the court "on September, 2011." (*Id.*) This appears to be a typographical error.

FN2. The allegations on page 9 of the Complaint are numbered 27 and 32, and on page 10 are numbered 28, 29, 30, 31, and 32. To the extent the court references either paragraph 32, it also will specify the page number on which the paragraph is contained.

***2** Plaintiff alleges the DHS filed a Juvenile Dependency and Neglect Petition on October 4, 2010, "based solely on false statements by Mr. Canfiled and the paternal grandmother." (*Id.,* ¶ 31.) Plaintiff alleges the DHS defendants performed an assessment from September 3, 2010, until October 21, 2010, when Plaintiff received notice of a "finding of Injurious Environment" against Plaintiff. (*Id.,* ¶ 32 on page 10; ¶ 36.) On December 1, 2010, Plaintiff appeared for a hearing regarding the Dependency and Neglect Petition. (*Id.,* ¶ 42.) Plaintiff alleges at that time she was "coerced [by the defendants] into accepting" a plea of Stipulated Adjudication, after which Plaintiff was allowed contact with her children through supervised visits with children's paternal grandmother. (*Id.,* 42–44.)

Plaintiff states she was put on and completed a treatment plan which, according to DHS, would determine Plaintiff's ability to see her children and regain custody. (*Id.,* ¶¶ 43, 45.) However, "in an effort to prevent Plaintiff from re-establishing her parental rights, DHS forced Plaintiff to undergo a Parental Child Interactional (PCI)" with a biased psychiatric nurse who gave an unfavorable report to DHS. (*Id.,* ¶ 45.) After continued therapy with DHS examiners, Plaintiff hired two independent examiners who concluded Plaintiff was mentally stable and not a threat to her children. (*Id.,* ¶ 46.) Plaintiff alleges this exculpatory evidence was withheld by the defendants from the juvenile dependency court as a continuing effort to malign Plaintiff and keep her separated from her children. (*Id.*)

On October 27, 2011, a guardian *ad litem* was appointed to represent Plaintiff in Allocation of Parental Responsibility proceedings. (*Id.,* ¶ 48.) After hearings in December 2011 and January 2012, the court entered an Order of Allocation of Parental Responsibilities on February 24, 2014, which awarded sole decision-making and allocation of parental responsibilities to the children's father and limited Plaintiff to supervised visitations in a professional facility for three days per week for two to three hours. (*Id.,* ¶¶ 50–51.) Plaintiff alleges the defendants

> have engaged in a campaign of stymying any efforts by Plaintiff to reunify with her children by, but not limited to, the completing of actions ... and withholding important information from Plaintiff, failing to properly investigate sources of alleged child abuse ... [,] assigned blame to Plaintiff where none is due, failing to follow the advice of licensed professionals, and refusing to investigat[e] allegations" against the children's father.

(*Id.,*¶ 54.) Plaintiff states she is involved in ongoing custody proceedings. (*Id.,* ¶ 56.)

Plaintiff asserts claims for violations of her civil rights under 42 U.S.C. § 1983 (*id.* at 2224), *Monell*-related claims [FN3] (*id.* at 24–28), various Colorado tort claims (*id.* at 28–35), and a claim for declaratory

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

relief (*id.* at 35–37).

FN3. Asserted under *Monell v. New York City Dept. of Soc. Servs.,* 436 U.S. 658 (1978).

Defendants move to dismiss Plaintiff's Second Amended Complaint on the bases that (1) this Court lacks subject matter jurisdiction over this action; (2) this action is barred by the statute of limitations; (3) the claims are barred by collateral estoppel; (4) there is no *Monell*-type liability; and (5) the individual defendants are immune from liability. (*See* Mot.)

**STANDARD OF REVIEW**

***1. Lack of Subject Matter Jurisdiction***

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case. Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS,* 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir. 1974). A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *See Basso,* 495 F.2d at 909. The dismissal is without prejudice. *Brereton v. Bountiful City Corp.,* 434 F.3d 1213, 1218 (10th Cir. 2006); *see also Frederiksen v. City of Lockport,* 384 F.3d 437, 438 (7th Cir. 2004) (noting that dismissals for lack of jurisdiction should be without prejudice because a dismissal with prejudice is a disposition on the merits which a court lacking jurisdiction may not render).

***3** A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler,* 442 F.2d 674, 677 (10th Cir. 1971). When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States,* 46 F.3d 1000, 1003 (10th Cir. 1995). Where a party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the complaint's "factual allegations ... [and] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.*

***2. Failure to State a Claim Upon Which Relief Can Be Granted***

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.,* 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon,* 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste,* 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (citation omitted).

**ANALYSIS**

***1. Subject Matter Jurisdiction Over Familial Association Claim***

***4** Defendants argue that Plaintiff's Second Amended Complaint fails to raise a valid federal question, and thus this Court does not have subject matter jurisdiction. (Mot. at 3–6.)

Defendants attempt to characterize Plaintiff's § 1983 claim as a claim premised on malicious prosecution. (*Id.*) However, in the Complaint, Plaintiff asserts her substantive due process right to familial association was violated when the defendants subjected her to "false accusations on the basis of false evidence that was deliberately fabricated by the government" (Second Am. Compl., ¶¶ 60, 62), that the defendants used "improper and deceptive means to obtain judicial sustention of recommendations seeking to disparage Plaintiff's liberty interests" (*id.,* ¶ 63), and that the defendants provided the Juvenile Court with falsified information "with the intention that the Juvenile Court rely thereupon, and order that the [ ] children be removed from Plaintiff's custody, which it did" (*id.,* ¶ 64). In her response, Plaintiff concedes that she does not assert a claim for malicious prosecution under the Fourteenth Amendment. (*See* Resp. at 3.)

"The Supreme Court has long recognized family relationships as one of the liberties protected by the due process clause of the fourteenth amendment." *Spielman v. Hildebrand,* 873 F.2d 1377, 1383 (10th Cir. 1989). The court finds that Plaintiff has alleged a federal claim for a substantive due process violation under the Fourteenth Amendment, and the Court has jurisdiction over the claim. Therefore, Defendants' motion to dismiss Plaintiff's § 1983 claim for lack of subject matter jurisdiction is denied.

***2. First, Fourth, and Fifth Amendment Claims***

To the extent Plaintiff asserts a First Amendment familial association claim, the Supreme Court has clarified the constitutional sources of associational freedoms. In *Roberts v. United States Jaycees,* 468 U.S. 609 (1984), the Court held that application of the Minnesota Human Rights Act to compel the Jaycees to accept women as regular members did not infringe members' freedom of intimate association or their freedom of expressive association. While the Court anchored the freedom of expressive association in the First Amendment, *Jaycees,* 468 U.S. at 622, it identified the freedom of intimate association as "an intrinsic element of personal liberty," 468 U.S. at 620. *See also Wise v. Bravo,* 666 F.2d 1328, 1336–38 (10th Cir. 1981) (Seymour, J., concurring). In this case, Plain-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

tiff's claim is based on the freedom of intimate association and not the freedom of expressive association. Thus, Plaintiff's First Amendment Claim is dismissed for failure to state a claim upon which relief can be granted.

In her response, Plaintiff also appears to concede that she does not allege a Fourth Amendment claim. (*See* Resp. at 4, discussing the Fourth and Fourteenth Amendments as stating she "has clearly plead[ed] a violation of her constitutional rights of the Fourteenth Amendment....") Nevertheless, the Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. Amend. IV. There is no allegation in the Complaint that Plaintiff was unreasonably searched or seized. Therefore, to the extent Plaintiff asserts a Fourth Amendment claim, it is dismissed for failure to state a claim upon which relief can be granted.

***5** Finally, to the extent Plaintiff attempts to assert a Fifth Amendment claim, deprivations such as those alleged in the Complaint are not actionable pursuant to the Fifth Amendment unless the federal government is somehow involved. *Dockstader v. Miller,* 719 F.2d 327, 332 (10th Cir. 1983). Because there is no allegation of federal involvement, Plaintiff's claim based on the Fifth Amendment is dismissed for failure to state a claim upon which relief can be granted.

***3. Statute of Limitations***

Defendants also argue that Plaintiff's claims are barred by the statute of limitations. "[L]imitations periods in § 1983 claims are to be determined by reference to the appropriate state statute of limitations." *Hardin v. Straub,* 490 U.S. 536, 539 (1989); *Baker v. Bd. of Regents,* 991 F.2d 628, 632–33 (10th Cir. 1993) ("The length of a statute of limitations period and related questions of tolling and application are governed by state law, unless the tolling rules are inconsistent with federal law or [policy]."). In Colorado, actions brought under § 1983 are governed by the two-year statute of limitations codified at Colo.Rev.Stat. § 13–80–102(g). *Riel v. Reed,* 760 F.Supp. 852, 854–55 (D. Colo. 1991) (citations omitted); Colo.Rev.Stat. § 13–80102(g) ("The following civil actions ... shall be commenced within two years after the cause of action accrues, and not thereafter: ... all actions upon liability created by a federal statute where no period of limitations is provided in said federal statute.")

While state law governs the limitations period applicable to § 1983 claims, federal law specifies when a § 1983 claim accrues. *Newcomb v. Ingle,* 827 F.2d 675, 678 (10th Cir. 1987) (citations omitted); *Baker,* 991 F.2d 628, 632 (10th Cir. 1993). "Since the injury in a § 1983 case is the violation of a constitutional right, such claims accrue when the plaintiff knows or should know that his or her constitutional rights have been violated." *Smith v. City of Enid,* 149 F.3d 1151, 1154 (10th Cir. 1998) (quotation omitted). The plaintiff "need not know the full extent of [her] injuries before the statute of limitations begins to run." *Indus. Constructors Corp. v. U.S. Bureau of Reclamation,* 15 F.3d 963, 969 (10th Cir. 1994) (citations omitted). Additionally, "it is not necessary that a claimant know all of the evidence ultimately relied on for the cause of action to accrue." *Baker,* 991 F.2d at 632.

Plaintiff's only constitutional claim is her substantive due process claim regarding familial association. Thus, the court agrees with Defendants that the claim accrued on September 10, 2010, when her children were removed from her custody (*see* Second Am. Compl., ¶ 30) as this is when Plaintiff knew or should known that her constitutional rights to familial association had been violated.[FN4] *Smith,* 149 F.3d at 1154. Plaintiff was required to file this case on or before September 12, 2012. Plaintiff did not file her case in this Court until February 21, 2014. (Doc. No. 1.) Therefore, Plaintiff's constitutional claims are barred by the statute of limitations.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

FN4. To the extent Plaintiff attempts to argue when the statute of limitations accrues for a § conspiracy claim (Resp. at 5), Plaintiff has not asserted such a claim.

In a § 1983 action, state law governs issues regarding the statute of limitations and tolling. *Fratus v. DeLand,* 49 F.3d 673, 675 (10th Cir. 1995). Under Colorado law, a plaintiff bears the burden of demonstrating that the statute of limitations should be tolled. *See Lake Canal Reservoir Co. v. Beethe,* 227 P.3d 882, 886 (Colo. 2010).

***6** Though the argument is not entirely clear, it appears that Plaintiff argues her case should be tolled from September 2010 until she received the Order of Allocation of Parental Responsibilities issued on February 24, 2012. (*See* Resp. at 5.) The statute of limitations may be equitably tolled where the defendants' wrongful conduct prevented the plaintiff from asserting her claims in a timely manner. *Dean Witter Reynolds, Inc. v. Hartman,* 911 P.2d 1094, 1096 (Colo. 1996). Other jurisdictions have applied equitable tolling where "extraordinary circumstances" make it impossible for the plaintiff to file his or her claims within the statutory period. *Hartman,* 911 P.2d at 1097. The reasoning underlying these latter cases is that it is unfair to penalize the plaintiff for circumstances outside his or her control, so long as the plaintiff makes good faith efforts to pursue the claims when possible. *Id.* "Thus, an equitable tolling of a statute of limitations is limited to situations in which either the defendant has wrongfully impeded the plaintiff's ability to bring the claim or truly extraordinary circumstances prevented the plaintiff from filing his or her claim despite diligent efforts." *Id.* at 1099. Here, there is no allegation or evidence that the defendants wrongfully impeded Plaintiff's ability to bring her suit in this Court. Moreover, the Colorado Supreme Court has yet to find a case that qualifies as an "extraordinary circumstance" that would justify tolling.[FN5] The court finds equitable tolling should not be applied in this case.

FN5. The Colorado Supreme Court has relied on cases from other jurisdictions to illustrate that tolling may apply when a plaintiff is truly precluded from filing suit: *Hanger v. Abbott,* 73 U.S. (6 Wall.) 532, 18 L.Ed. 939 (1867) (courts in southern states were closed during the Civil War); *Seattle Audubon Society v. Robertson,* 931 F.2d 590 (9th Cir. 1991) (district court's erroneous enforcement of an unconstitutional statute barred plaintiff from filing), *rev'd on other grounds,* 503 U.S. 429 (1992); and *Osbourne v. United States,* 164 F.2d 767 (2d Cir. 1947) (plaintiff held by Japan during World War II). *See Hartman,* 911 P.2d at 1097. Plaintiff's circumstances are dissimilar to the circumstances in these cases.

Plaintiff also argues that the continuing violation doctrine, which would toll the statute of limitations until the entry of the Order of the Allocation of Parental Rights, is applicable to this case. (Resp. at 5.) However, the Tenth Circuit has never extended the doctrine in § 1983 cases, *Fogle v. Slack,* 419 Fed.Appx. 860, 864 (10th Cir. 2011), and this court also declines to do so.

Therefore, Plaintiff's constitutional claim is time barred and is dismissed.

***3. Supplemental Jurisdiction***

Plaintiff's remaining claims are Colorado tort claims. The court "may decline to exercise supplemental jurisdiction" over the state tort claims, because it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Tenth Circuit has made clear that it encourages and favors that the district courts decline to exercise jurisdiction on state law claims. *See Koch v. City of Del City,* 660 F.3d at 1248 ("When all federal claims have been dismissed, the court may, and usually should, decline

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

to exercise jurisdiction over any remaining state claims.”).

The court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, and they are dismissed without prejudice.

**WHEREFORE,** for the foregoing reasons, it is

**ORDERED** that Defendants' “Motion to Dismiss” (Doc. No. 31) is **GRANTED.** Plaintiff's First Claim for Relief, asserting constitutional violations, is dismissed with prejudice. Plaintiff's remaining Colorado tort claims are dismissed without prejudice. It is further

**ORDERED** that judgment shall enter in favor of the defendants and against the plaintiff. It is further

**ORDERED** that the defendants are awarded their costs to be taxed by the Clerk of Court in the time and manner prescribed by Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1. It is further

**ORDERED** that this case is **CLOSED.**

D.Colo., 2014
Canfield v. Douglas County
Not Reported in F.Supp.3d, 2014 WL 7186749 (D.Colo.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.







Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Kevin Damion CRICHLOW, Plaintiff,
v.
Commissioner Brian FISCHER, et al., Defendants.

No. 12–cv–7774 (NSR).
Signed Feb. 13, 2015.
Filed Feb. 17, 2015.

OPINION & ORDER
NELSON S. ROMÁN, District Judge.

***1** Kevin Damion Crichlow ("Plaintiff"), proceeding *pro se,* initiated this action against approximately 120 parties connected to his incarceration in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), including Commissioner Brian Fischer, various correctional officers, DOCCS employees, medical care providers, and others (collectively, "Defendants"). Plaintiff alleges a host of claims, including claims arising under 42 U.S.C. § 1983, for violations of the First, Fourth, Fifth, Sixth, Eight, and Fourteenth Amendments; the Rehabilitation Act of 1973 and the Americans with Disabilities Act; 42 U.S.C. § 1981 and the Thirteenth Amendment; 42 U.S.C. § 1985; and N.Y. state law. Plaintiff filed an amended complaint on June 17, 2013.

Before the Court are three motions filed by Plaintiff: (1) a motion for leave to file a second amended complaint; (2) a motion for a preliminary injunction; and (3) a motion for an extension of time in which to file a second amended complaint. For the reasons that follow, all three of Plaintiff's motions are DENIED. In addition, several named Defendants are dismissed *sua sponte,* and Plaintiff is ordered to show cause as to why this matter, as to the remaining defendants, should not be transferred to the Western District of New York.

**I. BACKGROUND**

Plaintiff initiated this action on October 16, 2012. (ECF No. 1.) His original Complaint contained over 160 pages, named 114 defendants, and set forth allegations from his incarceration at four different facilities. Plaintiff was directed by the Court on March 19, 2013, to file an amended complaint because his original complaint violated Rules 8 and 10 of the Federal Rules of Civil Procedure. (ECF No. 6.) The Court also questioned whether venue in this district is proper, as the majority of the claims asserted arose in other districts, but declined to resolve the issue at such an early stage in the proceedings. (*Id.* at 6–8.) Plaintiff filed his amended complaint on June 17, 2013. (ECF No. 12.) The Amended Complaint is nearly 140 pages long, names over 120 defendants, and contains similar pleading deficiencies.

It is difficult to determine what Plaintiff's claims or allegations are, as the Amended Complaint reads like a stream of consciousness the length of a short novel, covering approximately four years' worth of events of all sorts and citing long strings of statutes and cases; the original Complaint is in much the same shape, as are the various Complaints filed in the Plaintiff's previous case, No. 11 Civ. 883.[FN1] To the extent that the Court can discern, Plaintiff's claims cover a variety of complaints related to his incarceration, including claims related to denial of medical care, assault, asbestos removal in a correctional facility where he was housed, denial of special diets and exercise, denial of accommodations related to his hearing disability, and retaliation for the filing of grievances.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

FN1. Plaintiff has asserted at various stages that this case is related to a prior case that he filed in the Southern District of New York, No. 11 Civ. 883, which was dismissed on December 22, 2011. His request to consolidate this complaint with the one filed in the prior case was denied on April 11, 2013. (ECF No. 8.). In her order dismissing Plaintiff's prior case (No. 11 Civ. 883), Judge Forrest noted that the Plaintiff's original complaint was 300 pages long and named 96 individuals as defendants; after he was ordered to amend his complaint so that it complied with Rule 8, Plaintiff submitted an amended complaint that was 170 pages long and named 122 defendants. In September 2011, Plaintiff was provided one final opportunity to amend his complaint to bring it into compliance with Rule 8 and he failed to do so, resulting in the dismissal of his case without prejudice. *See Crichlow v. Fischer*, No. 11 Civ. 883, Order of Dismissal, ECF No. 28 (S.D.N.Y. Dec. 22, 2011). A review of the various complaints filed in these two cases shows that many of the defendants in this case overlap with the prior case, as do at least some of the allegations, such as those regarding denial of adequate medical care and denial of accommodations for his hearing disability.

**II. MOTION TO AMEND PLEADINGS**

***2** Plaintiff, by motion filed May 15, 2014,[FN2] seeks leave to file a second amended complaint in order to add two defendants and substitute the estate of a deceased defendant.

FN2. Plaintiff submitted two additional letters, filed on June 13 and July 2, 2014, before Defendants filed their opposition to the instant motion. These were docketed as letters in further support of the motion, and the Court also considered arguments made in those letters. Much of the contents of these letters, however, was irrelevant to the instant motion.

**a. Legal Standard**

A party may amend a pleading once as a matter of course or at any time before trial with leave of the court. Fed.R.Civ.P. 15(a) (1)—(2). If a party seeks leave to amend a pleading, "[t]he court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2). This does not, however, mean that parties should always be allowed to amend their pleadings. "Reasons for a proper denial of leave to amend include undue delay, bad faith, futility of amendment, and perhaps most important, the resulting prejudice to the opposing party." *State Teachers Ret. Bd. v. Fluor Corp,* 654 F.2d 843, 856 (2d Cir.1981) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

"Leave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact." *AEP Energy Services Gas Holding Co. v. Bank of America, N.A.,* 626 F.3d 699, 726 (2d Cir.2010) (quoting *Milanese v. Rust–Oleum Corp.,* 244 F.3d 104, 110 (2d Cir.2001)); *accord Ruotolo v. City of New York,* 514 F.3d 184, 191 (2d Cir.2008) (quoting *Foman,* 371 U.S. at 182). A proposed amendment is futile if it "could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Lucente v. Int'l Bus. Machs. Corp.,* 310 F.3d 243, 258 (2d Cir.2002). Thus, a court should deny a motion to amend if it does not contain enough factual allegations, accepted as true, to state a claim for relief that is "plausible on its face." *Riverhead Park Corp. v. Cardinale,* 881 F.Supp.2d 376, 379 (E.D.N.Y.2012) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)) (denying motion to add claims as futile). While *pro se* plaintiffs are held to less stringent standards, "even pro se plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

raise a right to relief above the speculative level." *Jackson v. N.Y.S. Dep't of Labor,* 709 F.Supp.2d 218, 224 (S.D.N.Y.2010) (quoting *Twombly,* 550 U.S. at 555) (internal quotation marks omitted).

In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009). It is important to note that "pleading is not an interactive game in which plaintiffs file a complaint, and then bat it back and forth with the Court over a rhetorical net until a viable complaint emerges." *In re Merrill Lynch Ltd. P'ships Litig,* 7 F.Supp.2d 256, 276 (S.D.N.Y.1997). The court's "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Geldzahler v. New York Medical College,* 663 F.Supp.2d 379, 387 (S.D.N.Y.2009) (internal citations and alterations omitted).

**b. Analysis**

***3** Plaintiff seeks to amend his pleadings to add two named defendants—C.O. Wardynski and Wende's former Grievance Supervisor Northrup—because the Amended Complaint contains allegations and claims directed at them, but these individuals are not currently named defendants and thus have not been served. (ECF No. 140; *see also* ECF No. 12.) The allegations made in the Amended Complaint regarding C.O. Wardynski concern statements made by the CO. and "bullying" that Plaintiff alleges he received at the hands of Wardynski. Accepting as true the facts pleaded in the Amended Complaint, it appears that C.O. Wardynski called Plaintiff a derogatory term, acted aggressively towards him, did not give Plaintiff a "shake-awake" alarm when he told Wardynski that he "need[ed] my Reasonable–Accommodation [sic]," and told Plaintiff to "get the f* * * outer [sic] his face" when Plaintiff told him that he needed emergency access to his legal papers. (ECF No. 12 ¶¶ 152–154, 159–161.) As to former Grievance Supervisor Northrup, there are two allegations made—one a general statement that the grievance department was not properly issuing grievance numbers for his grievance complaints, and the other an allegation that on March 16, 2012, Northrup stated that Plaintiff was receiving his Jewish Alternative Diet to cover up wrongdoing by the cooks. (ECF No. 12 ¶¶ 109, 213.)

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege the direct or personal involvement of each defendant in the alleged constitutional deprivation. *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). There is no *respondeat superior* or vicarious liability in a Section 1983 action. *See Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691 (1978); *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996). Plaintiff has not specifically alleged any personal involvement by Grievance Supervisor Northrup in the handling of grievance complaints; rather, Northrup's name simply appears in a list of grievance department staff alleged to have mishandled Plaintiff's complaints. The Amended Complaint does not allege any personal involvement on the part of Northrup himself, and thus this claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6). To the extent that Plaintiff might be raising a due process claim against Northrup for allegedly not following DOCS grievance procedures, he has not asserted that he was deprived of any substantive liberty interest and thus his claim fails as a matter of law. *See Brown v. Graham,* 470 Fed. App'x 11, 13 (2d Cir.2012).

As to the other allegations made against Northrup, Plaintiff also fails to state a plausible claim. It appears from the Amended Complaint that Plaintiff alleges Grievance Supervisor Northrup, by stating that Plaintiff was receiving a Jewish alternative diet even though he was not, prevented him from receiving his alternative diet on March 16, 2012. Such a claim would arise under Section 1983 as a violation of Plaintiff's free exercise rights under the First Amendment. Generally, an inmate is entitled to a reasonable accommodation of his religious beliefs,

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

including religious dietary beliefs. *See Jackson v. Mann,* 196 F.3d 316, 320 (2d Cir.1999). "[P]rison officials must provide a prisoner a diet that is consistent with this religious scruples." *Bass v. Coughlin,* 976 F.2d 98, 99 (2d Cir.1992) (*per curiam* ). Plaintiff, however, has only alleged Northrup's participation in a single incident in which he was denied a kosher meal; without more, any involvement by Northrup is *de minimis* and does not rise to the level of a substantial burden on Plaintiff's religious freedom. *See Brown v. Graham,* 470 Fed. App'x 11, 15 (2d Cir.2012) (holding that failure to provide kosher meal on single occasion did not rise to level of substantial burden on inmate's religious freedom).

***4** Plaintiff's amended complaint appears to assert a retaliation claim against C.O. Wardynski—namely, that Wardynski retaliated against Plaintiff for filing grievances by bullying him. "To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. County of Nassau,* 732 F.3d 157, 160 (2d Cir.2013); *see also Curley v. Village of Suffern,* 268 F.3d 65, 73 (2d Cir.2001). Plaintiff has not alleged that he had a protected First Amendment right at issue, and he has only alleged that C.O Wardynski knew about his grievances, not that the C.O.'s actions were motivated or caused by them. Plaintiff stated that C.O. Wardynski told him he received a call from two other correctional officers saying that Plaintiff liked to write up C.O.s, but there are no allegations that Plaintiff filed a grievance against Wardynski himself or that Plaintiff's filing of grievances against officers in general was a motivating factor in Wardynski's bullying of Plaintiff. In addition, for the third element, a plaintiff must show "either that his speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm." *Dorsett,* 732 F.3d at 160. The bullying appears to have essentially consisted of C.O. Wardynski cursing at Plaintiff on several occasions and acting aggressively towards him. Plaintiff has not alleged that he suffered a concrete harm or that his speech was chilled; in fact, he appears to have continued filing grievances against other DOCCS staff.

Plaintiff's proposed amendments to his pleadings would be futile, because the allegations against C.O. Wardynski and Grievance Supervisor Northrup are insufficient to withstand a motion to dismiss pursuant to Rule 12(b)(6). Thus, Plaintiff's motion for leave to amend his complaint is denied.

**III. SUBSTITUTION OF DEFENDANT SENIOR COUNSELOR WILLIAM'S ESTATE**

Plaintiff further seeks, in his motion to amend his complaint, substitution of the estate of Defendant S.D.U. Senior Counselor William. The Court considers this request as a motion for substitution under Rule 25(a)(1). "[C]ontrolling precedent indicates that a section 1983 claim would survive a defendant's death under New York law." *Barrett v. U.S.,* 651 F.Supp. 604, 606 (S.D.N.Y.1986); *accord Young v. Patrice,* 832 F.Supp. 721, 724 (S.D.N.Y.1993) (holding that prisoner had right to pursue Section 1983 claim against estate of deceased correctional officer sued in his personal capacity). Under Rule 25, "[a] motion to substitute, together with a notice of hearing, must be served on the parties ... and on nonparties as provided in Rule 4 ... [and a] statement noting death must be served in the same manner." Fed.R.Civ.P. 25(a)(3). Such a motion must be made "within 90 days after service of a statement noting the death" or else the action against the decedent must be dismissed. Fed.R.Civ.P. 25(a)(1). "The true successor of [the defendant] for the purposes of this action is [the defendant's] estate, and the executor of the estate is the proper party to be substituted as a successor." *Young,* 832 F.Supp. at 725; *accord Swiggett v. Coombe,* No. 95 Civ. 4916, 2003 WL 174311, at *2 (S.D.N.Y. Jan 27, 2003) ("It is well-settled that when a defendant in a § 1983 action dies, who has been sued in his individual capacity, the proper party to substitute is the successor

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

of the deceased or the representative of his estate .").

***5** Plaintiff has not identified the estate representative who would step into the shoes of Senior Counselor William if substituted, and no statement of death has yet been served or filed in this case. Thus, Plaintiff's time to properly file a motion for substitution has not yet run. His current motion, however, violates Rule 25 because the non-party estate representative who would be substituted as a defendant has not been served with Plaintiff's motion. It appears from the docket that counsel for the defendants who have been served was also served with the summons and complaint purportedly on behalf of Senior Counselor William's estate (*see* ECF No. 152), but the actual estate representative who would be substituted as a defendant has not been served. Service of a motion to substitute on the government's attorney after the death of a correctional officer is not effective service on the estate of an officer, as a nonparty, in a civil rights action; personal service on the estate representative is required. *See Giles v. Campbell,* 698 F.3d 153, 158 (3d Cir.2012); *accord Ransom v. Brennan,* 437 F.2d 513 (5th Cir.1971) (holding that court lacked personal jurisdiction over executrix when motion to substitute was filed only on deceased's attorney, not executrix personally); *Atkins v. City of Chicago,* 547 F.3d 869, 874 (7th Cir.2008) (holding that motion to substitute filed without serving the personal representative of the deceased's estate was "a nullity").

Thus, Plaintiff's motion for substitution is denied, without prejudiceto refiling at a later date, for failure to follow the procedure set forth in Rule 25 and Rule 4. As a statement noting death has not yet been served, the 90–day time period to file and serve a motion for substitution at a later time has not yet begun to run.

## IV. MOTION FOR PRELIMINARY INJUNCTION

Plaintiff, by motion filed July 30, 2014, requests that this Court issue a preliminary injunction in the form of an order directing:

> Defendants, their successors, agents, employees, and all persons acting in concert with them to provide plaintiffs [sic] and other inmates in the administrative segregation R.M.U.S.H.U. access to respound [sic] back to boths [sic] federal courts and states courts and stop retaliatedions [sic] and assaults also mishandling of grievances and access to pen, supplies, materials, books, copys [sic], and also notary.

Plaintiff's Motion for Preliminary Injunction at 6.

### a. Legal Standard

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 22 (2008). In the Second Circuit, a party seeking a preliminary injunction "must demonstrate that it will suffer irreparable harm absent injunctive relief and either (1) that it is likely to succeed on the merits of the action, or (2) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, provided that the balance of hardships tips decidedly in favor of the moving party." *Mullins v. City of New York,* 626 F.3d 47, 52–53 (2d Cir.2010); *see also Lynch v. City of New York,* 589 F.3d 94, 98 (2d Cir.2009). Where a party seeks a mandatory injunction that "alter[s] the status quo by commanding some positive act," such as in this case, that party must meet an even higher standard. *Tom Doherty Associates, Inc. v.. Saban Entm't, Inc.,* 60 F.3d 27, 34 (2d Cir.1995). The moving party must establish a " 'clear' or 'substantial' likelihood of success," or show that "extreme or very serious damage" would result in the absence of preliminary relief. *Id.* at 34.

### b. Analysis

***6** As an initial matter, Plaintiff lacks standing to seek a preliminary injunction on behalf of "other inmates in the administrative segregation

R.M.U.S.H.U." because this is not a class action. *See, e.g., Khalil v. Laird,* 353 Fed. App'x 620, 621 (2d Cir.2009) (summ.order) (prisoner proceeding pro se "is not empowered to proceed on behalf of anyone other than himself"); *accord Davis v. Wall,* 50 F.3d 1033 *2 n. 3 (5th Cir.1995); *Hamm v. Grosse,* 15 F.3d 110, 112 (8th Cir.1994); *Doe v. Selsky,* 841 F.Supp.2d 730, 733 (W.D.N.Y.2012). Thus, the Court construes Plaintiff's motion as requesting an injunction only on behalf of himself.

Plaintiff seeks a mandatory injunction "commanding some positive act," and thus must meet the higher standard for a preliminary injunction—he must establish a clear or substantial likelihood of success or show that extreme or very serious damage would result in the absence of the requested injunction. Plaintiff has not alleged or established that extreme or very serious damage would result if the Court declined to issue an injunction, and thus the Court looks to the first part of the standard—likelihood of success.

In order to succeed on a Section 1983 claim for a constitutional violation, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009). Because personal involvement of each defendant is a required element of a Section 1983 claim, Plaintiff cannot show likelihood of success as to many of the defendants named in this case. First, many of the defendants named in the caption are not named in any part of the complaint itself, and thus no allegations of personal involvement as to these defendants have been made and Plaintiff's Section 1983 claims against them fail. In addition, Plaintiff fails to allege *specific* facts regarding violations by most of the defendants named, even if their names appear somewhere within the text of the complaint. Conclusory allegations of constitutional violations without factual underpinnings are not sufficient to prevail on a Section 1983 claim.

It is unclear whether Plaintiff is suing each Defendant in his or her individual or official capacity, with the exception of Commissioner Brian Fischer of DOCCS, who is listed as a defendant in both capacities. It is well-established that New York has not consented to Section 1983 suits in federal court, *Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 38–40 (2d Cir.1977), and that Section 1983 was not intended to override a state's sovereign immunity, *Quern v. Jordan,* 440 U.S. 332, 340–42 (1979). A Section 1983 claim against a New York state official in his official capacity is thus deemed to be a suit against the state of New York, *Kentucky v. Graham,* 473 U.S. 159, 165–66 (1985), and the Eleventh Amendment precludes any such claim. To the extent that Plaintiff asserts claims against various Defendants in their official capacities, he cannot establish the likelihood of success necessary for an injunction.

***7** As to his specific complaints against individual defendants, Plaintiff cannot establish a clear or substantial likelihood of success on most of his claims. First, to the extent that Plaintiff alleges that he is being denied access to the courts, the mere limitation of access to legal materials, without more, does not rise to the level of a constitutional violation. "[T]o establish a constitutional violation based on a denial of access to the courts, a plaintiff must show that the defendant's conduct was *deliberate and malicious,* and that the defendant's actions resulted in *actual injury* to the plaintiff." *Collins v. Goord,* 581 F.Supp.2d 563, 573 (S.D.N.Y.2008) (emphasis added) (citing *Davis v.. Goord,* 320 F.3d 346, 351 (2d Cir.2003)). "To show actual injury, the plaintiff must demonstrate that the defendant's conduct frustrated the plaintiff's efforts to pursue a nonfrivolous claim." *Id.* (citing *Lewis v. Casey,* 518 U.S. 343, 353 (1996)). "To state a claim that his constitutional right to access the court was violated, plaintiff must allege facts demonstrating that defendants deliberately and maliciously interfered with his access to the courts, and that such conduct materially prejudiced a legal action he sought to pur-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

sue." *Smith v. O'Connor,* 901 F.Supp. 644, 649 (S.D.N.Y.1995); *see also Ramsey v. Goord,* 661 F.Supp.2d 370, 401 (W.D.N.Y.2009). Plaintiff's Amended Complaint and moving papers are silent as to any actual injury incurred and there are, at most, only conclusory suggestions that the denial was malicious or deliberate. His proposed amendments do not change this conclusion. Plaintiff's failure to allege a key element of a denial of access claim means that he cannot establish a clear or substantial likelihood of success on the merits.

Second, Plaintiff cannot, as a matter of law, prevail on a claim that the defendants are unlawfully withholding documents because he cannot afford to make copies. An inmate does not have a constitutional right to free copies. *See Collins v. Goord,* 438 F.Supp.2d 399, 416 (S.D.N.Y.2006) ("[A]n inmate has no constitutional right to free copies and prison regulations that limit access to such copies are reasonably related to legitimate penological interests.") (citations and internal quotation marks omitted). This claim also cannot support a preliminary injunction.

Third, Plaintiff alleges that he has been denied access to documents covered by his Freedom of Information Law ("FOIL") requests. Though not a part of his Amended Complaint, Plaintiff sets forth this claim in his moving papers; he does not, however, provide any evidence other than conclusory statements regarding the failure of Wende Correctional Facility to turn over such documents. In fact, it appears that Plaintiff was advised that there were no responsive documents to his FOIL requests. (*See* Def.'s Opp'n Pl .'s Mot. Prelim. Inj. Ex. A.) There thus appears to be no merit to Plaintiff's claim.

***8** Finally, Plaintiff has failed to sufficiently establish a clear or substantial likelihood of success as to his various other claims. Preliminary injunction requests are "frequently denied if the affidavits [in support of the motion] are too vague or conclusory to demonstrate a clear right to relief under Rule 65." *Malki v. Hayes,* No. 11 Civ. 5909, 2012 WL 32611, at *8 (E.D.N.Y. Jan. 5, 2012) ("Plaintiff's allegation that 'he will be irreparably harmed by all kinds of threats of harassment, intimidate, and stiff punishment' absent an injunction is speculative.") (citation omitted). Plaintiff has not pled specific facts to establish a clear or substantial likelihood of success as to the overwhelming majority, if not all, of the defendants. Lists of statutes and cases, many of which are not binding on this Court, are not persuasive without factual allegations as to the violations that occurred and the personal involvement of each defendant. The changes that Plaintiff seeks to make in his proposed second amended complaint do not change this conclusion.

Conclusory allegations lacking supporting evidence will not support a preliminary injunction. *See Hancock v. Essential Resources, Inc.,* 792 F.Supp. 924, 928 (S.D.N.Y.1992) ("Preliminary injunctive relief cannot rest on mere hypotheticals."). The only evidence submitted by Plaintiff in support of his motion consists of medical records, most of which are irrelevant to the current claims. Plaintiff has not demonstrated a clear or substantial likelihood of success or shown that extreme or very serious damage would result in the absence of preliminary relief. Thus, he is not entitled to injunctive relief at this time and the motion is denied.

**V. MOTION FOR EXTENSION OF TIME TO FILE SECOND AMENDED COMPLAINT**

Plaintiff also submitted a motion to the Court requesting an extension of time in which to file his second amended complaint, citing injuries that cause him additional pain when he handwrites legal documents. This motion is denied as moot because Plaintiff's motion to amend his complaint is denied, as discussed above.

**VI. VENUE**

The Court alerted Plaintiff in its March 19, 2013, Order that "he may be directed to show cause why this matter should not be transferred for the convenience of

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

parties and witnesses and in the interests of justice" under 28 U.S.C. § 1404(a). (ECF No. 6 at 8.) At that time, the Court questioned whether this matter should be litigated in this District, as the "vast majority of his claims arose in other districts." (ECF No. 6 at 7.) The events giving rise to this action occurred in four different correctional facilities, only one of which is located in the Southern District of New York—Downstate Correctional Facility, at which Plaintiff spent only 120 days out of the several years' worth of allegations covered in his pleadings.

Under 28 U.S.C. § 1404(a), "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Courts look to several factors to determine whether transfer would be appropriate: (1) the convenience of witnesses; (2) the convenience of the parties; (3) the locus of operative facts; (4) the availability of process to compel the attendance of unwilling witnesses; (5) the location of relevant documents and the relative ease of access to sources of proof; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded to plaintiff's choice of forum; (9) trial efficiency; and (10) the interest of justice, based on the totality of the circumstances. *Keitt v. New York City,* 882 F.Supp.2d 412 (S.D.N.Y.2011) (citing *DealTime.com, Ltd. v. McNulty,* 123 F.Supp.2d 750, 755 (S.D.N.Y.2000)). While a plaintiff's choice of forum is accorded some deference, it receives less consideration when the plaintiff does not reside in the chosen forum and the operative facts did not occur there. *See Dwyer v. Gen. Motors Corp.,* 853 F.Supp. 690, 694 (S.D.N.Y.1994). Plaintiff was confined at Wende Correctional Facility, which lies in the Western District, at the time of filing this action. It appears that Plaintiff was recently relocated to Sullivan Correctional Facility, which lies in the Southern District, but this does not suddenly make the Southern District the appropriate venue for this case. Because Plaintiff is incarcerated, his current location is of little logistical import, and most of the other factors—the convenience of witnesses, the convenience of the parties, the locus of operative facts, the location of relevant documents and the relative ease of access to sources of proof, and trial efficiency—weigh heavily in favor of transferring the case to the Western District of New York, as the district in which most of the events alleged in this matter occurred.

***9** Additionally, the venue requirement "serves the purpose of protecting a defendant from the inconvenience of having to defend an action in a trial that is either remote from the defendant's residence or from the place where the acts underlying the controversy occurred." *Shariff v. Goord,* No. 03 Civ. 7664, 2005 WL 2087840, at *6 (S.D.N.Y. Aug. 26, 2005) (quoting *Leon C. Baker, P.C. v. Bennett,* 942 F.Supp. 171, 175 (S.D.N.Y.1996)) (internal quotation marks and citation omitted). The Defendants in this case are state officials. "State officers 'reside' in the district where they perform their official duties." *Holmes v. Grant,* No. 03 Civ. 3426, 2006 WL 851753, at *21 (S.D.N.Y. Mar. 31, 2006) (citing *Amaker v. Haponik,* 198 F.R.D. 386, 391 (S.D.N.Y.2000)). As far as the Court can discern from the Amended Complaint, all (or nearly all) of the Defendants "perform their official duties" in either the Western District or Northern District of New York. Plaintiff does not allege that any of the Defendants "reside" in the Southern District.

Thus, the Court orders Plaintiff to show cause by March 13, 2015, as to why this case should not be transferred to the Western District of New York. If Plaintiff fails to do so, his case may be dismissed or transferred.

## VII. DISMISSAL OF SOME DEFENDANTS

A district court "shall dismiss" a case initiated by a *pro se* plaintiff *sua sponte* if the court determines that it "(i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2) (B). Vicar-

ious liability principles do not apply in a Section 1983 case, and thus a complaint must contain well-pleaded allegations that *each* government-official defendant, through that person's *individual* actions, violated the Constitution. *Iqbal,* 556 U.S. at 676; *see also* *Shomo v. City of New York,* 579 F.3d 176, 184 (2d Cir.2009) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983"). Where, as here, the caption of the complaint is the only reference to certain individual defendants, any Section 1983 claims against those defendants cannot withstand even the most generous facial review under Rule 12(b)(6) or 28 U.S.C. § 1915A.

Several named Defendants are thus *sua sponte* dismissed from this case, because the Amended Complaint contains no reference whatsoever to them outside of the case caption, and Plaintiff has made no factual allegations as to any personal involvement on their part in any violation of his rights. They are listed in the caption as follows:

• Sticht, Deputy Supt. of Security

• Ms. Crowley, Deputy Supt. of Programs

• Mr. Powell, M.H.V. Unit Chief

• Ms. Watkins, Senior Counselor

• A. Anzel, Sensorial Disabled, A.D.A.

• C.O. Michael Lucas

***10** • Lt. Timothy Pilneilein

• Hall Sergeant Michael Skelly

• Head Cook Ward Bonds

• Bryan Bradt, Instructor for the Blind, S.D.U.

• Cook Carol Caldwell

• C.O. True

• C.O. Hodge

• C.O. Phipps

• Virginia Bluff, Physician Assistant and Infection Control Nurse

• Nurse Nicole White

• Lieutenant Randall Ziolkowski

• C.O. Bryant Allen

• Sergeant Anthony Sindoni

• Diane Toporek

• Nurse Administrator Joyce Vesnia

• Mario Malvarosa, M.D.

• G. Cognilio, M.D.

• C.O. Jacobs, 12/15/2009 7:25 AM

• Sergeant Barker

• Sgt. Linda Evans

• Sgt. Timothy Lewalski

• G. Turbush, Deputy Supt. of Programs

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

• C.O. Gibbs

• S.H.U. C.O. M. Anderson

• C.O. K. Eckowski, also known as Eckowski

• C.O. Coppadimis

• Lieutenant Bauman

• Schoonmaker

• Denise M. Faizon, R.N.

• Nurse Biaveit, C.C.N.p.

In addition, several more named Defendants are *sua sponte* dismissed from this case, because they appear in the caption more than once (sometimes with spelling variations, but clearly the same people from the text of the amended complaint itself), and their inclusion multiple times is redundant. The duplicates are listed in the caption as follows:

• Superintendent John Doe

• Grievance Supervisor Terry Houk

• Biaveit, C.C.N.P. Nurse Administrator

• Deputy Supt. of Security

• Lt. R. Freeman, threatened to set me up or beat me up at 11:00 AM

• P. Griffin, Deputy Super of Security

• Sergeant B. Lightfeld

• C.O. D. Wilson

• K. Sklosarska

• C.O. Babcock

• John Does, S.H.U. OM on or about 11/10/11 Destroyed my Second Amended Complaint Case No. 11cv883 (CM)

Finally, some of the John Doe and Jane Doe Defendants are *sua sponte* dismissed from this case. Under *Valentin,* a *pro se* litigant is entitled to assistance from the district court in identifying a defendant. *Valentin v. Dinkins,* 121 F.3d 72, 76 (2d Cir.1997). The Plaintiff, however, must provide sufficient information to allow an unknown defendant to be identified, and Plaintiff has failed to do so for at least some of the unknown defendants in this case. They are listed in the caption as follows:

• Doctor John Doe

• Doctor Jane Doe

• C.O. John Doe, S.D.V. 7–3

• C.O. John Doe, S.D.V. 7–3

• Jane Doe, S.D.U.

• John Doe

This is now the second time that these (or substantially similar) claims have been filed against many of these defendants,[FN3] and the Amended Complaint in this case appears to be at least the fourth iteration of many of the same claims (across the two cases). Plaintiff is admonished that the continued filing of frivolous or nonexistent claims, and the continued use of the U.S. Marshalls to serve defendants who are not even named within the allegations themselves, is an

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

unacceptable waste of judicial resources.

FN3. See the discussion of Plaintiff's prior case, No. 11 Civ. 883, in note 1, *supra*.

**VIII. CONCLUSION**

***11** For the foregoing reasons, the Plaintiff's motion to amend his complaint is DENIED; Plaintiff's motion for a preliminary injunction is DENIED; and Plaintiff's motion for an extension of time in which to file his seconded amended complaint is also DENIED. The Clerk of Court is respectfully directed to terminate the motions at Docket Nos. 140, 146, and 151.

In addition, the Clerk of Court is respectfully directed to dismiss the Defendants listed above in Section VI, Dismissal of Some Defendants (on pages 16–18 of this Opinion), from this case.

Finally, Plaintiff is ordered to show cause by March 13, 2015, as to why this matter should not be transferred to the District Court for the Western District of New York, as to the remaining defendants.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purposes of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45 (1962).

SO ORDERED.

S.D.N.Y.,2015.
Crichlow v. Fischer
Slip Copy, 2015 WL 678725 (S.D.N.Y.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Alisha DEXTER and Lemorris Dexter, Plaintiffs,
v.
The CITY OF SYRACUSE, et al., Defendants.

No. 5:14–CV–0363.
Signed June 11, 2014.

Alisha Dexter, Lemorris M. Dexter II, Syracuse, NY, pro se.

None, for Defendants.

***DECISION and ORDER***

THOMAS J. McAVOY, Senior District Judge.

***1** This *pro se* 42 U.S.C. § 1983 action was referred to the Hon. David E. Peebles, Jr. United States Magistrate Judge, for a Report–Recommendation pursuant to 28 U.S.C. § 636(b).

No objections to the May 6, 2014 Report–Recommendation have been raised. After examining the record, this Court has determined that the Report–Recommendation is not subject to attack for plain error or manifest injustice. Accordingly, this Court adopts the Report–Recommendation for the reasons stated therein.

It is, therefore, ORDERED that:

(1) the claims asserted under 42 U.S.C. § 1983 against defendant City of Syracuse, as well as defendants Stephanie Miner and Frank Fowler in their individual capacities, be DISMISSED without prejudice;

(2) the claims asserted under 42 U.S.C. § 1983 against defendant Syracuse Police Department, as well as defendants Stephanie Miner, Frank Fowler, A. Mahar, and M. Vella in their official capacities, be DISMISSED with prejudice;

(3) the negligence claim, to the extent it is asserted under 42 U.S.C. § 1983, be DISMISSED with prejudice;

(4) plaintiffs may file an amended complaint that complies with the requirements of stated in Magistrate Judge Peeples order within 21 days.

(5) if plaintiffs fail to file an amended complaint in compliance with the requirements of this Order, their original complaint will remain the operative pleading and this matter shall proceed only as against defendants Mahar, Vella, and Doe in their individual capacities.

IT IS SO ORDERED.

*REPORT, RECOMMENDATION, AND ORDER*

DAVID E. PEEBLES, United States Magistrate Judge.

*Pro se* plaintiffs Lemorris M. Dexter II and Alisha Dexter have commenced this action against the City of Syracuse, the Syracuse Police Department, and five named individuals, pursuant to 42 U.S.C. § 1983, alleging deprivations of their civil rights, and request leave to proceed in the action *in forma pauperis* ("IFP"). For the reasons set forth below, plaintiffs' motion to proceed IFP is granted. I recommend, however, that their section 1983 claims be dismissed as asserted against some of the named defendants.

I. *BACKGROUND*

Plaintiffs commenced this action on April 2, 2014, with the filing of a complaint and an application to proceed IFP.[FN1] Dkt. Nos. 1, 2. In their complaint, plaintiffs allege that, on January 4, 2012, while at their residence, located in Syracuse, New York, they observed two unidentified individuals allegedly trespassing on their property. Dkt. No. 1 at 2. After calling 911 to summon the police, defendants A. Mahar and M. Vella, two City of Syracuse police officers, arrived at plaintiffs' residence. *Id.* According to plaintiffs, defendants Mahar and Vella "made no attempt to investigate" their complaint about trespassers, "and instead became hostile toward[s]" them. *Id.* When plaintiff Lemorris Dexter began to explain the basis for their 911 call, defendants Mahar and Vella ignored him and "began using vulgar language and profanity." *Id.* Thereafter, and without cause, defendants Mahar and Vella allegedly used unnecessary and excessive physical force to arrest both plaintiffs. *Id.* The complaint alleges that plaintiff Alisha Dexter sustained cuts and abrasions to her head and face, as well as mental trauma, as a result of the use of force by defendants Mahar and Vella. *Id.* at 2, 3. In addition, it is alleged that plaintiff Lemorris Dexter suffered abrasions to his wrists, hands, and back of his arms during the incident. *Id.* at 3.

FN1. The action was commenced with the filing of a pleading formatted as a "claim" and identifying the plaintiffs as "claimants" and defendants as "respondents." Dkt. No. 1 at 1. In deference to their *pro se* status, the court has construed the pleading as a complaint. I note also that the complaint is signed by an attorney, John A Longretta, Esq. *Id.* at 3. Attorney Longretta has advised the court, however, that he does not represent the plaintiffs in this matter. Docket Entry Dated Apr. 4, 2014.

***2** Based on the foregoing allegations, plaintiffs' complaint asserts claims arising under section 1983 for violation of their Fourth and Eighth Amendment rights against the following defendants: (1) the City of Syracuse, (2) City of Syracuse Mayor Stephanie Miner, (3) the Syracuse Police Department ("SPD"), (3) SPD Chief of Police Frank Fowler, (4) SPD Officer Mahar, (5) SPD Officer Vella, and (5) SPD Officer John Doe. *See generally* Dkt. No. 1.

II. *DISCUSSION*

A. *Plaintiffs' Application to Proceed IFP*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed IFP if it determines that he is unable to pay the required filing fee. 28 U.S.C. § 1915(a)(1).[FN2] In this instance, because I conclude that plaintiffs meet the requirements for IFP status, their application for leave to proceed IFP is granted.[FN3]

FN2. The language of that section is ambiguous, in that it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). Courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States,* 71 Fed. Cl. 366, 367 (Fed.Cl.2006); *see also Fridman v. City of New York,* 195 F.Supp.2d 534, 536 n. 1 (S.D.N.Y.2002).

FN3. Plaintiffs are reminded that, although their IFP application has been granted, they will nonetheless be required to pay fees that

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

he incurs in this action, including copying and/or witness fees.

B. *Sufficiency of Plaintiffs' Complaint*

1. *Governing Legal Standard*

Because I have found that plaintiffs satisfy the financial criteria for commencing this case IFP, I must next consider the sufficiency of the claims set forth in their complaint in light of 28 U.S.C. § 1915(e). Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983). However, the court also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.,* 221 F.3d 362, 363 (2d Cir.2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " *Aguilar v. United States,* Nos. 99–MC–0304, 99–MC0408, 1999 WL 1067841, at *2 (D.Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998)); *see also Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan,* 49 F.3d 51, 53 (2d Cir.1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for the purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

***3** When reviewing a complaint under section 1915(e), the court looks to applicable requirements of the Federal Rules of Civil Procedure for guidance. Specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank,* 162 F.R.D. 15, 16 (N.D.N.Y.1995) (McAvoy, J.) (quotation marks and italics omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Although the court should construe the factual allegations in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555). Thus, "where the wellpleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed.R.Civ.P. 8(a)(2)).

2. *Analysis*

Plaintiffs' complaint asserts claims "sounding in negligence, excessive force, false arrest and violation of the [plaintiffs'] Civil Rights[.]" Dkt. No. 1 at 2. Liberally construed, plaintiff contends that his rights under the Fourth and Eighth Amendment were violated pursuant to section 1983.

As a general matter, section 1983 "establishes a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortgage Corp.,* 885 F.Supp. 537, 573 (S.D.N.Y.1995) (citing *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990) (quoting 42 U.S.C. § 1983)). It " 'is not itself a source of substantive rights[,] ... but merely provides 'a method for vindicating federal rights elsewhere conferred[.]' " *Patterson v. Cnty. of Oneida,* 375 F.3d 206, 225 (2d Cir.2004) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). In order to state a claim pursuant to section 1983, a plaintiff must allege "(1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived him of that right acted under color of state ... law.' " *Velez v. Levy,* 401 F.3d 75, 84 (2d Cir.2005) (quoting *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980)).

***4** In this case, a careful review of plaintiffs' complaint reveals that some of their section 1983 claims lack palpable merit.

i. *Plaintiffs' Negligence Claim*

Plaintiffs assert a negligence claim against the defendants. Dkt. No. 1 at 2. To the extent they assert that claim pursuant to section 1983, negligence is not actionable under that provision. *See, e.g., Dzwonczyk v. Syracuse City Police Dep't,* 710 F.Supp.2d 248, 261 (N.D.N.Y.2008) (McCurn, J.) ("As an initial matter, the court notes that to the extent Plaintiff purports to allege a negligence claim against the Defendants under 42 U.S.C. § 1983, such a claim is dismissed as negligence is not cognizable under [section] 1983."). Accordingly, I recommend that plaintiffs' negligence claim be dismissed to the extent it is asserted against defendants under section 1983.

ii. *Plaintiffs' Municipal Liability Claim Asserted Against Defendant City of Syracuse*

While amenable to suit under section 1983, a municipality may not be held liable under that section for the acts of its employees based on a theory of *respondeat superior. Monell v. Dep't of Social Servs. of City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Blond v. City of Schenectady,* No.

10–CV–0598, 2010 WL 4316810, at *3 (N.D.N.Y. Oct.26, 2010) (McAvoy, J.); *Birdsall v. City of Hartford,* 249 F.Supp.2d 163, 173 (D.Conn.2003). For liability to attach against a municipality under section 1983, a plaintiff must establish that the alleged constitutional violation resulted from "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers ... [or] pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell,* 436 U.S. at 690–91; *Blond,* 201 WL 4316810, at *3; *Perez v. Cnty. of Westchester,* 83 F.Supp.2d 435, 438 (S.D.N.Y.2000).

In this case, plaintiffs' complaint alleges no facts plausibly alleging that their constitutional violations resulted from a policy or custom adopted by defendant

City of Syracuse. *See generally* Dkt. No. 1 at 2. For this reason, I recommend that plaintiffs' section 1983 claim asserted against defendant City of Syracuse be dismissed.

iii. *Plaintiff's Claims Asserted Against Defendant SPD*

Although "[a] police department is an administrative arm of [a] municipal corporation[,] ... [it] cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity." *Baker v. Willett,* 42 F.Supp.2d 192, 198 (N.D.N.Y.1999) (Hurd, M.J.) (citing *Loria v. Town of Irondequoit,* 775 F.Supp. 599, 606 (W.D.N.Y.1990)); *accord, Jenkins v. Liadka,* No. 10–CV–1223, 2012 WL 4052286, at *5 (N.D.N.Y. Sept. 13, 2012) (Suddaby, J.). Accordingly, because defendant SPD is not a proper defendant in this case, I recommend that it be dismissed from the action.

iv. *Plaintiffs' Section 1983 Claims Asserted Against Defendants Miner, Fowler, Mahar, and Vella in Their Official Capacities*

***5** Plaintiffs have asserted a section 1983 claim against defendants Miner, Fowler, Mahar, and Vella as a result of the alleged unlawful arrest of plaintiffs by defendants Mahar and Vella, as well as their alleged use of excessive force. *See generally* Dkt. No. 1.

The Eleventh Amendment protects a state against suits brought in federal court by "private parties seeking to impose a liability which must be paid from public funds in the state treasury." *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Cory v. White,* 457 U.S. 85, 90–91, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982); *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993). This absolute immunity, which states enjoy under the Eleventh Amendment, extends to both state agencies and state officials sued for damages in their official capacities when the essence of the plaintiff's claim seeks recovery from the state as the real party in interest. *See, e.g., Daisernia v. State of New York,* 582 F.Supp. 792, 798–99 (N.D.N.Y.1984) (McCurn, J.) ("[A] suit which seeks a money judgment 'which must be paid from the state treasury is barred by the Eleventh Amendment,' even though it is nominally asserted against an individual official." (quoting *Edelman,* 415 U.S. at 663)); *see also Richards v. State of New York App. Div., Second Dep't,* 597 F.Supp. 689, 691 (E.D.N.Y.1984) (citing, *inter alia, Cory v. White,* 457 U.S. 85, 89–91, 102 S.Ct. 2325, 72 L.Ed.2d 694, (1982)). "To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." [FN4] *Ying Jing Gan,* 996 F.2d at 529; *see also Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State.").

FN4. By contrast, the Eleventh Amendment does not preclude lawsuits seeking to impose individual or personal liability on state officials under section 1983. *Hafer v. Melo,* 502 U.S. 21, 30–31, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).

In this case, it is not clear whether plaintiffs have asserted a section 1983 claim against defendants Miner, Fowler, Mahar, and Vella in their individual or official capacities. *See generally* Dkt. No. 1. To the extent that claim is asserted against those defendants in their official capacities, however, those claims are, in reality, claims against the State of New York, and therefore subject to dismissal because plaintiffs seek only monetary relief. Dkt. No. 1 at 3; *Daisernia,* 582 F.Supp. at 798–99. Accordingly, I recommend that plaintiffs' section 1983 claims asserted against defendants Miner, Fowler, Mahar, and Vella in their official capacities be dismissed. [FN4]

FN4. The Eleventh Amendment does not preclude claims seeking only declaratory or injunctive relief against municipal defendants in their official capacities. *See In re*

*Deposit Ins. Agency,* 482 F.3d 612, 618 (2d Cir.2007) ("A plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their official capacities, provided that his complaint (a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective." (quotation marks omitted)). Plaintiffs' complaint in this case, however, does not seek such relief.

v. *Personal Involvement of Defendants Miner and Fowler*

To the extent defendants Miner and Fowler are sued in their individual capacities, those claims also fail at this juncture. "Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991); *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977)). As the Supreme Court has noted, a defendant may only be held accountable for his actions under section 1983. *See Iqbal,* 556 U.S. at 683 ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic."). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered ." *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986). "To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law." *Hendrickson v. U.S. Attorney Gen.,* No. 91–CV–8135, 1994 WL 23069, at *3 (S.D.N.Y. Jan.24, 1994).

***6** It is well-established that individuals like defendant Miner and Fowler, who are sued in the supervisory capacity, cannot be liable for damages under section 1983 solely by virtue of being a supervisor, "and [liability] cannot rest on *respondeat superior."* *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501. To establish responsibility on the part of a supervisory official for a civil rights violation, a plaintiff must demonstrate that the individual (1) directly participated in the challenged conduct; (2) after learning of the violation through a report or appeal, failed to remedy the wrong; (3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in managing the subordinates who caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty,* 490 F.3d 143, 152–53 (2d Cir.2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal,* 556 U .S. 554 (2009); *see also Richardson,* 347 F.3d at 435; *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *Wright,* 21 F.3d at 501.

In this case, there are no allegations in plaintiffs' complaint that plausibly suggest the personal involvement of defendants Miner and Fowler in any of the alleged constitutional violations. *See generally* Dkt. No. 1. The complaint does not allege that those defendants (1) participated directly in the events giving rise to this action, (2) ever learned of the alleged violation and failed to remedy it, (3) created a policy or custom that resulted in the alleged constitutional violations, (4) acted grossly negligent when managing their subordinates, or (5) failed to act after learning that constitutional violations occurred. *Id.* For these reasons, I recommend dismissal of plaintiffs' section 1983 claims asserted against defendants Miner and Fowler in their individual capacities.

vi. *Plaintiffs' Remaining Claims*

The court has reviewed the remaining claims asserted against defendants Mahar and Vella in their individual capacities. Plaintiffs' complaint, which contains a fair number of detailed factual allegations, is sufficient to pass muster under the relatively modest test of section 1915(e). No determination is made by the court, however, as to the merits of those remaining claims, and specifically whether they may withstand a

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

properly filed motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

C. *Whether to Permit Amendment*

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark,* 927 F.2d 698, 704–05 (2d Cir.1991); *see also* Fed.R.Civ.P. 15(a) ( "The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F.Supp. 986, 1003 (E.D.N.Y.1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993); *accord, Brown v. Peters,* No. 95–CV–1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

***7** In this instance, it is possible that the deficiencies identified in this report with respect to plaintiffs' claims may be cured through the inclusion of greater factual detail. For this reason, with the exception of plaintiffs' (1) negligence claim against all defendants to the extent it is asserted pursuant to section 1983; (2) claims asserted against defendant SPD; and (3) damage claims against asserted against defendants Miner, Fowler, Mahar, and Vella in their official capacities (the deficiencies with which are substantive in nature and extend beyond the mere sufficiency of plaintiffs' complaint), I recommend that plaintiffs be granted leave to amend.

In the event plaintiffs choose to file an amended complaint, they are advised that the law in this circuit provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd,* 895 F.Supp. 35, 38 (N.D.N.Y.1995) (McAvoy, J.) (quoting *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987)); *see also Pourzandvakil v. Humphry,* No. 94–CV–1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in their amended complaint, plaintiffs must clearly set forth the facts that give rise to the claim, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of each of the named defendants that allegedly deprived him of his constitutional rights in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass,* 790 F.2d at 263. Finally, plaintiffs are informed that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (quotation marks omitted)).[FN5]

FN5. In the event plaintiffs fail to file an amended complaint, their original complaint should remain the operative pleading, and the action should proceed only with respect to (1) the section 1983 claims asserted against defendants Mahar, Vella, and John Doe in

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

their individual capacities; and (2) their negligence claim arising under to New York State common law asserted against those same defendants.

III. *SUMMARY AND RECOMMENDATION*

Some of plaintiffs' section 1983 claims asserted against the named defendants fail to state a claim upon which relief may be granted due to deficient pleadings or because certain defendants are immune from suit. It is therefore hereby respectfully

RECOMMENDED that plaintiffs' claims asserted under section 1983 against defendant City of Syracuse, as well as defendants Stephanie Miner and Frank Fowler in their individual capacities, be dismissed with leave to replead; and it is further

RECOMMENDED that plaintiffs' claim asserted under section 1983 against defendant Syracuse Police Department, as well as defendants Stephanie Miner, Frank Fowler, A. Mahar, and M. Vella in their official capacities, be dismissed with prejudice; and it is further

***8** RECOMMENDED that plaintiff's negligence claim, to the extent it is asserted pursuant to section 1983, be dismissed with prejudice; and it is further

RECOMMENDED that, in the event this report is adopted, and plaintiffs fail to file an amended complaint in the time frame set forth by the assigned district judge, their original complaint remain the operative pleading and the action proceed only as against defendants Mahar, Vella, and Doe in their individual capacities.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Filed May 6, 2014.

N.D.N.Y.,2014.
Dexter v. City of Syracuse
Slip Copy, 2014 WL 2611384 (N.D.N.Y.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.





Only the Westlaw citation is currently available.

United States District Court,
W.D. New York.
Thamud ELDRIDGE, Plaintiff,
v.
Officer KENNEY, Officer Springer, Officer Vogt and Niagara County Sheriff, Defendants.

No. 11–CV–6459–FPG.
Signed June 16, 2014.

Thamud Eldridge, Mayville, NY, pro se.

Michael F. Perley, Hurwitz & Fine, Buffalo, NY, for Defendants.

DECISION AND ORDER
FRANK P. GERACI, JR., District Judge.

***1** *Pro se* Plaintiff Thamud Eldridge is an inmate at the Niagara County Jail and brings this action under 42 U.S.C. § 1983, alleging that three officers and the Niagara County Sheriff violated his civil rights. Dkt. # 6. One named defendant, the Niagara County Sheriff ("Sheriff), has moved to dismiss Plaintiff's Amended Complaint as to him under Federal Rule of Civil Procedure 12(b)(6). Because Plaintiff has failed to allege any facts involving the Sheriff that would plausibly entitle him to relief, the motion is granted, and the Niagara County Sheriff is dismissed from this action.

*BACKGROUND*

Plaintiff alleges that he was assaulted by Defendant Officers Kenney, Springer, and Vogt as they were transporting him to the Special Housing Unit on December 2, 2010. Plaintiff further contends that because the Sheriff supervises the three officers, he is liable to Plaintiff for failing to adequately train, supervise, discipline, or control the Officers. Plaintiff further alleges that the Sheriff failed to remedy the violations suffered by Plaintiff after he learned of them through the prison's disciplinary process, and that this occurred because of a policy or custom allegedly maintained by the Sheriff that allowed the alleged constitutional violations to occur.

*DISCUSSION*

To succeed on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a defendant must show that the complaint contains insufficient facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A complaint is plausible when a plaintiff pleads sufficient facts that allow the Court to draw reasonable inferences that the defendant is liable for the alleged conduct. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Plausibility "is not akin to a probability requirement," rather plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quotation marks omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation marks and citation omitted). A pleading that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombley,* 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.,* at 557. In considering the plausibility of a claim, the Court must accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.,* 648 F.3d 98, 104 (2d Cir.2011). At the same time, the Court is not required to accord "[l]egal conclusions, deductions, or opinions couched

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

as factual allegations ... a presumption of truthfulness." *In re NYSE Specialists Sec. Litig.,* 503 F.3d 89, 95 (2d Cir.2007) (quotation marks omitted).

***2** Because the Plaintiff is *pro se,* his pleadings are held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (internal quotation marks omitted). Accordingly, the Court interprets Plaintiff's pleadings "to raise the strongest arguments that they suggest." *Fulton v. Goord,* 591 F.3d 37, 43 (2d Cir.2009). Nevertheless, all pleadings, regardless of who drafts them, must contain enough facts to give defendants fair notice of the claim and the facts on which it is based. *Twombly,* 550 U.S. at 555.

A complaint alleging a § 1983 violation must contain enough facts to show that the defendant acted under color of state law and that the conduct complained of "deprived the plaintiff of a right guaranteed in the [C]onstitution or laws of the United States." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991). In the case of a supervisory defendant, it is well settled that a supervisor may not be held liable in a § 1983 action on a theory of *respondeat superior. Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003) (citation omitted). Rather, "supervisor liability depends on a showing of some personal responsibility," *Id.,* and the plaintiff must plead sufficient facts to establish the personal involvement of each particular defendant in the alleged violation. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (quoting *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994)).

In order to establish the personal involvement of a supervisory official, a plaintiff can demonstrate that: (1) the defendant participated directly in the alleged conduct; (2) the defendant did not remedy a wrong after learning of it through a report or appeal; (3) the defendant formed a policy or custom under which the conduct transpired, or allowed the policy or custom to continue; (4) the defendant's supervision of subordinates who engaged in the conduct was grossly negligent; or (5) the defendant demonstrated deliberate indifference to the rights of inmates by failing to act on information showing that the conduct was occurring. *Colon,* 58 F.3d at 873.

With these standards in mind, I find that the Plaintiff has fallen far short of alleging sufficient facts to demonstrate the Sheriff's personal involvement in the alleged violations. The closest Plaintiff comes to alleging the Sheriff's involvement is found in the Amended Complaint, where Plaintiff recites the fourth *Colon* factor by stating that the Sheriff was "grossly negligent in managing subordinates ... by failing to adequately train, supervise, and in any other way direct or control officers in the exercise of their police duties and functions." Dkt. # 6. That statement, devoid of any factual support, contains nothing more than conclusory statements and formulaic recitations of the cause of action, which the Supreme Court has deemed to be insufficient. *See Twombly,* 550 U.S. at 555. Rather than alleging facts that could "nudge[ ][his] claims across the line from conceivable to plausible," *Twombly,* 550 U.S. at 570, Plaintiff has instead provided no facts to support his claims against the Sheriff, and as a result, his cause of action against the Sheriff cannot survive.

***3** Even considering allegations made by Plaintiff outside of the Amended Complaint—which I will consider because of the Plaintiff's *pro se* status-Plaintiff fares no better. While Plaintiff's Response to the Sheriff's Motion to Dismiss (Dkt.# 15) contains references to the second and third *Colon* factors, they suffer from the same fatal flaw: they contain nothing more than conclusory statements and formulaic recitations of the *Colon* factors and are wholly unsupported by facts. As a result, these allegations are also insufficient and cannot survive the Sheriff's Motion to Dismiss.

*CONCLUSION*

For the foregoing reasons, Defendant Niagara

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

County Sheriff's Motion to Dismiss the Complaint as to him (Dkt.# 10) is GRANTED. The Clerk of the Court shall terminate the Sheriff as a defendant in this action.

IT IS SO ORDERED.

W.D.N.Y.,2014.
Eldridge v. Kenney
Slip Copy, 2014 WL 2717982 (W.D.N.Y.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

H
Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Kenneth Carl GROVES, Sr., Plaintiff,
v.
Brett DAVIS, Secure Care Treatment Aid; David W. Sill, Secure Care Treatment Aid; Thomas Nicolette, RN, Ward Nurse; Charmaine Bill, Treatment Team Leader; Jill E. Carver, Social Worker, Primary Therapist; Edwin Debroize, Psychologist Assist; Jeff Nowicki, Chief of Mental Health Treatment Serv.; Terri Maxymillian, Ph.D., Dir. of Mental Health Serv.; Sgt. Sweet, Security Services, CNYPC; Michael Hogan, Comm'r, Dep't of Mental Health, Defendants.

No. 9:11–CV–1317 (GTS/RFT).
Feb. 28, 2012.

Kenneth Carl Groves, Sr., Marcy, NY, pro se.

***MEMORANDUM DECISION and ORDER***

Hon. GLENN T. SUDDABY, District Judge.

***1** Currently before the Court, in this *pro se* civil rights action filed by Kenneth Carl Groves, Sr. ("Plaintiff"), against numerous employees of New York State or the Central New York Psychiatric Center ("Defendants"), are Plaintiff's motion to proceed *in forma pauperis,* his motion for a temporary restraining order and preliminary injunction, and his motion for appointment of counsel. (Dkt.Nos.2, 3, 4.) [FN1] For the reasons set forth below, Plaintiff's motion to proceed *in forma pauperis* is granted; his motion for a preliminary injunction is denied; his motion for appointment of counsel is denied; Plaintiff's claims of deliberate indifference to his mental health needs against Defendants Bill, Carver and DeBroize are *sua sponte* dismissed with prejudice; Plaintiff's claims against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan arising from their alleged personal involvement in the August 8, 2011 assault are *sua sponte* dismissed without prejudice and with leave to amend in this action in accordance with Fed.R.Civ.P. 15; Sgt. Sweet is *sua sponte* dismissed without prejudice as a Defendant in this action; the Clerk is directed to issue summonses, and the U.S. Marshal is directed to effect service of process on Defendants Davis, Sill, and Nicolette.

FN1. This is the fourth civil rights action filed by Plaintiff in this District. Generally, two of these actions arose out of Plaintiff's refusal to consent to a strip search and the subsequent actions taken against Plaintiff as a result of his refusal. *See Groves v. New York,* 09–CV–0406, Decision and Order (N.D.N.Y. filed May 11, 2009) (Hurd, J.) (*sua sponte* dismissing complaint pursuant to 28 U.S.C. § 1915[e][2][B] ); *Groves v. The State of New York,* 9:09–CV–0412, Decision and Order (N.D.N.Y. filed Mar. 26, 2010) (Sharpe, J.) (granting defendants' motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12[b][6] ). The third action alleged numerous violations of Plaintiff's constitutional rights during the period July 23, 2009, and August 26, 2009, and was dismissed without prejudice upon Plaintiff's request in October, 2010. *See Groves v. Maxymillian,* 9:09–CV–1002, Decision and Order (N.D.N.Y. filed Oct. 8, 2010) (Suddaby, J.). As a result, it does not appear that the current action is barred because of res judicata, collateral estoppel, and/or the rule against duplicative litigation.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

**I. RELEVANT BACKGROUND**

On November 7, 2011, Plaintiff commenced this action *pro se* by filing a civil rights Complaint, together with a motion to proceed *in forma pauperis.* (Dkt. Nos.1, 2.) [FN2] Liberally construed, Plaintiff's Complaint alleges that the following constitutional violations against him occurred during his confinement at Central New York Psychiatric Center ("CNYPC"): (1) Defendants Davis and Sill used excessive force against him under the Eighth and/or Fourteenth Amendments; (2) Defendant Nicolette knew of and failed to take action to protect Plaintiff from the assault under the Eighth and/or Fourteenth Amendments; (3) Defendants Bill, Carver, and DeBroize were deliberately indifferent to his mental health needs under the Eighth and/or Fourteenth Amendments; and (4) Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, Bosco, and Hogan failed to "adequately train the staff under their supervision" and to take appropriate action in response to the incident. (*See generally* Dkt. No. 1.) For a more detailed description of Plaintiff's claims, and the factual allegations giving rise to those claims, the reader is referred to Part III.B of this Decision and Order.

FN2. At that time, Plaintiff also filed motions for injunctive relief and for appointment of counsel. (Dkt.Nos.3, 4.)

**II. MOTION TO PROCEED *IN FORMA PAUPERIS***

Because Plaintiff sets forth sufficient economic need, the Court finds that Plaintiff may properly commence this action *in forma pauperis.* (Dkt. No. 2.)

**III. *SUA SPONTE* REVIEW OF PLAINTIFF'S COMPLAINT**

In light of the foregoing, the Court must now review the sufficiency of the allegations that Plaintiff has set forth in his Complaint in light of 28 U.S.C. § 1915(e)(2)(B). This is because Section 1915(e)(2)(B) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "(2) ... the court shall dismiss the case at any time if the court determines that—... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[FN3]

FN3. The Court notes that, similarly, Section 1915A(b) directs that a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

**A. Governing Legal Standard**

***2** It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.,* 549 F.Supp.2d 204, 211, nn. 15–16 (N.D.N.Y.2008) (McAvoy, J., adopting Report–Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by

Fed.R.Civ.P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal." *Jackson,* 549 F.Supp.2d at 212, n. 20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson,* 549 F.Supp.2d at 212, n .17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson,* 549 F.Supp.2d at 212, n. 18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F.Supp.2d 203, 213 & n. 32 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12–61 (3d ed.2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp .2d at 213, n. 22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–52, 173 L.Ed.2d 868 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly,* the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 127 S.Ct. at 1968–69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965–74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id* . at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

***3** As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.,* it "does not impose a probability requirement." *Twombly,* 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal,* 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12. [FN4] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow. [FN5] Stated more simply, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." *Jackson,* 549 F.Supp.2d at 214, n. 28 [citations omitted].[FN6]

FN4. *See Vega v. Artus,* 610 F.Supp.2d 185, 196 & nn. 8–9 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

FN5. *See Vega,* 610 F.Supp.2d at 196, n. 10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

FN6. It should be emphasized that Fed.R.Civ.P. 8's plausibility standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which (when reviewing a *pro se* pleading) the Court stated, *"Specific* facts are not necessary" to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law—first offered in *Conley* and repeated in *Twombly*—that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley,* 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak,* 629 F.Supp.2d at 214 & n. 35 (explaining holding in *Erickson* ).

**B. Analysis of Plaintiff's Complaint**

The Court prefaces its analysis of Plaintiff's Complaint by noting that, although Plaintiff is a civilly committed sex offender and no longer a prisoner, the Court will look to cases addressing prisoner's rights in analyzing Plaintiff's claims, because "confinement of civilly committed patients is similar to that of prisoners." *Holly v. Anderson,* 04–CV–1489, 2008 WL 1773093, at *7 (D.Minn. Apr.15, 2008); *see also Morgan v. Rabun,* 128 F.3d 694, 697 (8th Cir.1997) ("The governmental interests in running a state mental hospital are similar in material aspects to that of running a prison."). Thus, whereas claims of excessive force by convicted criminals are analyzed under the Eighth Amendment to the United States Constitution, because Plaintiff is a civilly committed sex offender and no longer a prisoner, his substantive rights to be free from unsafe conditions of confinement arise under the Due Process Clause of the Fourteenth Amendment. In *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), the Court stated "[i]f it is cruel and unusual punishment to hold con-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

victed criminals in unsafe conditions, it must be unconstitutional [under the Due Process Clause] to confine the involuntarily committed-who may not be punished at all-in unsafe conditions." *Youngberg,* 457 U.S. at 315–16. As have numerous other courts which have considered the issue, this Court has found that "the standard for analyzing a civil detainee's Fourteenth Amendment [conditions of confinement] claim is the same as the Eighth Amendment standard." *Groves v. Patterson,* 09–CV–1002, Memorandum–Decision and Order at *15–16 (N.D.N.Y. filed Nov. 18, 2009). FN7

FN7. *See Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996) ("[W]hile the Supreme Court has not precisely limned the duties of a custodial official under the Due Process Clause to provide needed medical treatment to a pretrial detainee, it is plain that an unconvicted detainee's rights are at least as great as those of a convicted prisoner."); *Walton v. Breeyear,* 05–CV–0194, 2007 WL 446010, at *8, n. 16 (N.D.N.Y. Feb.8, 2007) (Peebles, M.J.) (noting that pretrial detainees enjoy protections under the due process clause of the Fourteenth Amendment parallel to those afforded to sentenced prisoners by the Eighth Amendment); *Vallen v. Carrol,* 02–CV–5666, 2005 WL 2296620, at ––––8–9 (S.D.N.Y. Sep.20, 2005) (finding that the Eighth Amendment standard of "deliberate indifference" is the correct one for Section 1983 claims brought by involuntarily committed mental patients based on alleged failures to protect them that violated their substantive due process rights); *Bourdon v. Roney,* 99–CV–0769, 2003 WL 21058177, at *10 (N.D.N.Y. Mar.6, 2003) (Sharpe, M.J.) ("The standard for analyzing a pretrial detainee's Fourteenth Amendment [conditions of confinement] claim is the same as the Eighth Amendment standard.").

**1. Excessive Force Claims Against Defendants Davis, Still and Nicolette**

***4** Plaintiff alleges that on August 8, 2011, Defendant Davis entered Plaintiff's dorm room at CNYPC and "viciously attacked and brutally assaulted and battered" him. (Dkt. No. 1 at 4.) During the course of this assault, Defendant Sill is alleged to have entered Plaintiff's room and "jump[ed] on the plaintiff's legs holding and pinning them as Defendant Davis [continued to beat Plaintiff]." (*Id.*) As alleged in the Complaint, although Defendant Nicolette knew in advance that this assault was planned, he "remained in the Nurses Station" and "did nothing to interceed [sic] or stop the brutal attack on the plaintiff." (*Id.* at 5.)

To validly assert a violation of the Eighth Amendment through the use of excessive force, an inmate must allege the following: (1) subjectively, that the defendants acted wantonly and in bad faith; and (2) objectively, that the defendants' actions violated "contemporary standards of decency." *Blyden v. Mancusi,* 186 F.3d 252, 262–63 (2d Cir.1999) (internal quotation marks omitted) (citing *Hudson v. McMillian,* 503 U.S. 1, 8 [1992] ).

Here, construing the factual allegations of Plaintiff's Complaint with special leniency, the Court finds that Plaintiff appears to have alleged facts plausibly suggesting that he was subjected to excessive force by Defendants Davis and Sill. In addition, by alleging that Defendants Davis, Sill and Nicolette discussed the assault in advance of it occurring, and that Nicolette was in the vicinity of Plaintiff's room and had an opportunity to intervene to prevent it, the Complaint sufficiently alleges that Defendant Nicolette was personally involved and/or failed to protect Plaintiff from the assault. *See Bhuiyan v. Wright,* 06–CV–0409, 2009 WL 3123484, at *7 (N.D.N.Y. Sept.29, 2009) (Scullin, J.) ("The fact that defendant Davis was not in the room, but was acting as a 'lookout' so that no one came into the room while plaintiff was being beaten, would not absolve him from liability for the assault. An officer's failure to

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

intervene during another officer's use of excessive force can itself constitute an Eighth Amendment violation unless the assault is "sudden and brief," and the defendant had no real opportunity to prevent it."); *Jeffreys v. Rossi,* 275 F.Supp.2d 463, 474 (S.D.N.Y.2003) (holding that an officer may be personally involved in the use of excessive force if he either directly participates in the assault or if he was present during the assault, yet failed to intervene on behalf of the victim, even though the officer had a reasonable opportunity to do so).

As a result, a response to these claims is required from Defendants David, Sill, and Nicolette. In so ruling, the Court expresses no opinion as to whether Plaintiff's claims can withstand a properly filed motion to dismiss or for summary judgment.

**2. Deliberate Indifference Claims Against Defendants Bill, Carver and DeBroize**

Plaintiff alleges that on August 9, 2011, the day after the alleged assault, he attempted to "discuss the incident and what transpired" with Defendants Bill and Carver. (Dkt. No. 1 at 5.) Plaintiff alleges that Defendant Bill told him, "I don't want to discuss this Mr. Groves, we're too busy for your foolishness and the matter is being investigated." (*Id.*) Plaintiff's effort to explain that he was frightened by the incident was rebuffed by Defendant Bill, who told Plaintiff to "grow up." (*Id.* at 5–6.) The following day, Plaintiff attempted to discuss the incident with Defendant Carver, his primary therapist, again without success. A further attempt at discussion later that day was met with Defendant Carver "stating to the plaintiff in a snotty tone 'grow the hell up!' " (*Id.* at 6.) On August 10, 2011, Plaintiff attempted to discuss the incident "and his current fears and feelings," during his Monday afternoon "Process Group," which is facilitated by Defendant DeBroize. As alleged, Defendant DeBroize told Plaintiff and the other group members that the matter was under investigation "so no one could discuss the incident with anyone." (*Id.* at 6.)

***5** To state a claim of deliberate indifference to a serious medical and/or mental health need under the Eighth Amendment, a plaintiff must first allege facts plausibly suggesting that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.' " *Ross v. Kelly,* 784 F.Supp. 35, 44 (W.D.N.Y.), *aff'd,* 970 F.2d 896 (2d Cir.1992) (quoting *Estelle v. Gamble,* 429 U.S. at 102, 105–06). The "deliberate indifference standard embodies both an objective and a subjective prong," both of which the plaintiff must establish. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). "First, the alleged deprivation must be, in objective terms, 'sufficiently serious.' " *Id.* (citations omitted). Second, the defendant "must act with a sufficiently culpable state of mind." *Id.*

With regard to the first element, generally, to be sufficiently serious for purposes of the Constitution, a medical condition must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J. dissenting) [citations omitted], *accord, Hathaway,* 37 F.3d at 66; *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998).).[FN8] Under the subjective component, a plaintiff must also allege facts plausibly suggesting that the defendant acted with "a sufficiently culpable state of mind." *Hathaway,* 37 F.3d at 66. The requisite culpable mental state is similar to that of criminal recklessness. *Wilson v. Seiter,* 501 U.S. 294, 301–03, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). A physician's negligence in treating or failing to treat a prisoner's medical condition does not implicate the Eighth Amendment and is not properly the subject of a Section 1983 action. *Estelle,* 429 U.S. at 105–06; *Chance,* 143 F.3d at 703.[FN9]

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

FN8. Relevant factors informing this determination include whether the plaintiff suffers from an injury that a "reasonable doctor or patient would find important and worthy of comment or treatment," a condition that "significantly affects" a prisoner's daily activities, or "the existence of chronic and substantial pain." *Chance,* 143 F.3d at 702.

FN9. Thus, a physician who "delay[s] ... treatment based on a bad diagnosis or erroneous calculus of risks and costs" does not exhibit the mental state necessary for deliberate indifference. *Harrison,* 219 F.3d at 139. Likewise, an inmate who disagrees with the physician over the appropriate course of treatment has no claim under Section 1983 if the treatment provided is "adequate." *Chance,* 143 F.3d at 703. The word "adequate" reflects the reality that "[p]rison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is 'reasonable.' " *Jones v. Westchester Cnty. Dept. of Corr.,* 557 F.Supp.2d 408, 413 (S.D.N.Y.2008). In addition, "disagreements over medications, diagnostic techniques (e .g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention are not adequate grounds for a section 1983 claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.,* 151 F.Supp.2d 303, 312 (S.D.N.Y.2001). However, if prison officials consciously delay or otherwise fail to treat an inmate's serious medical condition "as punishment or for other invalid reasons," such conduct constitutes deliberate indifference. *Harrison,* 219 F.3d at 138.

Here, even when construed with the utmost special liberality, Plaintiff's Complaint fails to allege facts plausibly suggesting that Defendants Bill, Carver, and DeBroize acted with deliberate indifference to Plaintiff's serious mental health condition when they declined to discuss the incident of August 8, 2011. There is nothing in the Complaint that even remotely suggests that the requested conversations were integral to Plaintiff's treatment as a convicted sex offender involuntarily committed to CNYPC, or that Defendants' refusal to discuss the incident with Plaintiff when he requested to do so caused Plaintiff to suffer any harm or worsening of his condition. In addition, Plaintiff does not allege that any of these Defendants acted with the requisite culpable state of mind.

Moreover, the statements made by Defendants Bill and Carver that he should "grow up," even if construed as verbal harassment, do not give rise to a cognizable claim that may be pursued under Section 1983. Allegations of verbal harassment are insufficient to support a Section 1983 claim. *Johnson v. Eggersdorf,* 8 F. App'x 140, 143 (2d Cir.2001); *see also Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986) ("[A]llegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged .").

***6** For these reasons, Plaintiff's deliberate indifference claims against Defendants Bill, Carver, and DeBroize are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6). Moreover, because the Court cannot imagine how Plaintiff might correct this claim through better pleading, he is not granted leave to attempt to do so in an amended pleading.[FN10] Rather, this claim is hereby dismissed with prejudice.

FN10. The Court notes that, generally, leave to amend pleadings shall be freely granted when justice so requires. Fed.R.Civ.P. 15(a). However, an opportunity to amend is not required where amendment would be futile. *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.,* 22 F.3d 458, 462 (2d

> Cir.1994). *John Hancock Mut. Life Ins. Co.,* 22 F.3d at 462. The Second Circuit has explained that "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993); *see Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) ("The problem with [Plaintiff's] cause of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."). This rule is applicable even to *pro se* plaintiffs. *See, e.g., Cuoco,* 222 F.3d at 103.

**3. Failure to Supervise Claims Against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan**

To prevail on a claim under 42 U.S.C. § 1983, a defendant must be personally involved in the plaintiff's constitutional deprivation. *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977). Generally, for purposes of 42 U.S.C. § 1983, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.[FN11]

> FN11. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (adding fifth prong); *Wright,* 21 F.3d at 501 (adding fifth prong); *Williams v. Smith,* 781 F.2d 319, 323–324 (2d Cir.1986) (setting forth four prongs).

Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement. *McKinnon,* 568 F.2d at 934. Rather, a plaintiff must demonstrate " 'a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas,* 04–CV–7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar.31, 2008) (quoting *Bass v. Jackson,* 790 F.2d 260, 263 [2d Cir.1986] ) (other citation omitted). An official's failure to respond to grievance letters from inmates, however, "does not establish supervisory liability." *Watson v. McGinnis,* 964 F.Supp. 127, 130 (S.D.N.Y.1997).[FN12] Moreover, "the law is clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials." *Pine v. Seally,* 9–CV–1198, 2011 WL 856426, at *9 (N.D.N.Y. Feb.4, 2011).[FN13]

> FN12. *See also Gillard v. Rosati,* 08–CV–1104, 2011 WL 4402131, at *7 (N.D.N.Y. Aug.22, 2011) (Peebles, J.) ("It is well-established that without more, 'mere receipt of letters from an inmate by a supervisory official regarding a medical claim is insufficient to constitute personal liability." [internal quotation marks and brackets omitted] ); *Greenwaldt v. Coughlin,* 93–CV–6551, 1995 WL 232736, at *4 (S.D.N.Y. Apr.19, 1995) ("it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations."); *Clark v. Coughlin,* 92–CV 0920, 1993 WL 205111, at *5 n. 2 (S.D.N.Y. Jun.10, 1993) ("Courts in this jurisdiction have consistently held that an inmate's single letter does not constitute the requisite personal involvement in an alleged constitutional deprivation to trigger the Commissioner's liability.")

> FN13. *See also Bernstein v. N.Y.,* 591 F.Supp.2d 448, 460 (S.D.N.Y.2008) ("Courts within the Second Circuit have determined

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

> that there is no constitutional right to an investigation by government officials." [internal quotation marks, brackets and ellipsis omitted] ).

In his Complaint, Plaintiff alleges in wholly conclusory terms that Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan failed to "adequately train the staff under their supervision and fail[ed] to act within the scope and training of the position and job title they hold." (Dkt. No. 1 at 8.) Plaintiff alleges that he submitted a letter of complaint to Defendant Hogan and wrote to Defendant Nowicki on several occasions expressing concern his complaint had not been responded to, only to be advised that in September, 2011 that an investigation was ongoing. (*Id.* at 6–7.) Plaintiff does not allege that any of these Defendants personally participated in the alleged assault on August 8, 2011.

Here, even when construed with the utmost special liberality, Plaintiff's Complaint fails to allege facts plausibly suggesting any personal involvement by these Defendants in the alleged used of excessive force on August 8, 2011. As a result, Plaintiff's claims against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan arising from this incident are *sua sponte* dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6). This dismissal is without prejudice to Plaintiff's right to file an Amended Complaint that corrects the above-described pleading defects, and states a viable claim against these Defendants. The Court notes that, at this early stage of the case, Plaintiff has the right—without leave of the Court—to file an Amended Complaint within the time limits established by Fed.R.Civ.P. 15(a)(1)(B). However, if he seeks to file an Amended Complaint after those time limits, he must file a motion for leave to file an Amended Complaint in accordance with Fed.R.Civ.P. 15(a)(2). In either event, Plaintiff is advised that *any Amended Complaint must be a complete pleading that will replace and supersede the original Complaint in its entirety, and that may not incorporate by reference any portion of the original Complaint. See* N.D.N.Y. L.R. 7.1(a) (4).

***7** Finally, although Plaintiff names Sgt. Sweet as a Defendant in the caption of the complaint and in the listing of the parties, he has not set forth in the Complaint any allegations of fact regarding the conduct of this Defendant complained of. (*See generally* Dkt. No. 1.) As a result, the Complaint fails to state a claim upon which relief may be granted and Sgt. Sweet is dismissed from this action without prejudice to Plaintiff's right to file an Amended Complaint as set forth above.

## IV. MOTION FOR INJUNCTIVE RELIEF

A preliminary injunction is an "extraordinary remedy that should not be granted as a routine matter." *Patton v. Dole,* 806 F.2d 24, 28 (2d Cir.1986). In most cases, to warrant the issuance of a preliminary injunction, a movant must show (a) irreparable harm and (b) either (1) a likelihood of success on the merits of the claim or (2) sufficiently serious questions going to the merits, and a balance of hardships tipping decidedly in favor of the moving party. *D.D. ex rel. V.D. v. New York City Bd. of Educ.,* 465 F.3d 503, 510 (2d Cir.2006) (quotation omitted). "The purpose of issuing a preliminary injunction is to 'preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the ... merits.' " *Candelaria v. Baker,* 00–CV–912, 2006 WL 618576, at *3 (W.D.N.Y. Mar.10, 2006) (quoting *Devose v. Herrington,* 42 F.3d 470, 471 [8th Cir.1994] ). Preliminary injunctive relief " 'should not be granted unless the movant, by a clear showing, carries the burden of persuasion.' " *Moore v. Consolidated Edison Co. of New York, Inc.,* 409 F.3d 506, 510 (2d Cir.2005) (quoting *Mazurek v. Armstrong,* 520 U.S. 968, 972 [1997] ). "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Moore,* 409 F.3d at 510 (citing *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 381, 112 S.Ct.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

2031, 119 L.Ed.2d 157 (1992). The same standards govern consideration of an application for a temporary restraining order. *Perri v. Bloomberg,* 06–CV–0403, 2008 WL 2944642, at *2 (E.D.N.Y. Jul.31, 2008) [citation omitted]. The district court has broad discretion in determining whether to grant a preliminary injunction. *Moore,* 409 F.3d at 511.

"The Second Circuit has defined 'irreparable harm' as 'certain and imminent harm for which a monetary award does not adequately compensate,' noting that 'only harm shown to be non-compensable in terms of money damages provides the basis for awarding injunctive relief.' " *Perri,* 2008 WL 2944642, at *2 (citing *Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.,* 339 F.3d 101, 113–14 [2d Cir.2003] ); *see also Kamerling v. Massanari,* 295 F.3d 206, 214 (2d Cir.2002) ("To establish irreparable harm, a party seeking preliminary injunctive relief must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.") (internal quotation omitted). Speculative, remote or future injury is not the province of injunctive relief. *Los Angeles v. Lyons,* 461 U.S. 95, 111–12, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *see also Hooks v. Howard,* 07–CV–0724, 2008 WL 2705371, at *2 (N.D.N.Y. Jul.3, 2008) (citation omitted) ("Irreparable harm must be shown to be imminent, not remote or speculative, and the injury must be such that it cannot be fully remedied by monetary damages.").

***8** Plaintiff has submitted a document entitled "Order to Show Cause for Preliminary Injunction and Tempor[ary] Restraining Order." (Dkt. No. 3.) Construed liberally, Plaintiff's submission seeks a temporary restraining order and injunctive relief enjoining Defendants from "submitting and filing false and untrue statements and reports" regarding the August 11, 2011 incident, and to "stop all retaliatory actions against the plaintiff ...." (*Id.* at 1.) Plaintiff also seeks an "Order of Seperation [sic]" directing that Defendants Davis, Sill, Nicolette, Bill, Carver and DeBroize be "restrained from being within 100 feet from the plaintiff in any form or matter." (*Id.* at 2.)

The Court has reviewed Plaintiff's motion papers thoroughly and considered the claims asserted therein in the light most favorable to Plaintiff, as a *pro se* litigant. Based upon that review, the Court finds that the harm Plaintiff alleges is purely speculative and, therefore, not "irreparable." Plaintiff's motion is supported only by a recitation of the alleged assault in August, 2011. (*Id.* at 1–4.) Plaintiff has not supported the claims of ongoing misconduct set forth in his motion papers with any factual allegations, such as the dates on which the misconduct occurred, the nature of the injuries he claims to have suffered, the identities of the persons responsible for the conduct he seeks to enjoin, or the relationship between those actions and the claims asserted in his Complaint. Simply stated, Plaintiff's alleged fear of future wrongdoing by the Defendants is not sufficient to warrant the extraordinary remedy of preliminary injunctive relief.

The Court further notes that the requested injunctive relief cannot be granted unless there is also proof that Plaintiff has a likelihood of succeeding on the merits of his claim, or evidence that establishes sufficiently serious questions going to the merits of his claim and a balance of hardships tipping decidedly toward him. *See Covino v. Patrissi,* 967 F.2d 73, 77 (2d Cir.1992). Plaintiff has failed to submit *proof or evidence* that meets this standard. Plaintiff's allegations, standing alone, are not sufficient to entitle him to preliminary injunctive relief. *See Ivy Mar Co. v. C.R. Seasons Ltd.,* 907 F.Supp. 547, 561 (E.D.N.Y.1995) ("[B]are allegations, without more, are insufficient for the issuance of a preliminary injunction."); *Hancock v. Essential Resources, Inc.,* 792 F.Supp. 924, 928 (S.D.N.Y.1992) ("Preliminary injunctive relief cannot rest on mere hypotheticals."). Without evidence to support his claims that he is in danger from the actions of anyone at CNYPC, the Court will not credit Plaintiff's conclusory allegations

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

that he will be retaliated against or harmed in the future.

Plaintiff has failed to establish either of the two requisite elements discussed above. As a result, Plaintiff's request for a temporary restraining order and/or injunctive relief is denied.

**V. MOTION FOR APPOINTMENT OF COUNSEL**

***9** Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin,* 114 F.3d 390, 392–93 (2d Cir.1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion:

> [T]he district judge should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994) (quoting *Hodge v. Police Officers,* 802 F.2d 58, 61 [2d Cir.1986] ). This is not to say that all, or indeed any, of these factors are controlling in a particular case.[FN14] Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe,* 899 F.Supp. 972, 974 (N.D.N.Y.1995) (McAvoy, C.J.) (citing *Hodge,* 802 F.2d at 61).

> FN14. For example, a plaintiff's motion for counsel must always be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector, and such a motion may be denied solely on the failure of the plaintiff to provide such documentation. *See Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994); *Cooper v. Sargenti Co., Inc.,* 877 F.2d 170, 172, 174 (2d Cir.1989) [citation omitted].

Upon due consideration, the Court finds that the relevant factors weigh decidedly against granting Plaintiff's motion at this time. For example, the Court finds as follows: (1) the case does not present novel or complex issues; (2) it appears to the Court as though, to date, Plaintiff has been able to effectively litigate this action; (3) while it is possible that there will be conflicting evidence implicating the need for cross-examination at the time of the trial, as is the case in many actions brought under 42 U.S.C. § 1983 by *pro se* litigants, "this factor alone is not determinative of a motion for appointment of counsel," *Velasquez,* 899 F.Supp. at 974; (4) if this case survives any dispositive motions filed by Defendants, *it is highly probable that this Court will appoint trial counsel at the final pretrial conference;* (5) this Court is unaware of any special reasons why appointment of counsel at this time would be more likely to lead to a just determination of this litigation; and (6) Plaintiff's motion for counsel is not accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.

For these reasons, Plaintiff's motion for the appointment of counsel is denied without prejudice. After the Defendants have responded to the allegations in the Complaint which survive *sua sponte* review, and the parties have undertaken discovery, Plaintiff may file a second motion for the appointment of counsel, at which time the Court may be better able to determine whether such appointment is warranted in this case. Plaintiff is advised that any second motion for appointment of counsel must be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

***10 ACCORDINGLY,** it is

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is ***GRANTED;***[FN15] and it is further

FN15. Plaintiff should note that he will still be required to pay fees that he may incur in this action, including but not limited to copying and/or witness fees.

**ORDERED** that Plaintiff's motion for injunctive relief (Dkt. No. 3) is ***DENIED;*** and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 4) is ***DENIED*** **without prejudice;** and it is further

**ORDERED** that Plaintiff's claims of deliberate indifference against Defendants Bill, Carver and DeBroize are *sua sponte* ***DISMISSED*** **with prejudice** pursuant to 28 U.S.C. § 1915(e)(2) (B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Plaintiff's claims against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan arising from their alleged personal involvement in the August 8, 2011 incident are *sua sponte* ***DISMISSED*** **without prejudice and with leave to amend** in this action in accordance with Fed.R.Civ.P. 15 (as described above in Part III.B.3. of this Decision and Order), pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Defendant Sweet is *sua sponte* ***DISMISSED*** **without prejudice and with leave to be reinstated** as a Defendant in this action in accordance with Fed.R.Civ.P. 15, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is otherwise accepted for filing (i.e., as to the claims against Defendants Davis, Sill, and Nicolette arising from the August 8, 2011 incident); and it is further

**ORDERED** that Plaintiff provide a summons, USM–285 form and a copy of the complaint for Defendant Davis, Sill and Nicollette for service, and upon receipt from Plaintiff of the documents required for service of process, the Clerk shall (1) issue summonses and forward them, along with copies of the Complaint to the United States Marshal for service upon the remaining Defendants, and (2) forward a copy of the summons and Complaint by mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED** that, after service of process on Defendants, a response to the Complaint shall be filed by the Defendants or their counsel as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261–7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of it was mailed to all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a certificate of service showing that a copy was served upon all opposing parties or their attorneys will be stricken from the docket .** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify, in**

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

**writing, the Clerk's Office and all parties or their counsel of any change in Plaintiff's address; his failure to so may result in the dismissal of this action.** All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court.

N.D.N.Y.,2012.
Groves v. Davis
Not Reported in F.Supp.2d, 2012 WL 651919 (N.D.N.Y.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.





Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Atlee TOLLIVER, Petitioner,
v.
NEW YORK STATE CORRECTION OFFICERS T. WILSON AND W. HARVEY, Director Special Housing Donald Selsky, Lt. Cavalier, and John Doe Medical Personnel, in Their Individual and Official Capacities, Defendants.

No. 99CIV.9555(JGK).
Aug. 14, 2000.

OPINION AND ORDER

KOELTL, District J.

***1** Plaintiff Atlee Tolliver, an inmate at Sing Sing Correctional Facility, brings this action for monetary damages pursuant to 42 U.S .C. §§ 1983 and 1985. The plaintiff, who appears pro se, alleges that defendants T. Wilson and W. Harvey, correctional officers at Sing Sing, used excessive force against him in violation of the Eighth Amendment to the United States Constitution. The plaintiff also alleges that the other defendants, also officials at Sing Sing, violated his constitutional rights by destroying medical files documenting injuries he sustained, and by depriving him of his rights at a disciplinary hearing. The plaintiff also asserts state law causes of action for intentional infliction of emotional distress, assault and battery, and negligence. The defendants have moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6).

I.

On a motion to dismiss, the allegations in the complaint are accepted as true. *See Cohen v. Koenig,* 25 F.3d 1168, 1172–73 (2d Cir.1994). In deciding a motion to dismiss, all reasonable inferences must be drawn in the plaintiff's favor. *See Gant v. Wallingford Bd. Of Educ.,* 69 F.3d 669, 673 (2d Cir.1995); *Cosmas v. Hasset,* 886 F.2d 8, 11 (2d Cir.1989). In deciding the motion, the Court may consider documents referenced in the complaint and documents that are in the plaintiff's possession or that the plaintiff knew of and relied on in bringing suit. *See Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47–48 (2d Cir.1991); *I. Meyer Pincus & Assoc., P.C. v. Oppenheimer & Co., Inc.,* 936 F.2d 759, 762 (2d Cir.1991); *Skeete v. IVF America, Inc.,* 972 F.Supp. 206, 208 (S.D.N.Y.1997). The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985). Therefore, the defendants' motion should only be granted if it appears that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46 (1957); *Valmonte v. Bane,* 18 F.3d 992, 998 (2d Cir.1994); *see also Goldman,* 754 F.2d at 1065.

Where a pro se litigant is involved, the same standards for dismissal apply. However, a "court should give the pro se litigant special latitude in responding to a motion to dismiss." *Gaston v. Gavin,* 97 Civ. 1645, 1998 WL 7217, at *1 (S.D.N.Y. Jan. 8, 1998) (quotation omitted), *aff'd,* 172 F.3d 37 (2d Cir.1998); *Adams v. Galletta,* 966 F.Supp. 210, 211 (S.D.N.Y.1997); *Andujar v. McClellan,* 95 Civ. 3059, 1996 WL 601522, *1 (S.D.N.Y. Oct. 21, 1996).

II.

For the purposes of the defendants' motion to dismiss, the following allegations are accepted as true. On the afternoon of November 1, 1998, the plaintiff was involved in a dispute at Sing Sing with Officer T.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Wilson. (*See* Compl., 2, ¶ 2.) At some point, Officer Wilson, with the assistance of Officer W. Harvey, wrestled the plaintiff to the ground and restrained him. (*See id.*) The plaintiff alleges that while he was face down on the ground, the two officers beat him repeatedly with their sticks and that he sustained injuries to his head, knee, thigh, abdomen, right arm, and back as a result. (*See* Compl., 2, ¶ 3.) Officer Wilson issued a Misbehavior Report against the plaintiff. (*See* Inmate Misbehavior Report dated Nov. 1, 1998, attached to Compl.)

***2** In his report, Officer Wilson states that at the time of the incident, he observed a bulge in the plaintiff's pocket and ordered the plaintiff to submit to a search, which the plaintiff initially refused. (*See id.*) Officer Wilson states that he then conducted a pat-down search of the plaintiff, and ordered him to place his hands in his pocket and return to his cell. Officer Wilson's report states that the plaintiff thereafter became agitated and spun towards Officer Wilson in an aggressive manner. Officer Wilson states that he grabbed the plaintiff in a bear hug, wrestled him to the ground, and, with the assistance of Officer Harvey, restrained him. The plaintiff was cited for assault, refusing a direct order, threats, and refusing to be searched. (*See id.*) As a result of the incident, the plaintiff became subject to cuff-restraints when leaving his cell, and he was deprived of certain privileges. (*See* Compl., 2, 3 ¶¶ 4, 5; Cuff Restraint Form dated Nov. 2, 1998, attached to Compl.; Deprivation Order dated Nov. 2, 1998, attached to Compl.)

Following a disciplinary hearing against the plaintiff on November 7, 1998, the Hearing Officer, defendant Lt. J. Cavalier, found the plaintiff guilty of refusing a direct order, making threats, and refusing to be searched. However, Lt. Cavalier found that the plaintiff was not guilty of the assault charge. (*See* Disposition dated Nov. 15, 1998, attached to Compl.) Lt. Cavalier based his findings at the hearing on the report and testimony of the two officers. (*See id.*) Lt. Cavalier imposed penalties of a period of keeplock, and loss of packages, commissary and telephone use. (*See* id.)

The plaintiff appealed this disposition to defendant Donald Selsky, Director, Special Housing. (*See* Compl., 3, ¶ 8.) The plaintiff alleges that he sought a copy of the tape of the disciplinary hearing before Lt. Cavalier to file with his appeal but that he was advised that the tape could not be located. (*See* Compl., 3, ¶ 7.) The plaintiff further alleges that an unnamed medical officer destroyed the medical records documenting the injuries he sustained during the November 1 incident. (See Compl., 3, ¶ 10.) Director Selsky affirmed Lt. Cavalier's decision. (*See* Review of Superintendent's Hearing dated Jan. 11, 1999, attached to Compl.)

III.

The defendants move to dismiss the plaintiff's complaint on the ground that as state correctional officers and officials, they may not be sued for money damages under the Eleventh Amendment. The Eleventh Amendment provides that “[t]he Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.” “The Supreme Court has consistently held that the federal courts lack jurisdiction not only over suits against a state brought by citizens of other states, as the literal language of the Amendment provides, but also over suits against such states brought by their own citizens.” *Dwyer v. Regan,* 777 F.2d 825, 835 (2d Cir.1985), *modified on other grounds,* 793 F.2d 457 (2d Cir.1986) (citing *Edelman v. Jordan,* 415 U.S. 651 (1974)). “Actions against state officials are also barred by the [Eleventh] Amendment where the relief granted would bind the state or where the state is the real party in interest.” *Russell v. Dunston,* 896 F.2d 664, 667 (2d Cir.1990); *see also Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101 (1984). The state is the real party in interest when a state officer is sued in his or her official capacity. *See Kentucky v. Graham,* 473

U.S. 159 (1985). All of the defendants in this case are state officials because they are employees of the New York State Department of Correctional Services. *See Roundtree v. New York State Dep't of Corrections,* No. 94 Civ. 3833, 1995 WL 428654, *2 (E.D.N.Y. Jul. 1, 1995). Thus, to the extent that the plaintiff's claims for monetary damages are being brought against the defendants in their official capacities as representatives of the state, the claims against them are barred under the Eleventh Amendment. *See Al– Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989) ("As an initial matter, we note that a section 1983 claim for damages against a state official can only be asserted against that official in his or her individual capacity."); *Carter v. Kiernan,* No. 98 Civ. 2664, 1999 WL 14014, *5 (S.D.N.Y. Jan. 14, 1999).

***3** Moreover, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989). Hence the defendants cannot be sued under § 1983 in their official capacity except under circumstances not relevant here. *See Dube v. State Univ. of New York,* 900 F.2d 587, 595 (2d Cir.1990) (suits against state officers in their official capacities are permitted to the extent that they are sued for prospective declaratory or injunctive relief). Similarly, under § 1985, a state and its agencies are not "persons" and can not be sued. *See Scott v. Coughlin,* No. 90 Civ. 494, 1990 WL 108383, *5 (July 26, 1990); *Richards v. New York State Dep't of Correctional Servs.,* 572 F.Supp. 1168, 1172 (S.D.N .Y.1983).

However, the plaintiff's complaint states that the plaintiff is suing the defendants in their individual as well as their official capacities. State officers are amenable to suit in their individual capacities for monetary damages. *See, e.g., Dube,* 900 F.2d at 595 ("The Eleventh Amendment ... provides no immunity for state officials sued in their personal capacities."); *Roniger v. McCall,* 22 F.Supp.2d 156, 161 (S.D.N.Y.1998) ("Money damages are available under § 1983 only in suits brought against officials in their personal capacities...."). Thus, to the extent that the defendants are being sued in their official capacities, the complaint against them is dismissed. However, to the extent that the defendants are being sued in their individual capacities for money damages, the plaintiff's suit may proceed and the defendants' motion to dismiss on this basis is denied.

IV.

The defendants also argue that the plaintiff's federal claims must be dismissed because the plaintiff has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). That section provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

The plaintiff in this action seeks monetary damages only. The defendants acknowledge that monetary damages are unavailable in the administrative grievance procedure established under New York law. The plaintiff argues that he was not therefore required to exhaust his administrative remedies. The Court of Appeals for the Second Circuit has not yet decided whether the PLRA requires a prisoner seeking monetary damages to exhaust administrative grievance procedures when such damages can not be recovered through those procedures. *See Liner v. Goord,* 196 F.2d 132, 134 (2d Cir.1999). This Court has previously held that exhaustion is required even though monetary damages may not be available through the administrative procedure. *See Lee v. Artuz,* No. 96 Civ. 8604, 2000 WL 231083, *3 (S.D.N.Y. Feb. 29, 2000). Other courts have reached a similar conclusion. *See, e.g., Cruz v. Jordan,* No. 98 Civ. 363, 1999 WL 557519, *10 (S.D.N.Y.1999); *Beeson v. Fishkill Correctional Facility,* 28 F.Supp.2d 884, 896 (S.D.N.Y.1998). The plaintiff is therefore not relieved of the requirement to exhaust his administrative

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

remedies merely because monetary damages were not available to him through those remedies.

***4** However, the plaintiff's failure to exhaust his administrative remedies does not entitle the defendants to dismissal of the plaintiff's complaint. In arguing that the plaintiff failed to exhaust his administrative remedies, the defendants assume that the plaintiff's claims constitute an "action ... with respect to prison conditions" under § 1997e(a), thereby requiring exhaustion under the PLRA. But courts have disagreed about whether an Eighth Amendment excessive force claim, which is the plaintiff's principal claim in his complaint, qualifies as a claim "with respect to prison conditions" under § 1997e(a). *See Liner,* 196 F.3d at 134; *Carter,* 1999 WL 14014, at *2 (collecting cases). The Court of Appeals for the Second Circuit has not resolved this issue. *See Liner,* 196 F.3d at 134.

In *Carter,* this Court reviewed the text, purpose and history of the PLRA and concluded that § 1997e(a)'s exhaustion requirement does not apply to § 1983 claims that are based on allegations of excessive force in violation of the Eighth Amendment. *See Carter,* 1999 WL 14014, at *2–4.[FN1] Other courts have also concluded that a claim of excessive force is not a claim directed at prison conditions and therefore does not require exhaustion of administrative remedies. *See, e.g., Giannattasio v. Artuz,* No. 97 Civ. 7606, 2000 WL 335242, *12–13 (S.D.N.Y. March 30, 2000); *Baskerville v. Goord,* No. 97 Civ. 6413, 1998 WL 778396, *2–5 (S.D.N.Y. Nov. 5, 1998). For the reasons explained in *Carter,* the plaintiff's claim that the officers used excessive force in violation of the Eighth Amendment is not a claim "with respect to prison conditions" under § 1997e(a) and the plaintiff was therefore not required to exhaust his administrative remedies with respect to that claim. The defendants are therefore not entitled to dismissal of the plaintiff's claim of excessive force on this basis.

FN1. Inexplicably, the defendants do not even address this issue, or cite to any of the relevant cases even though the New York State Attorney General's Office represented the defendants in *Carter* (and in other cases involving this very issue) and even though *Carter* was decided well before the defendants filed their motion to dismiss in this action. Moreover, the Court of Appeals for the Second Circuit noted this as an open issue in *Liner* which was also decided well before the defendants submitted their brief in this case.

V.

The plaintiff also alleges that an unnamed medical officer violated his constitutional rights by destroying medical files evidencing his injuries, and that defendants Cavalier and Selsky violated the plaintiff's rights in connection with the disciplinary hearing. The defendants also move to dismiss these claims on the basis that the plaintiff failed to exhaust his administrative remedies. Some courts have recognized that in addition to claims of excessive force, certain other alleged constitutional violations are also not claims "with respect to prison conditions" and therefore do not need to be exhausted. *See, e.g., Giannattasio,* 2000 WL 335242, at *12–13 (holding that Fourth Amendment claims of malicious prosecution and abuse of process did not require exhaustion of administrative remedies).

In this case, the plaintiff's claims relating to the alleged destruction of medical evidence and the conduct of the disciplinary hearing are closely connected with his claim of excessive force under the Eighth Amendment. However, it is not necessary to determine, for purposes of the defendants' present motion, whether the plaintiff was required to exhaust his administrative remedies with respect to these claims.

***5** The plaintiff's claim relating to an alleged destruction of medical files is directed at an unnamed official at Sing Sing who has not been served in this action and who has not had an opportunity to answer or move with respect to the plaintiff's complaint. No

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

conclusion can therefore be reached with respect to this claim at this time.

The plaintiff's claim that his rights were violated in connection with the disciplinary hearing is directed at defendants Cavalier and Selsky. It is also not necessary to determine whether the plaintiff was required to exhaust his administrative remedies with respect to this claim because the plaintiff has failed to state a claim against these defendants.

VI.

To state a claim under 42 U.S.C. § 1983, the plaintiff "must allege (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Dwyer v. Regan,* 777 F.2d 825, 828 (2d Cir.1985); *see also Fry v. McCall,* 95 Civ.1915, 1999 WL 359766, *7 (S.D.N.Y. June 4, 1999) ("To establish a claim under 42 U.S.C. § 1983, a plaintiff must prove that she was deprived of a right secured by the Constitution or federal laws by a person acting under color of state or territorial law"). Moreover, to be liable in a § 1983 action, a defendant must have been personally involved in the alleged constitutional violation. *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994); *Adams v. Galletta,* 966 F.Supp. 210, 212 (S.D.N.Y.1997). Personal involvement for purposes of a § 1983 action means "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996); *see also Wright,* 21 F.3d at 501.

With respect to defendant Cavalier, the plaintiff's allegations amount to no more than that Cavalier wrongly found the plaintiff guilty on three counts at the disciplinary hearing. This, as the defendants argue, is plainly insufficient to state a constitutional violation. The plaintiff has not sufficiently alleged a violation of his due process rights at the hearing. [FN2]

FN2. The Court assumes that the penalty from the disciplinary hearing was sufficiently "atypical and significant hardship" to implicate the plaintiff's liberty interests. *See Kalwasinski v. Morse,* 201 F.3d 103, 106 (2d Cir.1999) (citing *Sandin v. Conner,* 515 U.S. 472 (1995)). The parties do not address this issue and it is not necessary to reach it on the present motion.

The Court of Appeals for the Second Circuit has explained that in a disciplinary hearing resulting in imposition of loss of good time credits, solitary or SHU confinement, due process requires that "an inmate must be afforded advance written notice of the charges against him and a written statement of fact findings supporting the disposition and reasons for the disciplinary action taken.... Subject to legitimate safety and correctional goals of the institution, an inmate should also be permitted to call witnesses and present documentary evidence... [A]n inmate [also] has a right to a fair and impartial hearing officer.... In addition, ... a hearing disposition must be supported by at least 'some evidence." ' *Kalwasinski v. Morse,* 201 F.3d 103, 108 (2d Cir.1999) (citations omitted).

***6** Here, the plaintiff does not allege that he was deprived of notice of the charges against him or an opportunity to call witnesses or present evidence on his behalf. It is plain that the findings by the hearing officer were supported by Officer Wilson's written report and the testimony of the two correctional officers. Lt. Cavalier provided a written statement of the basis for his decision and the penalty imposed against the plaintiff. There are no facts pleaded to show that Lt. Cavalier was not impartial or that the disciplinary hearing was in any other way unfair to the plaintiff. Under these circumstances, the plaintiff has failed to allege a violation of his due process rights. *See id.* at 109; *Dumpson v. Rourke,* 1997 WL 610652, *6

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

(N.D.N.Y. Sept. 26, 1997). The plaintiff has also failed to allege any other deprivation of his constitutional rights in connection with the disciplinary hearing. Defendant Cavalier is therefore entitled to dismissal of the claim under against him.

The plaintiff has also failed to state a claim under § 1983 against defendant Selsky. The plaintiff alleges that Mr. Selsky improperly affirmed, in the absence of the tape of the disciplinary hearing, the determination reached by Lt. Cavalier. However, because the hearing itself did not violate the plaintiff's constitutional rights, and Lt. Cavalier's determination was supported by the record even without the tape, Mr. Selsky's actions in affirming the determination made by Lt. Cavalier did not violate the plaintiff's constitutional rights. *See* *Afrika v. Selsky,* 750 F.Supp. 595, 602 (S.D.N.Y.1990). There is no basis to conclude that the plaintiff's constitutional rights were violated merely because Mr. Selsky did not review the tape of the hearing. There is no other allegation in the complaint of any constitutional violation by Mr. Selsky. The plaintiff has therefore failed to state a claim under § 1983 against defendant Selsky.

The plaintiff has also failed to state a claim against defendants Cavalier and Selsky under 42 U.S.C. § 1985. The plaintiff alleges that the defendants violated § 1985 by conspiring to interfere with his civil rights. Section 1985(3) provides a remedy for the intentional deprivation of any constitutional rights or privileges by two or more persons. To state a claim under Section 1985(3), a plaintiff must allege (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States. *See* *Mian v. Donaldson, Lufkin & Jenrette Securities Corp.,* 7 F.3d 1085, 1087–88 (2d Cir.1993). A conspiracy is an agreement between two or more individuals, where one individual acts in furtherance of the objective of the conspiracy, and each member has knowledge of the nature and scope of the agreement. *See* *Burrell v. City University of New York,* 995 F.Supp. 398, 414 (S.D.N.Y.1998). The plaintiff must show that the conspiracy was motivated by “some racial, or perhaps otherwise class-based, invidious discriminatory animus.” *Mian,* 7 F.3d at 1088. Here, the plaintiff has made only conclusory allegations that the defendants conspired to deprive him of his civil rights. These conclusory allegations are insufficient. *See* *Gyadu v. Hartford Ins. Co.,* 197 F.3d 590, 591 (2d Cir.1999) (per curiam); *Posr v. Court Officer Shield # 207,* 180 F.3d 409, 419 (2d Cir.1999). The plaintiff has also failed to allege that any conspiracy by Lt. Cavalier and Mr. Selsky was motivated by racial or other discriminatory animus. He has therefore failed to state a claim under Section 1985(3). The remaining provisions of Section 1985 are inapplicable to the plaintiff. Accordingly, the plaintiff's Section 1985 claim against defendants Cavalier and Selsky is dismissed.

***7** Moreover, the claims against defendants Cavalier and Selsky must be dismissed because they are entitled to qualified immunity. Under the doctrine of qualified immunity, “government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). “A right is clearly established when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right. The unlawfulness must be apparent.” *McEvoy v.. Spencer,* 124 F.3d 92, 97 (2d Cir.1997) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987) (internal quotation marks, ellipses, and brackets omitted)). To determine whether a particular right was clearly established at the time of the alleged offense, courts should consider: (1) whether the right in question was defined with “reasonable specificity”; (2) whether the decisional law of the Supreme Court and the applicable circuit court sup-

port the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful. *See Frank v. Relin,* 1 F.3d 1317, 1328 (2d Cir.1993); *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991). "[E]ven where the contours of the plaintiff's federal rights and the official's permissible actions were clearly delineated at the time of the acts complained of, the defendant may enjoy qualified immunity if it was objectively reasonable for him to believe that his acts did not violate those rights." *Frank,* 1 F.3d at 1328. The use of an "objective reasonableness" standard permits qualified immunity claims to be decided as a matter of law. *Defore v. Premore,* 86 F.3d 48, 50 (2d Cir.1996) ("qualified immunity is available as a matter of law when the undisputed facts establish that it was objectively reasonable for the defendants to believe that their actions did not violate clearly established rights"); *see also Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir.1993).

Here, the plaintiff has failed to allege any clearly established due process right which he was denied at the disciplinary hearing, which proceeded in accordance with the due process requirements recognized by the courts. The plaintiff has also failed to identify any clearly established right allegedly violated by defendant Selsky's review of the hearing. Moreover, it was objectively reasonable for defendants Selsky and Cavalier to believe that their actions did not violate the plaintiff's rights. Defendants Cavalier and Selsky are therefore also entitled to dismissal of the plaintiff's claims against them on the basis of qualified immunity.

CONCLUSION

For the reasons explained above, the defendants' motion to dismiss the plaintiff's claims against defendants Cavalier and Selsky is granted. The defendants' motion is otherwise denied.

***8** SO ORDERED.

S.D.N.Y.,2000.
Tolliver v. New York State Correction Officers
Not Reported in F.Supp.2d, 2000 WL 1154311 (S.D.N.Y.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Jason R. WHITE, Plaintiff,
v.
Brian FISCHER, Commissioner, Dept. of Correctional Services; Theresa A. Knapp–David, Director, Classification and Movement; and R. Woods, Superintendent, Upstate Correctional Facility, Defendants.

No. 9:09–CV–240.
Feb. 18, 2010.

Jason R. White, Elmira, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General of the State of New York, Brian J. O'Donnell, Esq., Asst. Attorney General, of Counsel, Albany, NY, for Defendants.

***DECISION and ORDER***

DAVID N. HURD, District Judge.

***1** Plaintiff, Jason R. White, commenced this civil rights action in February 2009, pursuant to 42 U.S.C. § 1983. By Report–Recommendation dated January 25, 2009, the Honorable David E. Peebles, United States Magistrate Judge, recommended that defendant's motion to dismiss (Dkt. No. 10) be granted, and that plaintiff's complaint in this action be dismissed without leave to replead. No objections to the Report–Recommendation have been filed.

Based upon a careful review of the entire file and the recommendations of Magistrate Judge Peebles, the Report–Recommendation is accepted and adopted in all respects. *See* 28 U.S.C. 636(b)(1).

Accordingly, it is

ORDERED that

1. Defendant's motion to dismiss (Dkt. No. 10) is GRANTED;

2. Plaintiff's complaint in this action is DISMISSED without leave to replead; and

3. The Clerk is directed to file judgment accordingly and close the file.

IT IS SO ORDERED.

JASON R. WHITE,

Plaintiff,

-v.-

BRIAN FISCHER, THERESA A. KNAPP–DAVID, and R. WOODS,

Defendants.

*REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

Plaintiff Jason R. White, a New York State prison inmate who is proceeding *pro se* and *in forma pauperis*, has commenced this action pursuant to 42 U.S.C. § 1983, alleging deprivation of his civil rights. In his complaint, plaintiff asserts that his transfer into special housing unit ("SHU") disciplinary confinement at the Upstate Correctional Facility, to serve what was originally intended to be a three-month

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

disciplinary sentence of less restrictive keeplock confinement imposed while at another facility, represented a deprivation of a liberty interest without the requisite procedural due process. As relief for the violation, plaintiff's complaint seeks an award of compensatory damages in the amount of $25,000.

In response to plaintiff's complaint, defendants have moved seeking its dismissal for failure to state a cause of action upon which relief may be granted. In their motion, defendants argue that plaintiff's allegations do not demonstrate the existence of a meritorious due process claim since, at best, it implicates a failure of prison officials to comply with governing regulations regarding transfers into an SHU unit, a matter not of constitutional concern, noting further that plaintiff has no constitutional right to be designated to a particular correctional facility or to a desired security classification. Defendants also seek dismissal of plaintiff's claims against them based upon lack of personal involvement, and additionally assert their entitlement to qualified immunity from suit as a basis for their dismissal motion.

For the reasons set forth below, I find that White's complaint fails to set forth a plausible due process violation and that defendant Fischer is also entitled to dismissal of the claims against him based upon the lack of allegations showing of his personal involvement in the conduct allegedly giving rise to plaintiff's claims. I further recommend a finding that, even if plaintiff were able to plead a cognizable due process cause of action, defendants Knapp–David and Woods nonetheless should be granted qualified immunity from suit in this instance.

I. *BACKGROUND*[FN1]

FN1. In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion. *See Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007)); *see also Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1733, 1734 (1964). I have also considered the exhibits attached to plaintiff's memorandum, which accompanied his complaint, to the extent that they are consistent with the allegations of his complaint. *See Donhauser v. Goord,* 314 F.Supp.2d 119, 121 (N.D.N.Y.2004) (Hurd, J.).

***2** Plaintiff is a prison inmate entrusted to the care and custody of the New York State Department of Correctional Services ("DOCS"). *See generally* Complaint (Dkt. No. 1). At the times relevant to his claims plaintiff was designated first to the Auburn Correctional Facility ("Auburn"), located in Auburn, New York, and later to the Upstate Correctional Facility ("Upstate"), located in Malone, New York. *Id.,* § 6.

On March 28, 2007, while confined at Auburn, plaintiff was found guilty following a Tier I II disciplinary hearing of engaging in violent conduct and refusing a direct order, in violation of disciplinary rules 104.11 and 106.10, respectively.[FN2] *See* Plaintiff's Memorandum (Dkt. No. 1–1) Exh. A. [FN3] As a result of that determination plaintiff was sentenced to serve three months of keeplock confinement, with a corresponding loss of package, commissary, and telephone privileges. *See id.*

FN2. The DOCS conducts three types of inmate disciplinary hearings. Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges. Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the SHU. Tier III hearings

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits. *See Hynes v. Squillace,* 143 F.3d 653, 655 (2d Cir.), *cert. denied,* 525 U.S. 907, 119 S.Ct. 246 (1998).

FN3. Plaintiff filed what he labeled as a "memorandum of law", with exhibits attached, in conjunction with his complaint. "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his ... memorandum." *Rivera v. Selsky,* No. 9:05–CV–0967, 2007 WL 956998, at *1 n. 2 (N.D.N.Y. Jan. 5, 2007) (quoting *Gadson v. Goord,* 96 Civ. 7544, 1997 WL 714878, at *1 n. 2 (S.D.N.Y. Nov. 17, 1997)).

On April 11, 2007, while serving his keeplock sentence at Auburn, White was processed out of that facility and, following completion of an inter-prison transfer process which included a stop at another facility, was transferred into Upstate on or about April 13, 2007. Complaint (Dkt. No. 1) § 6. At Upstate, plaintiff was assigned to a two-person cell in the facility's SHU to serve the balance of his disciplinary confinement sentence.[FN4] *Id.*

FN4. Upstate is a maximum security prison comprised exclusively of SHU cells in which inmates are confined, generally though not always for disciplinary reasons, for twenty-three hours each day. *See Samuels v. Selsky,* No. 01 CIV. 8235, 2002 WL 31040370, at *4 n. 11 (S.D.N.Y. Sept. 12, 2002).

On April 23, 2007 plaintiff filed a grievance with prison authorities, arguing that his transfer into the SHU at Upstate was not authorized by DOCS directives. Complaint (Dkt. No. 1) § 6 at p. 4B; Plaintiff's Memorandum (Dkt. No. 1–1) Exh. C. The grievance was denied by the facility's Inmate Grievance Review Committee ("IGRC"). Complaint (Dkt. No. 1) § 6 at p. 4B; Plaintiff's Memorandum (Dkt. No. 1–1) Exh. D. Plaintiff appealed the denial to defendant Woods, the Superintendent at Upstate, who upheld the IGRC's unfavorable determination by decision dated May 15, 2007. Complaint (Dkt. No. 1) § 6 at p. 4B. Plaintiff's Memorandum (Dkt. No. 1–1) Exh. D. Plaintiff's further appeal of the matter to the DOCS Central Office Review Committee ("CORC") was likewise unsuccessful. *Id.* Exh. E.

Also on April 23, 2007, plaintiff sent a letter to the DOCS Commissioner Brian Fischer, complaining of the SHU designation. Plaintiff's Memorandum (Dkt. No. 1–1) Exh. F. That letter was referred by Commissioner Fischer to defendant Theresa A. Knapp–David, the DOCS Director of Classification and Movement. Complaint (Dkt. No. 1) § 6 at pp. 4B–4C. In response, defendant Knapp–David wrote to the plaintiff on May 7, 2007, advising that his SHU assignment was in accordance with established DOCS procedures. Plaintiff's Memorandum at (Dkt. No. 1.1) Exh. G.

II. *PROCEDURAL HISTORY*

Plaintiff commenced this action on February 27, 2009, and was thereafter granted leave to proceed *in forma pauperis.* Dkt. Nos. 1, 4. Named as defendants in plaintiff's complaint are Commissioner Fischer; Director Knapp–David; and Upstate Superintendent R. Woods. Complaint (Dkt. No. 1) § 3. Plaintiff's complaint asserts a single cause of action for deprivation of procedural due process. *Id.,* § 7.

***3** Following service, in lieu of answering plaintiff's complaint, defendants filed a motion to dismiss asserting a variety of grounds for the relief sought. Dkt. No. 10. In their motion defendants argue, *inter*

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

*alia,* that plaintiff's complaint 1) does not implicate a cognizable due process violation, 2) plaintiff's complaint fails to establish their personal involvement in the deprivation alleged; and 3) in any event they are entitled to qualified immunity.[FN5] Plaintiff has since responded in opposition to defendants' motion, Dkt. No. 13, which is now fully briefed and ripe for determination, and has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed.R.Civ.P. 72(b).

> FN5. Defendant's also seek a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure staying discovery in this matter pending final determination of their dismissal motion. Discerning no basis to conclude that plaintiff would be unduly prejudiced by such a stay, that application will be granted.

III. *DISCUSSION*

A. *Dismissal Motion Standard*

A motion to dismiss a complaint, brought pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading, utilizing as a backdrop a pleading standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal,* ––– U.S. ––––, ––––, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555, 127 S.Ct. 1955, (2007)). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). *Id.* While modest in its requirement, that rule commands that a complaint contain more than mere legal conclusions; "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft,* ––– U.S. ––––, 129 S.Ct. at 1950.

To withstand a motion to dismiss, a complaint must plead sufficient facts which, when accepted as true, state a claim which is plausible on its face. *Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (citing *Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.' " *In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir.2007) (quoting *Twombly,* 550 U.S. at 570 127 S.Ct. at 1974). When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 2200 (2007) (" '[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers' ") (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292 (1976) (internal quotations omitted)).

B. *Procedural Due Process*

***4** In their motion, defendants assert that because plaintiff's due process claim rests on alleged violations of DOCS regulations, his complaint in fact fails to assert a cognizable due process claim.

To successfully state a claim under 42 U.S.C. § 1983 for the denial of procedural due process arising out of a disciplinary hearing, a plaintiff must show that he or she 1) possessed an actual liberty interest, and 2) was deprived of that interest without being afforded sufficient procedural safeguards. *See Tellier v. Fields,* 260 F.3d 69, 79–80 (2d Cir.2000) (citations omitted); *Hynes,* 143 F.3d at 658; *Bedoya v. Coughlin,* 91 F.3d 349, 351–52 (2d Cir.1996). Inmates' liberty interests

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

may arise out of the Due Process Clause of the Fourteenth Amendment, or state statute or regulation. *Arce v. Walker,* 139 F.3d 329, 333 (2d Cir.1998) (citing *Kentucky Dep't of Corr. v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908 (1989)).

Recognizing that lawful imprisonment necessarily restricts the rights and privileges of inmates, the Supreme Court has narrowly circumscribed the scope of liberty interests arising out of the Due Process clause to protect only the most basic liberty interests of prisoners. *Hewitt v. Helms,* 459 U.S. 460, 467, 103 S.Ct. 864, 869 (1983). Accordingly, the Due Process Clause does not guard against every change in the conditions of confinement having a substantial adverse impact on inmates, but only those conditions or restraints that "exceed[ ] the sentence in ... an unexpected manner." *Arce,* 139 F.3d at 333 (quoting *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300 (1995)).

In this instance plaintiff does not claim that he was denied procedural due process in connection with the disciplinary hearing that led to the imposition of a three-month period of keeplock confinement as a sanction. Instead, he argues that his due process rights were abridged after the sanction was imposed when, in violation of DOCS Directive No. 4933,[FN6] he was transferred from keeplock confinement at Auburn to an SHU cell at Upstate, and as a result required to endure a more restrictive confinement. Unfortunately for plaintiff, neither the Due Process Clause nor state statute or regulation give rise to a liberty interest in these circumstances.

FN6. Section 301.6(a) of DOCS Directive No. 4933 permits an inmate confined in a medium or minimum security facility, or at Upstate, to be admitted into an SHU for various reasons, which can include confinement pursuant to a Tier II or III hearing disposition. Plaintiff asserts that because he was transferred from Auburn, a maximum security facility, into an SHU unit, that section does not apply. Interestingly, a prior version of DOCS Directive No. 4933 provided, in relevant part, that

> [a]n inmate who is assigned to keeplock status and who is transferred to a maximum security facility shall not be assigned to the special housing unit at the receiving facility. Such inmate shall be assigned to keeplock within general population and shall have the same rights and responsibilities as other keeplock inmate in that facility.

*Lee v. Coughlin,* 26 F.Supp.2d 615, 628 (S.D.N.Y.1998) (quoting prior version of 7 NYCRR § 301.6(h)).

Preliminarily, it is well recognized that an inmate has no constitutional right to be incarcerated at a particular correctional facility, "and transfers among facilities do not need to be proceeded by any particular due process procedure." *Halloway v. Goord,* No. 9:03–CV01524, 2007 WL 2789499, at * 5 (N.D.N.Y. Sept. 24, 2007) (Kahn, J. and Treece, J.) [FN7] (citing *Wilkinson v. Austin,* 545 U.S. 209, 221–22 (2005)) (other citation omitted); *see also, Johnson v. Rowley,* 569 F.3d 40, 43 (2d Cir.2009) (per curiam); *Davis v. Kelly,* 160 F.3d 917, 920 (2d Cir.1998). As a result, the constitution did not present any impediment to plaintiff's transfer to Upstate.

FN7. Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff. [Editor's Note: Appended decisions deleted for Westlaw purposes.]

***5** Additionally, it is equally well established, as defendants now argue, that state regulations, including DOCS Directives, do not ordinarily confer constitu-

tional rights sufficient to give rise to a due process claim. *Snider v. Dylag,* 188 F.3d 51, 53 (2d Cir.1999) (citing *Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993)); *Cusamano v. Sobek,* 604 F.Supp.2d 416, 482 (N.D.N.Y.2009). A state can, however, by statute or regulation confer a liberty interest which cannot be abridged without due process. *Black v. Lansberg,* No. 9:06–CV–1243, 2009 WL 3181111, at *3 (Sept. 29, 2009) (Suddaby, J., adopting Report and Recommendation of Lowe, M.J.). Nonetheless, contrary to plaintiff's contention, DOCS Directive No. 4933 does not give rise to a cognizable liberty interest.

It should be noted that on at least four separate occasions, addressing the same issues raised by the plaintiff in this case, this court has held that an inmate's transfer from keeplock to SHU after being sentenced to serve time in keeplock does not implicate a cognizable liberty interest. *McEachin v. Goord,* No. 9:06–CV–1192, 2008 WL 1788440 (N.D.N.Y. Apr. 17, 2008) (Hurd, J. and Treece, M.J.) (dismissing complaint alleging that plaintiff was unlawfully transferred from keeplock to SHU while serving disciplinary sentence); *Halloway,* 2007 WL 2789499 (granting summary judgment dismissing claim that plaintiff should have received hearing before transfer to Upstate after sentenced to keeplock at Elmira Correctional Facility); *Carlisle v. Goord,* No. 9:03–CV–296, 2007 WL 2769566, at *2 n. 1 (N.D.N.Y. Sept. 21, 2007) (Scullin, S.J., adopting Report and Recommendation of Lowe, M.J.) (granting summary judgment finding that "an inmate has no liberty interest in not having his sentence of keeplock confinement at one prison converted to a sentence of SHU confinement at another facility without receiving a hearing regarding the conversion."); and, *Chavis v. Kienert,* 9:03–CV–0039, 2005 WL 2452150, at *9–10 (N.D.N.Y. Sept. 30, 2005) (Scullin, C.J.) (finding that transfer from keeplock at Coxsackie Correctional Facility to SHU at Upstate did not implicate a liberty interest). *See also, Holmes v. Grant,* No. 03–Civ. 3426, 2006 WL 851753, at *18–19 (S.D.N.Y. mar. 31, 2006 (dismissing claim plaintiff's claim that disciplinary sentence was improperly converted from keeplock sentence to SHU). These decisions are premised upon the court's conclusion that a transfer from keeplock in one facility to SHU in another does not implicate a constitutionally protected liberty interest and that "New York has not created, by regulation or statute, any liberty interest in remaining in one particular prison[,]" noting that "the DOCS ... possesses sole discretion to determine 'where a [state] inmate will be housed.' " *Halloway,* 2007 WL 2789499, at *5 (quoting *Grullon v. Reid,* No. 97 CIV. 7616, 1999 WL 436457, at *10 (S.D.N.Y. Jun. 24, 1999)) (other citations omitted). These cases are indistinguishable from the case presently before the court.

***6** Moreover, contrary to the interpretation offered by the plaintiff, the court has read section 301.6 of DOCS Directive No. 4933 as "explicitly permitt[ing] keeplock sentences to be served in SHU and subject to the same restrictions and amenities ...." *McEachin,* 2008 WL 1788440, at *4; *see also, Halloway,* 2007 WL 278499, at * 5 ("[N]ot only do New York State Regulations permit keeplock sentences to be served in SHU, but further contemplate that assignments to SHU will be subject to the same ... limitations.") and *Holmes,* 2006 WL 851753, at * 19 ("Section 301.6 ... relat[es] to keeplock admissions and authorizes placement of inmates in SHU 'at a medium or minimum security correctional facility or *Upstate Correctional Facility* ... for confinement pursuant to disposition of a disciplinary (Tier II) or superintendent's (Tier II hearing.' ") (emphasis in original).

In view of the foregoing, it is clear that plaintiff's transfer from Auburn, where he was keeplocked, to SHU confinement at Upstate does not implicate a liberty interest arising out of either Due Process Clause, or state statute or regulation. According to plaintiff's complaint, he was sentenced to keeplock after a Tier III disciplinary hearing; he does not allege that he was denied due process in connection with that

hearing. The Tier II I hearing that he was provided was all that was required by the constitution before he was sentenced to disciplinary confinement. *Holmes,* 2006 WL 851753, at *19. Plaintiff was entitled to no further procedure at the time of transfer to Upstate, and therefore cannot show that he was deprived of a protected liberty interest without due process of law.[FN8] *Id.* Accordingly, I recommend that plaintiff's complaint be dismissed for failure to state a cause of action.

FN8. Plaintiff alleges a litany of differences between the conditions experienced while in keeplock at Auburn and those in SHU at Upstate asserting, for example, that with regard to visits, he was required to travel to and from them in handcuffs, had to remain in handcuffs if he needed to use the restroom, and was not permitted to take photographs, and also that he did not have the same opportunities for social interaction with other prisoners and had to sleep with a light on. Plaintiff's Memorandum (Dkt.1–1) at pp. 11–12. As a matter of law, these alleged conditions can hardly be characterized as "exceed[ing] his sentence in an unexpected manner" or as imposing an "atypical and substantial hardship upon the [plaintiff] in relation to the ordinary incidents of prison life". *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300. "[T] fact that 'life in one prison is much more disagreeable than another does not itself signify that a Fourteenth Amendment liberty interest is implicated...." *Halloway,* 2007 WL 2789499, at * 7 (quoting *Meachum v. Fano,* 427 U.S. 215, 225 (1976). Moreover, even if a liberty interest were alleged, plaintiff was afforded all the process he was due, by way of a disciplinary proceeding, before the alleged deprivation. *Carlisle,* 2007 WL 2769566, at * 3.

C. *Personal Involvement*

In their motion, defendants also challenge the sufficiency of plaintiff's allegations regarding their personal involvement in the constitutional deprivations alleged. Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282 (1978)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

Two of the three defendants, Brian Fischer and Robert Woods, appear to be named as defendants in their supervisory capacities, based solely upon their positions as the DOCS Commissioner and the Superintendent at Upstate, respectively. As supervisors, neither of those individuals can be liable for damages under section 1983 solely by virtue of their respective positions as supervisor; there is no *respondeat superior* liability under section 1983. *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501. Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability. *Pettus v.. Morgenthau,* 554 F.3d 293, 300 (2d Cir.2009) ("To the extent that [a] complaint attempts to assert a failure-to-supervise claim ... [that claim is insufficient where] it lacks any hint that [the supervisor] acted with deliberate indifference to the possibility that his subordinates would violate [plaintiff's] constitutional rights."). Culpability on the part of a supervisory official for a civil rights violation can, however, be established in one of several ways, including when that individual 1) has directly participated in the challenged conduct; 2) after learning of the violation through a report or appeal,

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

has failed to remedy the wrong; 3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) was grossly negligent in managing the subordinates who caused the unlawful event; or 5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty,* 490 F.3d 143, 152–53 (2d Cir.2007), *rev'd on other grounds, sub nom., Ashcroft v. Iqbal,* ––– U.S. ––––, 129 S.Ct. 1937.; *see also Richardson,* 347 F.3d at 435; *Wright,* 21 F.3d at 501; *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986).

1. *Commissioner Fischer*

***7** Aside from allegations centering upon his role as the DOCS Commissioner, which are clearly insufficient in and of themselves to establish his liability, plaintiff's claims against defendant Fischer appear to revolve around the letter written by him to the Commissioner on or about April 23, 2007, complaining of his SHU confinement at Upstate. That letter, it appears from the limited materials now before the court, was referred to defendant Knapp–David for response. It is well established that when the Commissioner receives a letter and forwards it on to another individual for investigation and a response, his or her involvement in the constitutional violation cannot be predicated solely upon those circumstances. *Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997); *Rivera v. Fischer,* No. 08–CV–6505L, 2009 WL 2981876, at *2 (W.D.N.Y. Sept. 18, 2009). I therefore recommend dismissal of plaintiff's claims against Commissioner Fischer on the basis of lack of his personal involvement.

2. *Superintendent Woods*

Plaintiff's claims against Superintendent Woods stand on slightly different footing. It is alleged that Superintendent Woods processed and affirmed the determination of the Upstate IGRC denying plaintiff's grievance regarding the relevant occurrences. His review of plaintiff's grievance arguably placed Superintendent Woods on notice of a constitutional violation, which was ongoing, at a time when he was potentially positioned to end the violation. On that basis I conclude that plaintiff has sufficiently alleged Superintendent Woods' personal involvement in the violation alleged to withstand defendants' dismissal motion. *See Charles v. New York State Dept. of Corr. Services,* No. 9:07–CV–1274, 2009 WL 890548, at *5–9 (N.D.N.Y. Mar. 21, 2009) (Hurd, J. and DiBianco, M.J .).

3. *Director Knapp–David*

Plaintiff's complaint alleges that in her position as the DOCS Director of Classification and Movement, defendant Knapp–David would have reviewed and approved his transfer from Auburn into Upstate. That allegation is buttressed by both her position with the DOCS and the fact that plaintiff's letter regarding the matter was referred to defendant Knapp–David for response explaining why the transfer was proper under DOCS regulations. On this basis, I conclude that plaintiff has stated a plausible claim against defendant Knapp–David and her personal involvement in the constitutional deprivations alleged.

D. *Qualified Immunity*

In their motion, defendants also assert entitlement to qualified immunity from suit. Qualified immunity shields government officials performing discretionary functions from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982) (citations omitted). "In assessing an officer's eligibility for the shield, 'the appropriate question is the objective inquiry whether a reasonable officer could have believed that [his actions were] lawful, in light of clearly established law and the information the officer[ ] possessed." *Kelsey v. County of Schoharie,* 567 F.3d 54, 61 (2d Cir.2009) (quoting *Wilson v. Layne,* 526 U.S. 603, 615, 119 S.Ct. 1692 (1999)). The law of qualified immunity seeks to strike a balance between the need to hold government officials accountable for irresponsible conduct and the need to protect them from "harassment, distraction, and liability when they

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. ––––, 129 S.Ct. 808, 815 (2009).

***8** In *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151 (2001), the Supreme Court "mandated a two-step sequence for resolving government official's qualified immunity claims." *Pearson,* 555 U.S. ––––, 129 S.Ct. at 816. The first step required the court to consider whether, taken in the light most favorable to the party asserting immunity, the facts alleged show that the conduct at issue violated a constitutional right,[FN9] *Kelsey,* 567 F.3d at 61, "the second step being whether the right is clearly established", *Okin v. Village of Cornwall–On–Hudson Police Dept.,* 577 F.3d 415, 430 n. 9 (citing *Saucier* ).[FN10] Expressly recognizing that the purpose of the qualified immunity doctrine is to ensure that insubstantial claims are resolved prior to discovery, the Supreme Court recently concluded in *Pearson* that because "[t]he judges of the district courts and courts of appeals are in the best position to determine the order of decisionmaking [that] will best facilitate the fair and efficient disposition of each case", those decision makers "should be permitted to exercise their sound discretion in deciding which of the ... prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." [FN11] *Pearson,* 555 U.S. ––––, 129 S.Ct. at 818, 821. In other words, as recently emphasized by the Second Circuit, the courts "are no longer *required* to make a 'threshold inquiry' as to the violation of a constitutional right in a qualified immunity context, but we are free to do so." *Kelsey,* 567 F.3d at 61 (citing *Pearson,* 129 S.Ct. at 821) (emphasis in original).

FN9. If no constitutional right would have been violated were the allegations established, no further inquiry regarding qualified immunity is necessary. *Kelsey,* 567 F.3d at 61 (quoting *Saucier* ).

FN10. In *Okin,* the Second Circuit clarified that the " 'objectively reasonable' inquiry is part of the 'clearly established' inquiry", also noting that "once a court has found that the law was clearly established at the time of the challenged conduct and for the particular context in which it occurred, it is no defense for the [government] officer who violated the clearly established law to respond that he held an objectively reasonable belief that his conduct was lawful." *Okin,* 577 F.3d at 433 n. 11 (citation omitted).

FN11. Indeed, because qualified immunity is "an immunity from suit rather than a mere defense to liability ...", *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806 (1985), the Court has "repeatedly ... stressed the importance of resolving immunity questions at the earliest possible stage in the litigation." *Pearson,* ––– U.S. ––––, 129 S.Ct. at 815 (quoting *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 524 (1991) (per curiam)).

For courts engaging in a qualified immunity analysis, "the question after *Pearson* is 'which of the two prongs ... should be addressed in light of the circumstances in the particular case at hand.' " *Okin,* 577 F.3d 430 n. 9 (quoting *Pearson* ). "The [*Saucier* two-step] inquiry is said to be appropriate in those cases where 'discussion of why the relevant facts do not violate clearly established law may make it apparent that in fact the relevant facts do not make out a constitutional violation at all .' " *Kelsey,* 567 F.3d at 61 (quoting *Pearson,* 129 S.Ct. at 818).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier,* 533 U.S. at 202, 121 S.Ct. at 2156 (citation omitted). When deciding whether a right was clearly established at the relevant time, a court should consider

> (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the [Second Circuit] support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

***9** *Wright v. Smith,* 21 F.3d 496, 500 (2d Cir.1994) (quoting *Benitez v. Wolff,* 985 F.2d 662, 666 (2d Cir.1993)). The objective reasonableness test will be met, and qualified immunity enjoyed, where government officers of reasonable competence could disagree as to whether by his or her alleged conduct the defendant would be violating the plaintiff's rights. *Okin,* 577 F.3d at 433 (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092 (1986)). "If, on the other hand, no officer of reasonable competence would conclude that the conduct in question is lawful, there is no immunity." *Okin,* 577 F.3d at 433 (citing *Lennon v.. Miller,* 66 F.3d 416, 420–21 (2d Cir.1995)).

Applying the *Saucier* two-step inquiry here, I have already determined that plaintiff has failed to state a plausible constitutional violation. Moreover, even if plaintiff were able to distinguish the existing precedent in this district and allege a protected liberty interest that required that plaintiff be provided with additional due process before his transfer to Upstate, I conclude that any such right was far from a clearly established and that a reasonable person in the circumstances of defendant Woods and defendant Knapp–David would not have appreciated that the transfer of plaintiff into SHU confinement at Upstate represented a potential deprivation of plaintiff's procedural due process rights beyond those addressed by the hearing officer. Accordingly, as an additional basis for dismissal, I recommend that both defendants Woods and Knapp–David be granted qualified immunity from suit.

IV. *SUMMARY AND RECOMMENDATION*

At the heart of plaintiff's complaint in this action is his contention that his due process rights and DOCS regulations were violated when he was transferred from keeplock confinement at Auburn into an SHU cell at Upstate. Since such a claim, it is well established in this district, is not constitutionally cognizable, White has therefore failed to state a claim upon which relief may be granted. While plaintiff has failed to establish personal involvement on the part of Commissioner Fischer in an alleged deprivation and the claims against him should be dismissed on this additional basis, plaintiff has sufficiently alleged personal involvement on the part of defendant Knapp–David and R. Woods. Nonetheless, I find that those two defendants are entitled to qualified immunity from suit, providing an additional basis for dismissal of plaintiff's claims against them. Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motion to dismiss (Dkt. No. 10) be GRANTED, and that plaintiff's complaint in this action be DISMISSED, without leave to replead; and it is further

ORDERED that pending a final determination on defendants' dismissal motion, discovery in this action be and hereby is STAYED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

***10** It is hereby ORDERED that the clerk of the court serve a copy of this Report and Recommendation upon the parties in accordance with this court's local rules.

N.D.N.Y.,2010.
White v. Fischer
Not Reported in F.Supp.2d, 2010 WL 624081 (N.D.N.Y.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.