UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LaFRANCIS GRAY-DAVIS, on her own and on
behalf of her son, Myrell Davis; and MYRELL
DAVIS,

                            Plaintiffs,

v.                                                                          5:14-CV-1490

PAUL RIGBY, Senior Parole Officer; TAMMY
GRONAU, Parole Officer; MR. GREEN, Parole
Officer; MS. DELANEY, Parole Officer;
MR. MAHER, Parole Officer; MR. FREGOE,
Parole Officer; MS. MONTFORD-BALFOUR,
Supervisor Parole Officer; JOHN DOE NOS. 1-4,
Parole Officers; and JOHN DOE NOS. 5-15,
Syracuse City Police Officers,

                            Defendants.
_____

APPEARANCES:                                         OF COUNSEL:

LaFRANCIS GRAY-DAVIS
  Plaintiff, *Pro Se*
439 Gifford Street
Syracuse, NY 13204

DeROBERTS LAW FIRM                        JEFFREY DeROBERTS, ESQ.
  Attorney for Myrell Davis
The Monroe Building, 3rd Floor
333 East Onondaga Street
Syracuse, NY 13202

HON. ERIC T. SCHNEIDERMAN            TIMOTHY P. MULVEY, ESQ.
Attorney General for the State of New York      Assistant Attorney General
  Counsel for Defendants
615 Erie Boulevard West, Suite 102
Syracuse, NY 13204-2455

GLENN T. SUDDABY, Chief United States District Judge

**DECISION and ORDER**

Currently before the Court, in this *pro se* civil rights action filed pursuant to 42 U.S.C. § 1983 by LaFrancis Gray-Davis and her minor child Myrell Davis ("Plaintiffs") against the twenty-two above-captioned parole and police officers ("Defendants"), is Defendants' motion to dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 28.) For the reasons set forth below, Defendants' motion is granted.

**I.     RELEVANT BACKGROUND**

**A.     Plaintiffs' Complaint**

Generally, in the portions of their Complaint that survive the Court's Decision and Order of May 5, 2015,[1] Plaintiffs assert three claims. (Dkt. No. 1 [Plfs.' Compl.].) First, Plaintiffs claim that Defendants violated their First and/or Fourteenth Amendment right to intimate association with parolee James Davis (who is Plaintiff Gray-Davis' husband and Plaintiff Davis' father), by instituting and enforcing a "no contact" condition in his parole (that is, a special condition that Mr. Davis have no contact with Plaintiffs unless it was authorized by his parole officer). (*Id.* at ¶¶ 10, 19-26, 50-57.) Second, Plaintiffs generally allege that Defendants violated their Fourth Amendment right to be free of unreasonable searches and seizures by stopping Plaintiffs' vehicle to arrest James Davis while he was a passenger in it. (*Id.* at ¶¶ 27-33.) Third, Plaintiffs generally allege that Defendants violated their Fourth Amendment right to be free of unreasonable searches by searching Plaintiffs' home for James Davis without a warrant. (*Id.* at ¶¶ 27-33.)

---

[1]     Because this Decision and Order is intended primarily for the review of the parties, the Court will assume the reader's familiarity with this procedural history of this action.

### B. Parties' Briefing on Defendants' Motion to Dismiss

#### 1. Defendants' Memorandum of Law

Generally, Defendants assert five arguments in support of their motion to dismiss. (Dkt. No. 28, Attach. 1 [Defs.' Mem. of Law].) First, Defendants argue that Plaintiffs have failed to allege facts plausibly suggesting the personal involvement of any Defendant other than Defendant Montford-Balfour in the First and Fourteenth Amendment violations alleged, because Defendant Montford-Balfour is the only Defendant allegedly involved in the imposition of the parole condition. (*Id*. at 7-8.)

Second, Defendants argue that Plaintiffs do not possess standing to challenge the "no contact" parole condition of James Davis, because (a) they fail to allege facts plausibly suggesting that they personally suffered an injury to their First or Fourteenth Amendment rights, (b) they fail to allege facts plausibly suggesting that any such injury was caused by the alleged actions of Defendants as opposed to the actions taken by James Davis, (c) they fail to allege facts plausibly suggesting that any such injury can be redressed or remedied by the requested relief (which threatens their own safety), and (d) in any event, there existed a compelling justification for imposing the "no contact" parole condition in question. (*Id.* at 8-10.)

Third, Defendants argue that James Davis' "no contact" parole condition did not violate Plaintiffs' First and/or Fourteenth Amendment rights, because (a) the "no contact" parole condition was lawfully imposed on James Davis, (b) no action was taken directly against Plaintiffs by Defendant Montford-Balfour, (c) there exist no freestanding constitutional "marital rights" independent of the constitutional guarantees of due process and equal protection, and (d) to state a substantive due process claim, a plaintiff must allege that the state action was "shocking and arbitrary," which this action was not, under the circumstances alleged. (*Id.* at 11-15.)

Fourth, Defendants argue that Plaintiffs' Fourth Amendment claim against the named Defendants (i.e., Rigby, Gronau, Green, Maher, Delaney, Fregoe, and Montford-Balfour) arising from the search of their home must be dismissed, because Plaintiffs have failed to allege facts plausibly suggesting the personal involvement of any Defendants other than John Doe Nos. 1-4, in the allegedly unreasonable search of their home, as required by 42 U.S.C. § 1983. (*Id.* at 16-17.)

Fifth, and finally, Defendants argue that Plaintiffs' Fourth Amendment claim arising from the stop of Plaintiff Gray-Davis' vehicle must be dismissed, because, according to Plaintiffs' own factual allegations, the stop was lawful in that (a) James Davis' presence in Plaintiff Gray-Davis' company was a direct violation of his "no contact" parole condition, (b) the admitted reason for the stop was the fact that Plaintiff Gray-Davis was driving a car that contained Mr. Davis, and (c) Plaintiffs have not alleged that Plaintiff Gray-Davis was detained or charged as a result of the traffic stop. (*Id.* at 16-17.)

### 2. Plaintiffs' Opposition Memorandum of Law

Generally, in response, Plaintiffs assert five arguments. (Dkt. No. 39 [Plfs.' Mem. of Law].) First, Plaintiffs argue that Defendant Montford-Balfour is not the only Defendant who was allegedly personally involved in the violation of Plaintiffs' right of intimate association, because the other Defendants helped enforce the "no contact" parole condition. (*Id*. at 14-16.)

Second, Plaintiffs argue that they do not lack standing to challenge the "no contact" parole condition imposed on James Davis, because of their close familial relationship to him. (*Id*. at 16-25.)

Third, Plaintiffs argue that James Davis' "no contact" parole condition does violate Plaintiffs' First and/or Fourteenth Amendment rights, because (a) Plaintiff Gray-Davis has lost the ability to live with her spouse, (b) Plaintiff Davis has lost the ability to live with, and be educated by, his father, and (c) the "no contact" parole condition is not the least-restrictive means of preventing a domestic dispute between Plaintiffs and James Davis (which has never before even occurred). (*Id*. at 25-30.)

Fourth, Plaintiffs argue that some of the named Defendants "may have" participated in the search of their home. (*Id.* at 30.)

Fifth, and finally, Plaintiffs argue that the stop and search of Plaintiffs' vehicle did violate th Fourth Amendment, because (a) the stop and search of the vehicle was based on the "no contact" parole condition, and (b) the "no contact" parole condition is unconstitutional. (*Id.* at 30-31.)

## II. GOVERNING LEGAL STANDARDS

### A. Legal Standard Governing Motions to Dismiss for Failure to State Claim

It has long been understood that a complaint may be dismissed for failure to state a claim upon which relief can be granted on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 211, nn.15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such motions are often based on the first ground, a few words on that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). In the Court's view, this tension between permitting a

5

"short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34(1)(b) at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-83, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007). In doing

6

so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U.S. at 561, 127 S. Ct. at 1968-69. Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 556-70, 127 S. Ct. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean the pleading must contain at least "some factual allegation[s]." *Id*. at 555, 127 S. Ct. at 1965, n.3. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*. at 554, 127 S. Ct. at 1965.[2]

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a

---

[2] It should be emphasized that Fed. R. Civ. P. 8's plausibility standard, explained in *Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which (when reviewing a *pro se* pleading) the Court stated, "*Specific* facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2). *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200 (2007) (emphasis added). That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Twombly*–that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965, n.3 (citing *Conley*, 355 U.S. at 47) (emphasis added). That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough facts set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak,* 629 F. Supp. 2d at 214 & n.35 (explaining holding in *Erickson*).

7

plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*., at 678, 129 S. Ct. at 1949.

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed. R. Civ. P. 8, 10 and 12. *See Vega v. Artus,* 610 F. Supp. 2d 185, 196 & nn.8-9 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F. Supp. 2d at 214 & n.34 (citing Second Circuit cases). Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed. R. Civ. P. 8, 10 and 12 are procedural rules that even *pro se* civil

rights plaintiffs must follow. *See Vega,* 610 F. Supp. 2d at 196, n.10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F. Supp.2d at 214 & n.34 (citing Second Circuit cases). Stated more simply, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended." *Jackson*, 549 F. Supp. 2d at 214, n.28.

A few words are appropriate regarding what documents are considered when deciding whether a complaint must be dismissed for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). The court may consider the following documents without triggering the summary judgment standard: "(1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference into the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case." *Planck v. Schenectady Cnty.*, 12-CV-0336, 2012 WL 1977972, at *5 (N.D.N.Y. June 1, 2012) (Suddaby, J.).

Finally, it is important to note that, although the court has the duty to show liberality towards *pro se* litigants, *In re Sims*, 534 F.3d 117, 133 (2d Cir. 2008), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), there is a responsibility on the court to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (district court may dismiss frivolous complaint *sua sponte* notwithstanding fact that plaintiff has paid statutory filing fee).

B. **Legal Standard Governing Claims Brought Under 42 U.S.C. § 1983**

Generally, to state a claim pursuant to 42 U.S.C. § 1983 ("Section 1983"), a plaintiff must allege facts plausibly suggesting "(1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color of state . . . law." *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (internal quotations omitted)). "Section 1983 is not itself a source of substantive rights[,] but merely provides a method for vindicating federal rights elsewhere conferred [.]" *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 [1979]).

III. **ANALYSIS**

A. **Plaintiffs' Claim that Defendants Violated Their Rights to Intimate Association Under the First and/or Fourteenth Amendment**

After carefully considering the matter, the Court finds that this claim should be dismissed for the reasons stated in Defendants' memorandum of law. *See, supra,* Part I.B.1. of this Decision and Order. To those reasons, the Court adds the following analysis.

1. **Whether Defendant Montford-Balfour Is the Only Defendant Against Whom this Claim May Be Properly Asserted**

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (internal quotation marks omitted). "A defendant may be personally involved in a constitutional deprivation within the meaning of 42 U.S.C. § 1983 in several ways." *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986). A defendant is "personally involved" if he "directly participated in the infraction." *Id.* (collecting cases). "Direct

participation" means "personal participation by one who has knowledge of the facts that rendered the conduct illegal." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (citing *Gaston v. Coughlin*, 249 F.3d 156, 165-66 [2d Cir. 2001]). For a defendant parole officer, the personal involvement requirement is also met when it is shown that the officer "actually enforced" a parole condition, such as by arresting the parolee for a violation. *Farrell*, 449 F.3d at 484.

Therefore, the Court disagrees with Defendants that Defendant Montford-Balfour is the only Defendant alleged to be personally involved with the alleged violation of Plaintiffs' intimate association rights as a result of the "no contact" parole condition. Plaintiff alleges that Defendants Gronau, Green, Maher, Delaney, Fregoe, and John Doe Nos. 5-15 participated in the enforcement of the "no contact" condition. (Dkt. No. 1, at ¶ 14 [Plfs.' Compl.].) Therefore, Plaintiffs have alleged the personal involvement of these Defendants with regard to this claim.

However, the only action attributed to Defendant Rigby is his cancellation of Plaintiff Gray-Davis' marriage ceremony (scheduled for November 2011) while James Davis was incarcerated. (*Id.* ¶ 8.) This action predated the challenged parole condition by nearly two years. (Dkt. No. 1, at 56 [Ex. 1 to Plfs.' Compl.].) Therefore, facts have not been alleged plausibly suggesting that Defendant Rigby intentionally took action to interfere with Plaintiffs' right to intimate association through the imposition of the "no contact" parole condition.

Nor is the cancellation alone sufficient to constitute a constitutional violation. Plaintiff Gray-Davis admits that she was successfully married to James Davis the following year, without interference. (*Id.* at ¶ 9.) A marriage of an inmate to a civilian may be temporarily delayed for reasons that are reasonably related to any legitimate penological interest. *Ford v. Fischer*, 09-

CV-0723, 2012 U.S. Dist. LEXIS 143826, at *24-25 (N.D.N.Y. Aug. 7, 2012) (Baxter, M.J.), *modified on other grounds*, 2012 U.S. Dist. LEXIS 143827 (N.D.N.Y. Oct. 4, 2012) (Hurd, J.); *Martin v. Snyder*, 329 F.3d 919, 921-22 (7th Cir. 2003) (holding that a constitutional claim based on a 12-month delay in marriage was properly dismissed because warden postponed, but did not preclude inmates marriage based on a disciplinary charge and temporary denial of visitation of plaintiff's girlfriend).

While a defendant normally bears the burden to establish a legitimate penological interest, here, Plaintiffs allege facts plausibly suggesting such a legitimate penological interest. More specifically, Plaintiffs allege that the marriage was delayed to avoid interfering with the investigation of a federal case in which James Davis was involved. (Dkt. No. 1, at ¶ 8 [Plfs.' Compl.].) Plaintiffs further allege that the federal district court judge presiding over James Davis' case told Plaintiff Gray-Davis to wait until James Davis was transferred to state prison; and, after that happened, they were "happily married." (*Id.* at ¶¶ 8-9.) Therefore, Plaintiffs do not allege facts plausibly suggesting that Defendant Rigby was personally involved in any deprivation of their constitutional rights, and this cause of action cannot be maintained against him. *Farid*, 593 F.3d at 249.

### 2. Whether Plaintiffs' Constitutional Rights Were Violated

The United States Constitution affords protection to two distinct types of association: "intimate association" and "expressive association." *City of Dallas v. Stanglin*, 490 U.S. 19, 23-25 (1989). Intimate association is defined as those relationships that may be classified as familial in nature, as involving "deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and

12

beliefs but also distinctively personal aspects of one's life." *Roberts v. United States Jaycees*, 468 U.S. 609, 620 (1984). Examples of such relationships include the following: the creation and sustenance of a family (*Roberts*, 468 U.S. at 620); marriage (*Zablocki v. Redhail*, 434 U.S. 374 [1978]); the begetting and bearing of children (*Carey v. Population Services Int'l*, 431 U.S. 678 [1977])' cohabitation with relatives (*Moore v. East Cleveland*, 431 U.S. 494 [1977]); and child rearing and education (*Pierce v. Society of Sisters,* 268 U.S. 510 [1925]).

While the Second Circuit does not appear to have ruled on the issue, virtually all the circuits that appear to have considered the issue agree that "[a] defendant can be held liable for violating a right of intimate association only if the plaintiff shows an intent to interfere with the relationship." *Reasonover v. St. Louis Cnty.*, 447 F.3d 569, 585 (8th Cir. 2006) (internal quotation marks omitted); *see also Valdivieso Ortiz v. Burgos*, 807 F.2d 6, 9 (1st Cir. 1986) (declining to acknowledge a liberty interest where the governmental action was not "directly aimed at the relationship between a parent and a young child[,]" as opposed to "an incidental deprivation of [a] relationship [with an] adult relative"); *Shaw v. Stroud*, 13 F.3d 791, 805 (4th Cir. 1994) (finding that, "because the Supreme Court has never extended the constitutionally protected liberty interest incorporated by the Fourteenth Amendment due process clause to encompass deprivations resulting from governmental actions affecting the family only incidentally, we decline to sanction such a claim at the present time"); *Russ v. Watts*, 414 F.3d 783, 791 (7th Cir. 2005) (overruling *Bell v. City of Milwaukee*, 746 F.2d 1205 [7th Cir. 1984], "insofar as it recognized a constitutional right to recover for the loss of the companionship of an adult child when that relationship is terminated as an incidental result of state action"); *Trujillo v. Bd. of Cnty. Comm'rs of Santa Fe Cnty.*, 768 F.2d 1186, 1190 (10th Cir. 1985) (holding that

13

"an allegation of intent to interfere with a particular relationship protected by the freedom of intimate association is required to state a claim under section 1983").

District courts in the Second Circuit have agreed with these other circuit courts that a plaintiff must rest an intimate association claim on a direct harm to the plaintiff caused by an intent to interfere with the familial relationship. *See, e.g., Campos v. Weissman*, 07-CV-1263, 2011 U.S. Dist. LEXIS 32587, at *4-5 (N.D.N.Y. March 29, 2011) (Scullin, S.J.).

Here, the only alleged intent to interfere with a familial relationship belongs to Defendant Rigby. More specifically, Plaintiffs allege that Defendant Rigby "has had a personal vendetta" against Plaintiffs since they met in September 2011. (Dkt. No. 1, at ¶ 7 [Plfs.' Compl.].) However, as discussed in Part III.A.1. of this Decision and Order, Plaintiffs have failed to allege facts plausibly showing that Defendant Rigby was personally involved in a constitutional deprivation, and therefore the claim may not be maintained against him.

Because Plaintiffs have failed to allege facts plausibly suggesting the requisite intent on the part of any other Defendants, they have failed to allege facts plausibly suggesting a violation of their own constitutional rights.

### 3. Whether Plaintiffs Have Third-Party Standing

There is a general prohibition in the federal courts for exercising the rights of another. *Warth v. Seldin*, 422 U.S. 490, 500 (1975). While plaintiffs may exercise third-party standing in some circumstances, "section 1983 civil rights action is a personal suit and may not be brought by a relative, even the parents, spouse or children of the individual whose civil rights were violated." *Barrett v. United States*, 622 F. Supp. 574, 591 (S.D.N.Y. 1985). Therefore, Plaintiffs do not have standing to assert James Davis' rights.

### B. Plaintiffs' Claims that Defendants Violated Their Rights Against Unreasonable Searches and Seizures Under the Fourth Amendment

After carefully considering the matter, the Court finds that these claims should be dismissed for the reasons stated in Defendants' memorandum of law. *See, supra,* Part I.B.1. of this Decision and Order. To those reasons, the Court adds the following analysis.

#### 1. Whether the Vehicle Stop and Search Was Unreasonable

As discussed above in Part I.B.1. of this Decision and Order, Defendants argue that Plaintiffs' Fourth Amendment claim arising from the stop of Plaintiff Gray-Davis' vehicle must be dismissed, because, according to Plaintiffs' own factual allegations, the stop was lawful in that (a) James Davis' presence in Plaintiff Gray-Davis' company was a direct violation of his "no contact" parole condition, (b) the admitted reason for the stop was the fact that Plaintiff Gray-Davis was driving a car that contained Mr. Davis, and (c) Plaintiffs have not alleged that Plaintiff Gray-Davis was detained or charged as a result of the traffic stop. (*Id.* at 16-17.)

As discussed above in Part I.B.2. of this Decision and Order, Plaintiffs argue that the vehicle stop was unconstitutional because it was based on the "no contact" parole condition, which itself is (allegedly) unconstitutional. (Dkt. No. 39, at 30-31 [Plfs.' Mem. of Law].)

As discussed above in Part III.A. of this Decision and Order, the Court does not reach the issue of whether the "no contact" parole condition is unconstitutional. However, the Court finds that the alleged conduct by police and parole officers does not plausibly suggest a Fourth Amendment violation.

The Fourth Amendment protects against "unreasonable" searches and seizures by government agents, and a vehicle stop is a seizure for the purposes of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10 (1996). However, the seizure of a vehicle is not

unreasonable if "there is at least articulable and reasonable suspicion that . . . either the vehicle or an occupant is otherwise subject to seizure for violation of law." *Delaware v. Prouse*, 440 U.S. 648, 663 (1979).

Plaintiffs admit that James Davis was in violation of the "no contact" parole condition at the time of the stop. (Dkt. No. 1, at ¶ 14 [Plfs.' Compl.].) They also admit that this parole violation was the reason for the stop. (*Id.*) Taking these allegations as true, the Court finds that the police who stopped the vehicle had at least a reasonable suspicion that an occupant of the vehicle, James Davis, was subject to seizure for violation of the law. Furthermore, Plaintiffs have failed to allege that they were unreasonably detained or suffered other injury as a result of this stop. (*Id.*) For all of these reasons, the Court finds that the alleged stop was not a violation of the Fourth Amendment. Because this is the only remaining cause of action asserted against Defendants John Doe Nos. 5-15, those eleven Defendants are dismissed from this action.

### 2. Whether the House Search Was Unreasonable

As discussed above in Part I.B.1. of this Decision and Order, Defendants move to dismiss Plaintiffs' Fourth Amendment claim arising from a search of their home, insofar as it is asserted against Defendants Rigby, Gronau, Green, Maher, Delaney, Fregoe, and Montford-Balfour, because Plaintiffs have not alleged facts plausibly suggesting the personal involvement of those Defendants in the allegedly unreasonably search, as required by Section 1983. (Dkt. No. 28, Attach. 1, at 16-17 [Defs.' Mem. of Law].)

As discussed above in Part III.A.1. of this Decision and Order, an allegation that the defendant was personally involved in a constitutional violation is a prerequisite for a claim against that defendant under Section 1983. *Farid*, 593 F.3d at 249.

Here, Plaintiffs allege that their home was illegally searched by four John Doe parole officers (i.e., John Doe Nos. 1-4). (Dkt. No. 1, at ¶ 13 [Plfs.' Compl.].) However, Plaintiffs do not allege that any of these John Doe parole officers was a named Defendant (i.e., Rigby, Gronau, Green, Maher, Delaney, Fregoe, or Montford-Balfour), whom Plaintiff Gray-Davis could presumably recognize (either by face or name). (*Id.*) Indeed, in their opposition memorandum of law, Plaintiffs admit that they do not know who performed the search, but argue that "some of the named defendants *may have* participated in the search." (Dkt. No. 39, at 30 [Plfs.' Mem. of Law] [emphasis added].) This speculative argument does not contain factual allegations plausibly suggesting the personal involvement of any of the named Defendants in the allegedly unreasonable search.[3] Therefore, this Fourth Amendment claim is dismissed as against the named Defendants without prejudice to reassertion in this action (should Plaintiffs discover that any of them was one of the John Doe Nos. 1-4).

With regard to the pleading sufficiency of this claim as against the *unnamed* Defendants, the Court notes that Defendants have not moved to dismiss this claim as against the four John Doe Defendant parole officers. (*See generally* Dkt. No. 28, Attach. 1 [Defs.' Mem. of Law].) Ordinarily, the Court would not be able to *sua sponte* consider the pleading sufficiency of such a claim. However, here, the Court may do so, because Plaintiffs are proceeding *in forma pauperis*. 28 U.S.C. § 1915(e)(2)(B)(ii). Generally, in the context of Section 1983 claims, the plaintiff must "name as proper defendants those individuals who have some personal involvement" so as

---

[3] Out of special solicitude to Plaintiff Gray-Davis as a *pro se* litigant, the Court has liberally construed her argument (which was asserted in an opposition memorandum of law signed by her) as effectively amending the allegations of her Complaint, despite the fact that her opposition memorandum of law (which contains case citations in Blue Book form) was apparently drafted with the assistance of her co-Plaintiff's attorney.

to satisfy the requirements of Fed. R. Civ. P. 8(a). *Barreto v. Cty. of Suffolk*, 10-CV-0028, 2010 WL 301949, at *4 (E.D.N.Y. Jan. 20, 2010). A failure to comply rule Fed. R. Civ. P. 8(a) may serve as the basis of a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *See, supra,* Part II.A. of this Decision and Order.[4]

Plaintiffs argue that it would be premature to dismiss this claim as against the four John Doe parole officers, because reasonable discovery could reveal their identities. (Dkt. No. 39, at 30 [Plfs.' Mem. of Law].) Courts have often "rejected the dismissal of suits against unnamed defendants . . . . until the plaintiff has had some opportunity for discovery to learn the identities of responsible officials." *Davis v. Kelly*, 160 F.3d 917, 921 (2d Cir. 1998).

Here, the action was filed on December 11, 2014, and discovery does not yet appear to have begun, having been stayed pending a decision on Defendants' motion to dismiss. (Dkt. Nos. 1, 32, 34.) For these reasons, the Court will afford Plaintiffs a further opportunity to identify John Doe Nos. 1-4. <u>However, Plaintiffs are again reminded (as they have been three times before) that they must take reasonable steps to identify John Doe Nos. 1-4, and move to amend their Complaint to name the proper parties, or their Complaint will be dismissed</u>. (Dkt. No. 3, at 3 [Acknowledgment of Receipt, acknowledging receipt of courtesy copy District's *Pro Se* Handbook, page 8 and 9 of which regard to duty to identify John Doe Defendants]; Dkt. No. 6, at 17-18 [Report-Recommendation, reminding Plaintiffs of duty]; Dkt. No. 7, at 5 [Decision and Order, reminding Plaintiffs of duty].)

---

[4] Because the Court finds it needs further briefing on the issue, the Court expresses no opinion as to whether Plaintiffs have successfully pled the elements of a Fourth Amendment claim, other than to note that Plaintiffs allege that the four John Doe parole officers clearly had no probable cause to search their house, given that (1) he "was not in the house," and (2) pursuant to the challenged parole condition, "he was [not] to be [in the house]." (Dkt. No. 1, at ¶ 13 [Plfs.' Compl.].)

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 28) is **GRANTED**; and it is further

**ORDERED** that all of the remaining claims in Plaintiffs' Complaint (Dkt. No. 1) are **DISMISSED except** for Plaintiffs' Fourth Amendment claim against John Doe Nos. 1-4, arising from the search of Plaintiffs' home, which **remains pending** in this action; and it is further

**ORDERED** that Plaintiffs shall take reasonable steps to identify John Doe Nos. 1-4 and move to amend their Complaint to add the proper parties. The deadline for Plaintiff to file a motion to amend their complaint to identify John Does Nos. 1-4 is 5/31/16.

Dated: March 31, 2016
       Syracuse, New York

                                               Hon. Glenn T. Suddaby
                                               Chief U.S. District Judge